CHAD MIZELLE
Acting Associate Attorney General
ABHISHEK S. KAMBLI
Deputy Associate Attorney General
YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division
DREW C. ENSIGN
Deputy Assistant Attorney General
ELIANIS PEREZ
Assistant Director
LAUREN FASCETT
Senior Litigation Counsel
Office of Immigration Litigation
General Litigation and Appeals Section
*Attorneys for the United States*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## WICHITA FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | CIVIL No. _____ |
| v. | |
| STATE OF TEXAS, | **COMPLAINT** |
| Defendant. | |

Plaintiff, the United States of America, by and through its undersigned counsel, brings

this civil action for declaratory and injunctive relief, and alleges as follows:

### INTRODUCTION

Federal law prohibits illegal aliens from getting instate tuition benefits that are denied to

out-of-state U.S. citizens. *See* 8 U.S.C. § 1623(a). There are no exceptions. Yet the State of Texas

has ignored this law for years. This Court should put that to an end and permanently enjoin the

enforcement of certain provisions of the Texas Education Code that expressly and directly conflict with federal immigration law.

Texas Education Code §§ 54.051(m) and 54.052(a)(3) allow aliens who are not lawfully present in the United States to qualify for reduced tuition at public state colleges, even as U.S. citizens from other states must pay higher tuition rates. That is squarely prohibited and preempted by federal law, which expressly provides that "an alien who is not lawfully present in the United States *shall not be* eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a) (emphasis added). These Texas laws, as applied to aliens not lawfully present in the United States, are thus unconstitutional under the Supremacy Clause of the United States Constitution.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

2.      Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because a substantial portion of the events occurred in the district.

3.      The Court has the authority to provide the relief requested under the Supremacy Clause, U.S. Const. art. VI, cl. 2, as well as 28 U.S.C. §§ 1651, 2201, and 2202, and its inherent equitable powers.

## PARTIES

4.      Plaintiff, the United States of America, regulates immigration under its constitutional and statutory authorities, and enforces federal immigration laws through its Executive agencies, including the Department of Justice and Department of Homeland Security

(DHS), as well as DHS component agencies, U.S. Immigration and Customs Enforcement, U.S. Citizenship and Immigration Services, and U.S. Customs and Border Protection.

5.      Defendant State of Texas is a state of the United States.

## FEDERAL LAW

6.      The Constitution affords Congress the power to "establish a uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," U.S. Const. art. I, § 8, cl. 3, and affords the President of the United States the authority to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3.

7.      The United States has well-established, preeminent, and preemptive authority to regulate immigration matters. This authority derives from the United States Constitution, numerous acts of Congress, and binding U.S. Supreme Court precedent.

8.      Based on its enumerated constitutional and sovereign powers to control and conduct relations with foreign nations, the Federal Government has broad authority to establish immigration laws.

9.      In the February 19, 2025 Executive Order, *Ending Taxpayer Subsidization of Open Borders*, President Trump ordered Departments and Agencies to "ensure, to the maximum extent permitted by law, that no taxpayer-funded benefits go to unqualified aliens[.]" In the April 28, 2025 Executive Order, *Protecting American Communities From Criminal Aliens*, President Trump ordered the relevant officials to ensure the "[e]qual [t]reatment of Americans" and to "take appropriate action to stop the enforcement of State and local laws, regulations, policies, and practices favoring aliens over any groups of American citizens that are unlawful, preempted by Federal law, or otherwise unenforceable, including State laws that provide in-State higher education tuition to aliens but not to out-of-State American citizens[.]"

10.     These Orders reiterate congressional sentiment evidenced in several statutory provisions of the Immigration and Nationality Act (INA) that were added in 1996, to curb incentives for illegal immigration provided by the availability of various public benefits.

11.     Specifically, in 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA). *See* IRRIRA, Pub. L. No. 104-208, Div. C, §§ 306, 308, 110 Stat. 3009–546 (1996). One of the objectives of that statute was to promote immigrant self-sufficiency, reduce immigrant reliance on public assistance, and ensure that public benefits do not incentivize illegal entry. *Id*.; *see* 8 U.S.C. § 1601 ("Self-sufficiency has been a basic principle of United States immigration law since this country's earliest immigration statutes.").

12.     Congress declared that "aliens within the Nation's borders [should] not depend on public resources to meet their needs, but rather rely on their own capabilities and the resources of their families, their sponsors, and private organizations." *Id*. § 1601(2)(A).

13.     Congress emphasized that "the availability of public benefits [should] not constitute an incentive for immigration to the United States." *Id*. § 1601(2)(B). Moreover, Congress determined that "[i]t is a compelling government interest to enact new rules for eligibility and sponsorship agreements in order to assure that aliens be self-reliant in accordance with national immigration policy" and "to remove the incentive for illegal immigration provided by the availability of public benefits." 8 U.S.C. § 1601(5), (6).

14.     As relevant here, IIRIRA included a clear "[l]imitation on eligibility preferential treatment of aliens not lawfully present on basis of residence for higher education benefits." 8 U.S.C. § 1623. Section 1623(a) provides that:

> Notwithstanding any other provision of law, an alien who is not
> lawfully present in the United States shall not be eligible on the basis
> of residence within a State (or a political subdivision) for any
> postsecondary education benefit unless a citizen or national of the

4

United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

15.      Section 1623(a) does not allow illegal aliens to qualify for in-state tuition (also referred to as "resident tuition") based on residence within the state if that same tuition rate is not made available to all U.S. citizens without regard to their state residency. 8 U.S.C. § 1623(a).

**THE TEXAS LAW**

16.      In direct conflict with federal law, Texas law specifically allows an alien who is not lawfully present in the United States to qualify for in-state tuition based on residence within the state, while explicitly denying resident tuition rates to U.S. citizens that do not qualify as Texas residents. *See* Texas Education Code §§ 54.051(m), 54.052(a)(3).

17.      Since 2001, Texas law[1] has allowed unlawful aliens who establish residency in Texas to benefit from reduced, in-state tuition rates while denying that same benefit to U.S. citizens who are not residents of Texas. *See* Texas Education Code §§ 54.0501(3), 54.051(m) and 54.052, Amended by: Acts 2005, 79th Leg., Ch. 888 (S.B. 1528), Sec. 6, eff. September 1, 2005.

18.      Texas Education Code § 54.0501 outlines pertinent statutory definitions. For example, § 54.0501(3) defines "domicile" as "a person's principal, permanent residence to which the person intends to return after any temporary absence." Section 54.0501(4) defines "Nonresident tuition" as "the amount of tuition paid by a person who is not a resident of this state and who is not entitled or permitted to pay resident tuition under this subchapter." Section 54.0501(6) defines "residence" as "a person's home or other dwelling place." And

---

[1] In 2001, Texas set a precedent by enacting House Bill 1403, commonly known as the Texas Dream Act, which grants eligible undocumented students access to in-state tuition rates at public colleges and universities. *See* https://www.higheredimmigrationportal.org/state/texas/ (last visited May 21, 2025); https://lrl.texas.gov/legis/billsearch/BillDetails.cfm?legSession=77-0&billtypeDetail=HB&billNumberDetail=1403&billSuffixDetail= (last visited May 21, 2025).

Section 54.0501(7) defines "resident tuition" as "the amount of tuition paid by a person who is a

resident of this state."

19.    Texas Education Code § 54.051(m) provides that:

> *Unless the student establishes residency or is entitled or permitted to*
> *pay resident tuition as provided by this subchapter*, tuition for a student
> who is a citizen of any country other than the United States of America
> is the same as the tuition required of other nonresident students.

(emphasis added).

20.    The tuition for non-resident students is set by Section 54.051(d), which provides:

> tuition for a nonresident student at a general academic teaching
> institution . . . is an amount per semester credit hour equal to the
> average of the nonresident undergraduate tuition charged to a resident
> of this state at a public state university in each of the five most populous
> states other than this state.

21.    The tuition for resident students is much lower: It is specified by statute to be $50

per semester credit hour. Texas Education Code § 54.051(c) ("Unless a different rate is specified

by this section, tuition for a resident student at a general academic teaching institution is $50 per

semester credit hour.").

22.    The Texas Education Code mandates that the governing board for each institution

of higher education "shall cause to be collected from students registering at the institution tuition

or registration fees" at these prescribed rates. Texas Education Code § 54.051(b).

23.    The Texas Education Code does not require lawful presence in the United States to

establish Texas residency and obtain in-state tuition rates.

24.    Critically, Texas Education Code § 54.052 allows even aliens *who are not lawfully*

*present in the United States* to qualify as Texas residents for the purpose of assessing tuition and

thus to pay the lower rate of tuition specified in § 54.051(c). The statute only requires a student to

establish and maintain domicile continuously or graduate from a public or private Texas high

school or acquire the equivalent of a high school diploma and maintain a residence continuously

for a set period of time. *See* Texas Education Code § 54.052(a).

25.    Specifically, § 54.052(a), titled "Determination of Resident Status," enumerates

that aliens not lawfully present may qualify to pay resident tuition if they meet three specific

criteria:

> (1) a person who:
>
>> (A) established a domicile in this state not later than one year before the census date of the academic term in which the person is enrolled in an institution of higher education; and (B) maintained that domicile continuously for the year preceding that census date;
>
> (2) are a dependent whose parent:
>
>> (A) established a domicile in this state not later than one year before the census date of the academic term in which the dependent is enrolled in an institution of higher education; and (B) maintained that domicile continuously for the year preceding that census date; and
>
> (3) a person who:
>
>> (A) graduated from a public or private high school in this state or received the equivalent of a high school diploma in this state; and (B) maintained a residence continuously in this state for: (i) the three years preceding the date of graduation or receipt of the diploma equivalent, as applicable; and (ii) the year preceding the census date of the academic term in which the person is enrolled in an institution of higher education.

Texas Education Code § 54.052(a).

26.    Relatedly, Texas Education Code § 54.053 outlines the information required to

establish resident status and directly references the availability to noncitizens and nonpermanent

residents. Section 54.053(3)(B) states in pertinent part that "if the person applies for resident status

under Section 54.052(a)(3)" and "if the person is not a citizen or permanent resident of the United

States, [the person shall submit] an affidavit stating that the person will apply to become a

permanent resident of the United States as soon as the person becomes eligible to apply." Texas Education Code § 54.053(3)(B).

27.     Accordingly, under Texas law, the tuition rate for an alien not lawfully present in the United States, who meets § 54.052(a)'s three criteria, is the same as for other Texas residents— $50 per semester credit hour. Texas Education Code § 54.051(c). Conversely, United States citizens that do not qualify as Texas residents under § 54.052(a) are subject to § 54.051(d), which requires those non-Texas resident U.S. citizen students to pay the higher, nonresident tuition.

28.     Out-of-state American citizens therefore pay substantially higher tuition than aliens who are not lawfully present in the United States but nevertheless meet the Texas residency requirement under § 54.052(a).

29.     For the year 2022, there were approximately 408,000 undocumented students enrolled in U.S. institutions of higher education.[2] In 2022, there were approximately 56,500 undocumented students enrolled in a Texas school for higher education. *Id*.

## THE TEXAS LAW IS PREEMPTED

30.     The Supremacy Clause of the Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

31.     Express preemption occurs when Congress, by statute, explicitly supersedes all state enactments in a particular area. *P. Gas and Elec. Co. v. State Energy Resources Conserv. & Develop. Comm'n*, 461 U.S. 190, 203-04 (1983).

---

[2] *See* https://www.higheredimmigrationportal.org/state/texas/ (last visited May 21, 2025); *see also* https://www.higheredimmigrationportal.org/wp-content/uploads/2025/04/Undocumented-Students-in-Higher-Education-June-2024-2-pager-corrected.pdf (last visited May 21, 2025).

32.      Federal statutes may preempt state laws and render them ineffective. They may do this expressly, by declaring that intent on the face of the statute. *Arizona v. United States*, 567 U.S. 387, 399 (2012) ("There is no doubt that Congress may withdraw specified powers from the States by enacting a statute containing an express preemption provision."); *Barrosse v. Huntington Ingalls, Inc.*, 70 F.4th 315, 320 (5th Cir. 2023) ("Express preemption applies '[w]here Congress expresses an explicit intent to preempt state law.'") (quoting *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 363 (5th Cir. 1995)).

33.      "[U]nder the Supremacy Clause, from which our pre-emption doctrine is derived, any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Gade v. National Solid Wastes Management Assn.,* 505 U.S. 88, 108 (1992); *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981) (Under the Supremacy Clause, state laws that conflict with federal law are "without effect."); *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (same); *see Est. of Miranda v. Navistar, Inc.*, 23 F.4th 500, 504 (5th Cir. 2022) (federal statute expressly preempts a state law when Congress "adopts express language defining the existence and scope of preemption" (citation omitted)); *Aux Sable Liquid Prods. v. Murphy*, 526 F.3d 1028, 1033 (7th Cir. 2008) (a state enactment is expressly preempted where "a federal statute explicitly states that it overrides state or local law").

34.      When the statute contains an express preemption clause, the court does not indulge "any presumption against preemption but instead focus[es] on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016). Further, "[i]n determining whether a state law or regulation is preempted, Congress's intent is the ultimate touchstone." *Union Pac. R.R. Co. v. City of Palestine*, 41 F.4th 696, 704 (5th Cir. 2022); *Malone v. White Motor Corp.*, 435 U.S. 497,

504 (1978) ("'The purpose of Congress is the ultimate touchstone'" of pre-emption analysis.")
(quoting *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103 (1963)).

35.     Here, the federal law at 8 U.S.C. § 1623(a) contains an express preemption clause.
The U.S. Court of Appeals for the Fifth Circuit has already declared as much in *Young
Conservatives of Texas Foundation v. Smatresk*, where it stated that § 1623(a) "expressly preempts
state rules that grant illegal aliens benefits when U.S. citizens haven't received the same." 73 F.4th
304, 312–13 (5th Cir. 2023).

36.     Section 1623(a) directs that "[n]otwithstanding any other provision of law," an
illegal alien "shall not be eligible on the basis of residence within a State . . . for any postsecondary
education benefit unless a citizen or national of the United States is eligible for such a benefit . . .
without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a).

37.     As evidenced in the title—"Limitation on eligibility for preferential treatment of
aliens not lawfully present on basis of residence for higher education benefits"—§ 1623(a) requires
that all U.S. citizens be eligible for a benefit, without regard to residency, before any illegal alien
may receive the same benefit (based on residency).

38.     Therefore, 8 U.S.C. § 1623(a) expressly preempts Texas Education Code
provisions that grant benefits to illegal aliens when U.S. citizens do not receive the same. *See* Texas
Education Code §§ 54.051(m), 54.052(a)(3); *Young Conservatives of Texas Foundation*, 73 F.4th
at 313 ("No matter what a state says, if a state did not make U.S. citizens eligible, illegal aliens
cannot be eligible.").

39.     By bestowing greater education benefits on illegal aliens than U.S. citizens, Texas
Education Code §§ 54.051(m) and 54.052(a) are expressly preempted and therefore violate the
Supremacy Clause. *See Young Conservatives of Texas Foundation*, 73 F.4th at 313.

40.    Indeed, in *Young Conservatives of Texas Foundation*, although the Fifth Circuit only reviewed a challenge to Texas Education Code § 54.051(d), which calculates and imposes a nonresident tuition rate, the Fifth Circuit observed that "a different, *unchallenged* portion" of Texas's statutory regime "seems to conflict" with Section 1623(a). *Young Conservatives of Texas Found. v. Smatresk*, 73 F.4th at 314. Those provisions are Texas Education Code §§ 54.051(m) and 54.052(a) and as explained above, they are expressly preempted by 8 U.S.C. § 1623(a).

## CLAIM FOR RELIEF

### VIOLATION OF THE SUPREMACY CLAUSE
### (EXPRESS PREEMPTION)

41.    Plaintiff hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

42.    The challenged provisions at Texas Education Code §§ 54.051(m) and 54.052(a), as applied to aliens who are not lawfully present in the United States, expressly violate federal immigration law's prohibition on providing postsecondary education benefits—such as lower tuition rates—based on residency to unlawful aliens that are not available to all U.S. citizens regardless of residency.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests the following relief:

1.    that this Court enter a judgment declaring that the challenged provisions, as applied to aliens who are not lawfully present in the United States, violate the Supremacy Clause and are therefore unconstitutional and invalid;

2.    that this Court issue a permanent injunction that prohibits Defendant as well as its successors, agents, and employees, from enforcing the challenged provisions as applied to aliens who are not lawfully present in the United States;

3.      that this Court award the United States its costs and fees in this action; and

4.      that this Court award any other relief it deems just and proper.


DATED: June 4, 2025                                      Respectfully submitted,

CHAD MIZELLE
Acting Associate Attorney General

ABHISHEK S. KAMBLI
Deputy Associate Attorney General

YAAKOV M. ROTH                                          ELIANIS N. PÉREZ
Acting Assistant Attorney General                       Assistant Director
Civil Division

                                                        */s/ Lauren E. Fascett*
DREW C. ENSIGN                                          LAUREN E. FASCETT
Deputy Assistant Attorney General                       Senior Litigation Counsel
                                                        United States Department of Justice
                                                        Civil Division
                                                        Office of Immigration Litigation
                                                        General Litigation and Appeals Section
                                                        P.O. Box 868, Ben Franklin Station
                                                        Washington, D.C. 20044
                                                        Telephone: (202) 616-3466
                                                        Fax: (202) 305-7000
                                                        Email: lauren.fascett@usdoj.gov

                                                        *Attorneys for the United States*


12