**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 7:25-cv-00055-O |
| Plaintiff, | |
| vs. | **STUDENTS FOR AFFORDABLE TUITION'S BRIEF IN SUPPORT OF ITS OPPOSED MOTION TO INTERVENE** |
| STATE OF TEXAS, | |
| Defendant, | |
| and | |
| STUDENTS FOR AFFORDABLE TUITION | |
| Defendant-Intervenor | |

## <u>TABLE OF CONTENTS</u>

Page(s)

I.     INTRODUCTION…………………………………………………..……………1

II.    BACKGROUND……………………………………………………………......2

    a.   Statutory History………………………………………………………………2

    b.   This Action…………………………………………….........………………………...3

    c.   Movant Students for Affordable Tuition…………………………….…………….4

III.   ARGUMENT………………………………………………………………5

    a.   Intervention as of Right…………………………………………….........................5

        i.    Timeliness……………………………………………….........………………......6

        ii.   Interest in Action……………………………………………….........………………8

        iii.  Disposition of the Case Will Impair or Impede Movant's Ability to Protect Its

            Interest………………………………………………........................................10

        iv.   The Existing Parties Do Not Adequately Represent Movant's Interests………...11

    b.   Permissive Intervention……………………………….…………........…….........12

IV.    CONCLUSION…………………………………………………….………........13

## TABLE OF AUTHORITIES

Cases                                                                                           Page(s)

*8fig, Inc. v. Stepup Funny, L.L.C.*,
   135 F.4th 285 (5th Cir. 2025) ................................................................ 12

*Adam Joseph Res. v. CNA Metals Ltd.*,
   919 F.3d 856 (5th Cir. 2019) .................................................................. 7

*Amstar Corp. v. S. Pac. Transp. Co. of Texas & Louisiana*,
   607 F.2d 1100 (5th Cir. 1979) ................................................................ 12

*Diaz v. S. Drilling Corp.*,
   427 F.2d 1118 (5th Cir. 1970) ................................................................ 8

*Edwards v. City of Houston*,
   78 F.3d 983 (5th Cir. 1996) ............................................................. 5, 10

*Grutter v. Bollinger*,
   188 F.3d 394 (6th Cir. 1999) ................................................................ 10

*Heaton v. Monogram Credit Card Bank of Ga.*,
   297 F.3d 416 (5th Cir. 2002) ........................................................... 8, 10

*NBIS Constr. & Transp. Ins. Servs. v. Kirby Smith Mach., Inc.*,
   2021 WL 4227787 (N.D. Tex. Apr. 8, 2021) ............................................. 13

*New Orleans Pub. Serv. v. United States Gas Pipe Line Co.*,
   732 F.2d 452 (5th Cir. 1984) ........................................................... 8, 13

*Ross v. Marshall*,
   426 F.3d 745 (5th Cir. 2005) ........................................................... 5, 10

*Sierra Club v. Espy*,
   18 F.3d 1202 (5th Cir. 1994) ................................................................. 6

*Sierra Club v. Fed. Emergency Mgmt. Agency*,
   2008 WL 2414333 (S.D. Tex. June 11, 2008) .......................................... 12

*Sierra Club v. Glickman*,
   82 F.3d 106 (5th Cir. 1996) ................................................................. 10

*Spangler v. Pasadena City Bd. of Ed.*,
   552 F.2d 1326 (9th Cir. 1977) ............................................................... 13

*Stallworth v. Mansanto Co.*,
   558 F.2d 257 (5th Cir. 1977) ................................................................. 6

*Texas v. United States*,
   805 F.3d 653 (5th Cir. 2015) .......................................................... Passim

*Trbovich v. United Mine Workers*,
   404 U.S. 528 (1972) .......................................................................... 11

*United States v. City of Miami, Fla.*,
   664 F.2d 435 (5th Cir. 1981) ................................................................ 11

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*,
   834 F.3d 562 (5th Cir. 2016) ............................................................. 6, 8

Statutes

8 U.S.C. § 1623(a) ............................................................................ 2, 3

Texas Educ. Code § 54.051(c) ........................................................................................ 4
Texas Educ. Code § 54.051(m) .............................................................................. 1, 2, 3
Texas Educ. Code § 54.052(a) ........................................................................................ 2
Texas Educ. Code § 54.052(a)(3) ........................................................................... 1, 2, 3

Rules

Fed. R. Civ. P. 24 ............................................................................................... 6, 10
Fed. R. Civ. P. 24(a) ................................................................................................ 1
Fed. R. Civ. P. 24(a)(2) ..................................................................................... 5, 10
Fed. R. Civ. P. 24(b) ......................................................................................... 1, 12
Fed. R. Civ. P. 24(b)(3) ......................................................................................... 12

Other Authorities

Texas House Bill 1403 .......................................................................................... 2

Students for Affordable Tuition submits this brief in support of its opposed Motion to Intervene.

## I. INTRODUCTION

Plaintiff United States of America and Defendant State of Texas (collectively, the "Parties") have—in one day—agreed to put an end to Texas Education Code §§ 54.051(m), 54.052(a)(3), a two-decades-old Texas law that allowed eligible students without lawful immigration status to pay reduced tuition rates at public universities and colleges in Texas. This action represents an unprecedented attempt by the executive branches of the United States of America and the State of Texas to invalidate a long-standing state statute through a contrived legal challenge designed to prevent sufficient notice and robust consideration before stripping away significant interests from affected third parties.

Students for Affordable Tuition (hereinafter, "SAT" or "Movant") is an association of some of those affected parties. It is an unincorporated association that is comprised of college students without lawful immigration status who are united for the purpose of advocating for and ensuring access to affordable higher education in Texas, including maintaining the state's reduced in-state tuition rates for residents without lawful immigration status. Accordingly, Movant has significant interests in the validity of the challenged provisions.

The Parties' joint motion for entry of consent judgment and its entry without hearing—on the same day the action was filed—prevented Movant from intervening in the action before the Court entered judgment. Nevertheless, Movant has sought intervention at the earliest possible time. Movant seeks intervention as a matter of right under Federal Rule of Civil Procedure 24(a) for purposes of appeal. In the alternative, Movant respectfully requests permissive intervention under Fed. R. Civ. P. 24(b), as its claims and defenses share common questions of law and fact with the

main action, and its intervention for purposes of an appeal will significantly contribute to the just and equitable resolution of the important issues at stake.

Accordingly, Movant respectfully requests that the Court grant its Motion to Intervene to ensure a true adversarial process and a fair consideration of the validity of the challenged provisions.

## II.    BACKGROUND

### a.  Statutory History

In 1996, the United States Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act. As it relates to this action, the Act states the following:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

8 U.S.C. § 1623(a). Five years later, Texas enacted House Bill 1403, known as the Texas Dream Act, which amended the Texas Education Code. As it relates to this action, Texas Education Code § 54.051(m) states that:

> Unless the student establishes residency or is entitled or permitted to pay resident tuition as provided by this subchapter, tuition for a student who is a citizen of any country other than the United States of America is the same as the tuition required of other nonresident students.

And Texas Education Code § 54.052(a) provides that "the following persons are considered residents of this state for purposes of this title:

> . . .
> (3) a person who:
>     (A) graduated from a public or private high school in this state or received the equivalent of a high school diploma in this state; and
>     (B) maintained a residence continuously in this state for:

(i) the three years preceding the date of graduation or receipt of the diploma equivalent, as applicable; and

(ii) the year preceding the census date of the academic term in which the person is enrolled in an institution of higher education.

These challenged provisions have been in effect since 2001 and have allowed thousands of students to afford a higher education in Texas.

### b. This Action

On June 4, 2025, the United States of America filed this lawsuit against the State of Texas to prevent students without lawful immigration status from paying reduced tuition rates. *See* Dkt. 1. Specifically, Plaintiff alleges that the challenged provisions are expressly preempted by 8 U.S.C. § 1623(a). *See id.* at 11. That same day—instead of defending its own law—Defendant State of Texas joined Plaintiff United States of America in filing a Joint Motion for Entry of Consent Judgment. *See* Dkt. 6. The Parties asked the Court to enter a final judgment declaring that the challenged provisions violate the Supremacy Clause of the United States Constitution, and issuing a permanent injunction that prohibits Defendant State of Texas, as well as its successors, agents, and employees, from enforcing the challenged provisions. *See id.* at 2–3.

The Court granted the Parties' motion and entered final judgment that same day without any hearing or opportunity for the public to consider the proposed final judgment. *See* Dkt. 8. The Court declared "that the challenged provisions, Texas Education Code §§ 54.051(m), 54.052(a), as applied to aliens who are not lawfully present in the United States, violate the Supremacy Clause and [are] unconstitutional and invalid." *Id.* The Court also permanently enjoined Defendant State of Texas, as well as its "successors, agents, and employees, from enforcing Texas Education Code § 54.051(m) and § 54.052(a), as applied to aliens who are not lawfully present in the United States." *Id.*

///

### c. Movant Students for Affordable Tuition

SAT is an unincorporated association whose members reside and attend public colleges and universities in Texas. It is comprised of students without lawful immigration status who rely on paying reduced tuition rates to afford their education. SAT exists for the purpose of promoting, advocating for, and ensuring access to affordable higher education in Texas, including maintaining the state's reduced tuition rates for certain students without lawful immigration status. Relying on guarantees from the State of Texas—for over twenty years—that they would qualify for in-state tuition rates, SAT's members decided to pursue higher education in Texas. However, because of this lawsuit and the Court's final judgment, SAT's members face increases of up to 810% of their higher education costs. Specifically, some tuition rates will increase from $50 per semester credit hour to $455 per semester credit hour.[1] Such an increase puts college out of reach for many students—some of whom have already spent years in college and will not afford to complete their program.

For example, one of SAT's members is a Deferred Action for Childhood Arrivals ("DACA") recipient who is currently pursuing his Bachelor of Science degree in biomedical science at the University of Texas Rio Grande Valley. He is in his third year and was planning to attend medical school after graduation. He relied on Texas's promise of reduced tuition rates when he decided to attend college in Texas. He will experience significant hardship if he is now forced to pay out-of-state tuition for his education. He will almost certainly not pursue a medical doctorate if he is forced to pay higher tuition rates.

Another SAT member is a DACA recipient currently pursuing a Master of Science degree in clinical mental-health counseling at the University of North Texas. She has been diligently

---

[1] *Compare* Texas Educ. Code § 54.051(c), *with* https://reportcenter.highered.texas.gov/reports/data/tuition-rate-for-nonresident-and-foreign-students-ay-2025-2026/ (last accessed June 10, 2025).

working on her degree since 2020 and has been paying her educational expenses out of pocket. She has been able to afford her education because she was able to pay reduced tuition rates. However, she cannot afford to pay out-of-state tuition and will likely be forced to drop out of her program.

A third SAT member is a DACA recipient currently pursuing a Master of Education degree in higher education at the University of Houston. She is approximately halfway done with her degree and had planned to pursue a doctorate upon graduation. She is paying for her education out of pocket and has been able to afford it because she was able to pay in-state tuition. Paying out-of-state tuition will force her to reduce her units per semester—significantly increasing the length of time to complete her degree. She will likely not pursue a doctorate degree if forced to pay out-of-state tuition rates.

Upon learning of the Parties' motion and the subsequent entry of judgment on June 4, 2025, Movant sought expeditiously to intervene in this action for purposes of pursuing an appeal.

### III.    ARGUMENT

#### a.  Intervention as of Right

A motion to intervene under Fed. R. Civ. P. 24(a)(2) is proper when:

(1) the motion to intervene is timely; (2) the potential intervener asserts an interest that is related to the property or transaction that forms the basis of the controversy in the case into which she seeks to intervene; (3) the disposition of that case may impair or impede the potential intervener's ability to protect her interest; and (4) the existing parties do not adequately represent the potential intervener's interest.

*Ross v. Marshall*, 426 F.3d 745, 753 (5th Cir. 2005). "[T]he inquiry under subsection (a)(2) is a flexible one, which focuses on the particular facts and circumstances surrounding each application," and "intervention of right must be measured by a practical rather than technical yardstick." *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996) (internal quotation marks

and citations omitted). Intervention should generally be allowed where "no one would be hurt and greater justice could be attained." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (internal quotation marks and citation omitted). "Although the movant bears the burden of establishing its right to intervene, Rule 24 is to be liberally construed." *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016) (internal quotation marks omitted).

Here, the unique circumstances of this action plainly warrant granting intervention.

### i. Timeliness

Courts analyze the timeliness factor via four factors. *See Stallworth v. Mansanto Co.*, 558 F.2d 257, 264–66 (5th Cir. 1977). Those are:

> (1) "[t]he length of time during which the would-be intervenor actually or reasonably should have known of his interest in the case before he petitioned for leave to intervene;" (2) "[t]he extent of prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case;" (3) "[t]he extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied; "and (4) "[t]he existence of unusual circumstances militating either for or against a determination that the application is timely."

*Id.* The expedited timeline of this action and the expeditious filing of the motion for intervention weigh in favor of granting the intervention. First, this action was filed—and adjudicated—on June 4, 2025. *See* Dkts. 1 (complaint), 8 (order and final judgment). Once the Parties stipulated to an entry of consent judgment, it became evident that Defendant State of Texas would not defend its own statute. Thus, Movant sought to expeditiously intervene. Indeed, Movant is moving for intervention merely seven days after Plaintiff filed the action and the Court entered final judgment.

Second, there is no credible prejudice to the Parties by filing the motion seven days later. In assessing this factor, "prejudice must be measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervenor to participate in the litigation."

*Sierra Club*, 18 F.3d at 1206. The Parties may nevertheless argue that intervention after an entry of judgment is prejudicial because it will revive and extend the case, but there was no need to resolve this action in such an expedited manner. The challenged provisions have been in effect since 2001 and there is nothing to suggest the need for a same-day decision. Any prejudice associated with lengthening the case stems not from Movant's intervention, but from the legally-flawed consent judgment hurried through by the parties. Given the significant impact on third parties, including Movant's members, the situation called for time to allow interested parties to intervene—or at least file *amicus* briefs—to be considered at a hearing. Thus, the fact that the Court has entered judgment in this action does not bar Movant from seeking timely intervention because Courts often consider post-settlement motions to intervene. *See Adam Joseph Res. v. CNA Metals Ltd.*, 919 F.3d 856, 864 (5th Cir. 2019) (collecting cases).

To the contrary, regarding the third factor, Movant would be significantly prejudiced if the Court denies the requested intervention. Because the Court has declared the challenged provisions unconstitutional and permanently enjoined Defendant from enforcing the challenged provisions, Movant has already suffered injury—and will continue to suffer injury unless it can obtain relief in an appeal. Specifically, Movant's members will have to now pay higher tuition rates instead of the reduced tuition rates they relied upon when they decided to attend college in Texas. Because Defendant consented to the entry of judgment, it is very unlikely to file an appeal, thus allowing the Court's final judgment to be the final say in the matter and cementing Movant's injuries.

Finally, the circumstances of this action are unusual and indicate timeliness. Specifically, the Parties filed a joint motion for entry of consent judgment the same day the action was filed, which the Court also granted the same day. By agreeing to a stipulated entry of judgment the same day the action was filed, the Parties did not provide interested third parties enough time to seek

intervention before an entry of judgment. By failing to schedule a public hearing, the Court also prevented pre-judgment intervention.

Accordingly, Movant's motion is timely.

### ii. Interest In Action

The second intervention factor requires that a movant "claim an interest in the subject matter of the action." *Heaton v. Monogram Credit Card Bank of Ga.*, 297 F.3d 416, 422 (5th Cir. 2002). A movant must demonstrate a "direct, substantial, legally protectable interest in the proceedings." *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) (internal quotation marks omitted). However, an interest does not have "to be of a legal nature identical to that of the claims asserted in the main action." *Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1124 (5th Cir. 1970). Indeed, "[a]ll that is required by the terms of the rule is an interest in . . . [the] rights that are at issue, provided the other elements of the intervention are present." *Id.* A legally protectable interest exists when the intervenor has more than a generalized preference in the outcome; it must have a concrete stake in the matter. *Id.*

Here, Movant seeks to intervene to protect the interests of its members, comprised of students who could be directly and adversely affected by the elimination of reduced tuition benefits. While there is no clear definition of the interest required for intervention, the central question is whether the interest is "legally protectable." *See New Orleans Pub. Serv. v. United States Gas Pipe Line Co.*, 732 F.2d 452, 464 (5th Cir. 1984). Movant satisfies this requirement because its members would be directly affected. In addition, SAT itself represents its members' interests in this area as its core purpose. The invalidation of the challenged provisions hinders that purpose. *See Wal-Mart*, 834 F.3d at 568 (noting that a "legally protectable interest" can be "a tautological exercise—a party may intervene if its interest is legally protectable and its interest is

legally protectable if it can intervene."); *Texas*, 805 F.3d at 658 ("[A]n interest that is concrete, personalized, and legally protectable is sufficient to support intervention.").

Students without lawful immigration status face an imminent and severe financial hardship if reduced tuition rates are eliminated for them. Without access to reduced tuition rates, these students would be forced to pay prohibitively high out-of-state tuition rates. As an illustration, a student paying $50 per semester unit would pay $750 for a 15-unit semester. Without reduced tuition rates, that same student would owe $6,825 per semester—over a ninefold increase. Many students without lawful immigration status come from low-income backgrounds and are ineligible for federal financial aid. As discussed, one of SAT's members sought to pursue his medical school education in Texas because of the reduced tuition law. However, with the invalidation of the challenged provisions, he will experience severe financial hardship if he decides to pursue his medical education in Texas as a result of higher tuition rates. Similarly, another member of SAT is currently enrolled at the University of North Texas for her Master of Science degree in clinical mental-health counseling and has been paying her expenses out of pocket. If she is forced to pay out-of-state tuition rates, she would likely withdraw from her program as a result of the increased tuition rates. Without affordable reduced tuition rates, SAT members may be forced to drop out of college or be unable to start their education at all. This hardship is not speculative—it is a direct result of eliminating reduced tuition rates for students without lawful immigration status.

Accordingly, Movant has a direct and substantial interest in this action. It is an unincorporated association comprised of students without lawful immigration status, which exists for the purpose of promoting, advocating for, and ensuring access to affordable higher education in Texas. Its members face real and irreparable harm from the loss of reduced tuition benefits. That interest of ensuring students without lawful immigration status can continue their education

without undue financial hardship "is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim." *Texas*, 805 F.3d at 659. Because the outcome of this action will affect Movant's members, Movant has a legally protectable interest.

### iii. Disposition of The Case Will Impair or Impede Movant's Ability To Protect Its Interest

The third factor requires a movant to demonstrate that the disposition of the action "may impair or impede [its] ability to protect [its] interest" in the subject matter of the litigation. *Heaton*, 297 F.3d at 422. Rule 24(a)(2) does not require a movant to show that it will "be bound by the disposition of the action." *Edwards*, 78 F.3d at 1004. Rather, "the *stare decisis* effect of an adverse judgment constitutes a sufficient impairment to compel intervention." *Sierra Club v. Glickman*, 82 F.3d 106, 110 (5th Cir. 1996) (citation omitted). The Fifth Circuit has also held that impairment exists where "the disposition of the underlying suit has […] the *potential* to impair" the applicant's interest. *See Ross*, 426 F.3d at 760–61 (emphasis added). The advisory committee notes to Rule 24(a) are also instructive: "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." Fed. R. Civ. P. 24 Advisory Comm. Note to 1996 Amend. "This burden is minimal." *See Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999) (rejecting the notion that Rule 24(a)(2) requires a specific legal or equitable interest).

Here, SAT satisfies this requirement because the outcome of this action threatens to impair its members' ability to carry out its purpose and advocate on behalf of students without lawful immigration status. Movant is an unincorporated association of students without lawful immigration status seeking to retain affordable tuition rates, and the group advocates for affordable

tuition rates. The elimination of reduced tuition rates would directly harm its members. If students without lawful immigration status are required to pay higher out-of-state-tuition rates, many of them will be unable to afford the cost of attendance. As shown above, many of SAT's members may have to reduce their coursework, delay graduation, or withdraw from college. This is sufficient to support intervention. In *Texas v. United States*, a case challenging Deferred Action for Parents of Americans and Lawful Permanent Residents (DAPA) program, the Fifth Circuit reversed the district court's denial of a motion to intervene and held that the defendant-intervenors had a protectable interest that was subject to impairment because, distinguishing among similar cases, although "the intervenors do not have a legal entitlement to particular jobs […] their interest in having access to job opportunities is sufficiently concrete and particularized to support intervention." 805 F.3d at 660. The same reasoning applies here:  members of SAT have a "real, concrete stake in the outcome of this litigation" on the basis that they are "the intended beneficiaries of the program being challenged." *Id.* at 661.

Because the outcome of this litigation would substantially hinder SAT's purpose and harm its members, its interest would be impaired if Plaintiff prevails.

### iv.  The Existing Parties Do Not Adequately Represent Movant's Interests

In seeking intervention, Movant has the burden of demonstrating inadequate representation, but this burden is "minimal." *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n. 10 (1972). The applicant need only show that representation "may be" inadequate. *Id.* Here, Defendant State of Texas failed to represent Movant's interests when it willingly entered into an expedited agreement to have its own law declared unconstitutional and to be enjoined from enforcing it. *See generally* Dkt. 6. Notably, Defendant State of Texas did nothing to inform the court of the effect on third parties, which the Fifth Circuit requires courts to consider. *See United*

*States v. City of Miami, Fla.*, 664 F.2d 435, 441 (5th Cir. 1981) ("If the decree also affects third parties, the court must be satisfied that the effect on them is neither unreasonable nor proscribed.") (citation omitted).

Further, intervention is warranted when the proposed intervenors "occup[y] a different position and [have] different interests" than the existing defendants. *See Sierra Club v. Fed. Emergency Mgmt. Agency*, No. H-07-0608, 2008 WL 2414333, at *7 (S.D. Tex. June 11, 2008). Herer, Movant and Defendant State of Texas have opposing objectives regarding the validity of the challenged provisions. *See Texas*, 805 F.3d at 664 (holding that an "adversity of interest" is sufficient to "rebut[] the presumption of adequate representation"). Defendant State of Texas is also very unlikely to seek an appeal. In fact, the Fifth Circuit has held that parties may be precluded from an appeal when they freely consented to the entry of a final judgment. *See Amstar Corp. v. S. Pac. Transp. Co. of Texas & Louisiana*, 607 F.2d 1100, 1100 (5th Cir. 1979) (precluding appeal after consent judgment even when parties stipulated intent to appeal).

Accordingly, Movant's interests are not adequately represented by the existing parties.

### b. Permissive Intervention

Should the Court determine that Movant is not entitled to intervene as a matter of right, Movant asks the Court to exercise its discretion to allow permissive intervention under Fed. R. Civ. P. 24(b). "To intervene by permissive intervention, a putative intervenor must show that they are: (A) given a conditional right to intervene by a federal statute; or (B) [have] a claim or defense that shares with the main action a common question of law or fact." *8fig, Inc. v. Stepup Funny, L.L.C.*, 135 F.4th 285, 290 (5th Cir. 2025) (internal quotation marks and citation omitted). The Court must also "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Further, in acting on a request for

permissive intervention, "it is proper to consider, among other things, 'whether the intervenors' interests are adequately represented by other parties' and whether they 'will significantly contribute to full development of the underlying factual issues in the suit.'" *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 472 (5th Cir. 1984) (quoting *Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977)).

Here, Movant has defenses that share many questions of law and fact with the action as a whole. Movant seeks to validate the same law that the Parties have consented to invalidate. Further, intervention in this context will not unduly delay or prejudice the adjudication of the original parties' rights because the intervention is for purposes of appeal. *See NBIS Constr. & Transp. Ins. Servs. v. Kirby Smith Mach., Inc.*, No. 5:20-CV-182, 2021 WL 4227787, at *1 (N.D. Tex. Apr. 8, 2021) ("[N]o deadlines will need to be moved, no additional discovery will be necessary, and no delay will occur, and, therefore, the parties will not be prejudiced ...."). Again, any prejudice claimed by the parties pertaining to reviving the case is of their own creation by hurrying a consent judgment the same day the action was filed.

## IV.    CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court grant its motion to intervene.


Dated: June 11, 2025                                Respectfully submitted,

                                                    */s/ Nina Perales*
                                                    Nina Perales (Tex. Bar No. 24005046)
                                                    MEXICAN AMERICAN LEGAL DEFENSE
                                                    AND EDUCATIONAL FUND
                                                    110 Broadway, Suite 300
                                                    San Antonio, Texas 78205
                                                    Facsimile: (210) 224-5382
                                                    Email: nperales@maldef.org

Thomas A. Saenz (Cal. Bar No. 159430)*
Fernando Nunez (Cal. Bar No. 327390)*
Luis L. Lozada (Cal. Bar No. 344357)*
MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND
634 South Spring Street, 11th floor
Los Angeles, CA 90014
Facsimile: (213) 629-0266
Email: tsaenz@maldef.org
fnunez@maldef.org
llozada@maldef.org

*Attorneys for Students for Affordable Tuition*

*\*Pro Hac Vice Applications Forthcoming*