# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### WICHITA FALLS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| *Plaintiff* | **CIVIL No. 7:25-cv-00055-O** |
| **v.** | |
| **STATE OF TEXAS,** | |
| *Defendant.* | |

---

**PROPOSED INTERVENORS' SUPPLEMENT TO APPENDIX IN SUPPORT OF**
**(1) EMERGENCY MOTION TO INTERVENE,**
**(2) EMERGENCY MOTION TO ALTER OR AMEND JUDGMENT UNDER RULE**
**59 AND/OR FOR RELIEF UNDER RULE 60(b), and**
**(3) EMERGENCY MOTION FOR STAY OF FINAL JUDGMENT**

---

Proposed Intervenors Austin Community College ("ACC"), La Unión del Pueblo Entero ("LUPE"), and Oscar Silva ("Silva") file this Supplement to the Appendix in Support of the above-referenced motions (Dkt. 19).

| Ex. | Description | App. Pages |
|---|---|---|
| **17** | NBC Article dated June 26, 2025 – DOJ coordinated with Texas AG to kill Texas Dream Act, Trump official says | **144-148** |
| **18** | *United States v. Tim Walz et al*, Case No. 025-cv-02668 (D. Minn. June 25, 2025) | **149-185** |

Dated: June 30, 2025                        Respectfully submitted,

                                           */s/ Andrés Correa*
                                           Andrés Correa
                                           Texas Bar No. 24076330
                                           acorrea@lynnllp.com
                                           Christopher Patton
                                           Texas Bar No. 24083634
                                           cpatton@lynnllp.com
                                           Yaman Desai
                                           Texas Bar No. 24101695
                                           ydesai@lynnllp.com
                                           Kyle A. Gardner
                                           Texas State Bar No. 24116412
                                           kgardner@lynnllp.com
                                           Zhenmian Xu
                                           Texas Bar No. 24135820
                                           sxu@lynnllp.com
                                           **LYNN PINKER HURST & SCHWEGMANN, LLP**
                                           2100 Ross Avenue, Suite 2700
                                           Dallas, Texas 75201
                                           (214) 981-3800 Telephone
                                           (214) 981-3839 Facsimile

                                           Kassandra Gonzalez (*pro hac*)
                                           Texas Bar No. 24116439
                                           kassandra@texascivilrightsproject.org
                                           Molly Petchenik
                                           Texas Bar No. 24134321
                                           molly@texascivilrightsproject.org
                                           Daniel Woodward (*pro hac*)
                                           Texas Bar No. 24138347
                                           danny@texascivilrightsproject.org
                                           **TEXAS CIVIL RIGHTS PROJECT**
                                           P.O. Box 17757
                                           Austin, TX 78760
                                           (512) 474-5073 ext. 182 Telephone
                                           (512) 474-0726 Facsimile

Daniel Hatoum (*pro hac*)
Texas Bar No. 24099136
daniel@texascivilrightsproject.org
**TEXAS CIVIL RIGHTS PROJECT**
1017 W. Hackberry Ave.
Alamo, TX 78516
(512) 474-5073 ext. 182 Telephone
(512) 474-0726 Facsimile

Efrén C. Olivares
Texas Bar No. 24065844
Federal Bar No. 1015826
olivares@nilc.org
Tanya Broder*
California Bar. No. 136141
broder@nilc.org
**NATIONAL IMMIGRATION LAW CENTER**
P.O. Box 34573
Washington, DC 20005-9997
 (213) 674-2817 Telephone

David Donatti
Texas Bar No. 24097612
ddonatti@aclutx.org
Adriana Pinon
Texas Bar No. 24089768
apinon@aclutx.org
Edgar Saldivar
Texas Bar No. 24038188
esaldivar@aclutx.org
Sarah Corning*
Texas Bar No. 24144442
scorning@aclutx.org
**ACLU FOUNDATION OF TEXAS**
P.O. Box 8306
Houston, TX 77288
(713) 942-8146

Joshua M. Salzman*
D.C. Bar No. 982239
jsalzman@democracyforward.org
Brian D. Netter*
D.C. Bar No. 979362
bnetter@democracyforward.org
Paul R.Q. Wolfson*
D.C. Bar No. 414759
pwolfson@democracyforward.org
Skye L. Perryman*
Texas Bar No. 24060411
sperryman@democracyforward.org
**DEMOCRACY FORWARD FOUNDATION**
P.O. Box 34553
Washington, D.C. 20043
Tel: (202) 448-9090

*Pro Hac Vice Application Forthcoming*

**ATTORNEYS FOR PROPOSED INTERVENORS LA UNIÓN DEL PUEBLO ENTERO, AUSTIN COMMUNITY COLLEGE, AND OSCAR SILVA**

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2025, a true and correct copy of the foregoing document was electronically filed via the Court's CM/ECF system which sends notice of electronic filing to all counsel of record.

/s/ Andrés Correa
Andrés Correa

# EXHIBIT 17



JUSTICE DEPARTMENT

# DOJ coordinated with Texas AG to kill Texas Dream Act, Trump official says

The official said the Justice Department was able to scrap a Texas law giving undocumented immigrants in-state tuition "in six hours" by working with state Attorney General Ken Paxton.



—  Immigrants rights supporters march in Los Angeles on March 1.  Mario Tama / Getty Images

June 26, 2025, 4:00 AM CDT

**By Ryan J. Reilly**

WASHINGTON – A top Justice Department official boasted at a private Republican gathering that the Trump administration was able to kill a Texas law that gave undocumented immigrants in-

state tuition "in six hours" by coordinating with Texas Attorney General Ken Paxton, according to a recording obtained by NBC News.

On June 4, the Justice Department sued Texas over the Texas Dream Act, then quickly filed a joint motion with Texas asking a judge to declare the law unconstitutional and permanently enjoin Texas from enforcing the law. The same day, the judge did.

ADVERTISING



Outside organizations sought to invalidate the ruling Tuesday, arguing that the Justice Department and Paxton's office "colluded to secure an agreed injunction" and engaged in improper "legal choreography" to obtain their desired outcome.

Speaking at the Republican Attorneys General Association a day after the quick court victory, Deputy Associate Attorney General Abhishek Kambli seemed to confirm that.

"So just yesterday, we had filed a lawsuit against Texas, had a consent decree the same day, or consent judgment, and it got granted hours later," Kambli told participants, according to audio obtained by NBC News. "And what it did was, because we were able to have that line of communication and talk in advance, a statute that's been a problem for the state for 24 years, we got rid of it in six hours."

Kambli, who previously worked for Kansas Attorney General Kris Kobach, added that the Justice Department has "good relationships" with state attorneys general, which allows it to "get things done."

Kambli also said the second Trump administration "is learning how to be offensive-minded," according to the audio.

"I think that was the biggest critique the first time around in the first Trump administration – there were a lot of missed opportunities to wield federal government power for the things that we value that just never happened," Kambli said. "But this time we've brought in a lot of people from state AG world that have done that kind of litigation, know how to do it and have been doing it."

Paxton's office did not respond to a request for comment.

A Justice Department spokesman did not dispute that Kambli made the statements and said it was "pretty standard" for Justice Department lawyers to notify state attorneys general of federal lawsuits ahead of time. He cited a Justice Department policy that providing fair warning to state attorneys general before filing lawsuits could "resolve matters prior to litigation."

The Justice Department filed the lawsuit before U.S. District Judge Reed O'Connor, a George W. Bush nominee in the Wichita Falls Division in the Northern District of Texas whose court has become a destination for conservative litigants seeking favorable outcomes.

The groups Democracy Forward, the ACLU Foundation of Texas and the National Immigration Law Center filed a motion Tuesday on behalf of La Unión del Pueblo Entero, a union founded by César Chávez. They argued that the sequence of events "compels one conclusion: the United States and the Texas Attorney General colluded to predetermine the outcome of the case."

The motion added: "The founders did not design our adversarial system for shadowboxing between co-parties. The system demands opposition, argument, and deliberation – not consent decrees masquerading as litigation."

Skye Perryman, the president and CEO of Democracy Forward, criticized Paxton for not defending the bipartisan Texas Dream Act, which the Legislature passed and Gov. Rick Perry signed more than two decades ago. She noted that the Legislature had declined to repeal the law.

Paxton recently announced that he is going to challenge U.S. Sen. John Cornyn in the Republican primary next year – a GOP-versus-GOP battle between two men who have been sparring for years and vying for President Donald Trump's attention.

"Instead of defending the law of Texas ... Attorney General Paxton colluded with the Trump-Vance administration to try to eliminate the law through the courts," Perryman said in a statement. "This maneuver is a misuse of the courts. If Attorney General Paxton will not defend Texans, we will. We are committed to ensuring that this cynical move is opposed, to defending the Texas Dream Act, and to supporting the courage of our clients."

Carl Tobias of the University of Richmond School of Law said the heads of the Texas House and Senate should be concerned that Paxton's office declined to defend a state law.

"The whole American premise of settling a case is that you have people who have conflicting interests and that's why they're in court to begin with," Tobias said. "But of course, we know for political reasons, they're probably not."

Saikrishna Prakash of the University of Virginia School of Law, who has researched the duty of state attorneys general to defend laws in all 50 states, said more attorneys general are willing to say laws are unconstitutional.

"Part of the reason why they're more willing to do that is a political reason, that they want to be senator or a governor," he said.

Prakash said that across Republican and Democratic presidential administrations, there has recently been a tendency to settle when a litigant takes a position the administration supports. Administrations also want settlements that will bind the next president to policies their parties support.

"In my mind, it's not a good way to run a railroad, whether done by Biden or by Trump," Prakash said.

Meanwhile, the Trump administration is suing more states over in-state tuition policies for undocumented students. The Justice Department sued Kentucky last week over its policy of giving in-state tuition to undocumented migrants. On Wednesday, the Justice Department sued the state of Minnesota over its law doing the same.

In both instances, the Justice Department pointed to the outcome in the Texas case as justification.

---

 Ryan J. Reilly

Ryan J. Reilly is a justice reporter for NBC News.

---

# EXHIBIT 18

CHAD MIZELLE
Acting Associate Attorney General
ABHISHEK KAMBLI
Deputy Associate Attorney General
BRETT A. SHUMATE
Assistant Attorney General
Civil Division
YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division
ELIANIS N. PEREZ
Assistant Director
LUZ M. RESTREPO
Trial Attorney
Office of Immigration Litigation
General Litigation and Appeals Section
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**MINNEAPOLIS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | CIVIL No. _____ |
| v. | |
| TIM WALZ, the Governor of Minnesota in his official capacity; STATE OF MINNESOTA; KEITH ELLISON, Attorney General for the State of Minesota in his official capacity; MINNESOTA OFFICE OF HIGHER EDUCATION, | **COMPLAINT** |
| Defendants. | |

Plaintiff, the United States of America, by and through its undersigned counsel, brings

this civil action for declaratory and injunctive relief, and alleges as follows:

**INTRODUCTION**

Federal law prohibits States from providing aliens not lawfully present in the United States with any postsecondary education benefit that is denied to U.S. citizens. *See* 8 U.S.C. § 1623(a). That prohibition is categorical (*id.*), yet Minnesota is flagrantly violating it. This Court should put an end to this unequal treatment of Americans that is an unequivocal and ongoing violation of federal law by entering a permanent injunction against the enforcement of Minnesota State laws that mandate the grant of unlawful state benefits to aliens not lawfully present in the United States. These provisions are preempted by federal law and are thus unlawful. *See* Minn. Stat. §§ 135A.043, 136A.1465; *see also* U.S. Const. art. VI, cl. 2; *Arizona v. United States*, 567 U.S. 387, 399 (2012) ("There is no doubt that Congress may withdraw specified powers from the States by enacting a statute containing an express preemption provision.").

Sections 135A.043 and 136A.1465 of the Minnesota statutes explicitly classify aliens who are not lawfully present in the United States as residents under certain conditions, and thus eligible for reduced tuition and free tuition, respectively, for public state colleges while U.S. citizens from other states must pay higher out-of-state tuition rates and are ineligible for the free tuition. This discriminatory treatment in favor of aliens not lawfully present in the United States over U.S. citizens is squarely prohibited and preempted by federal law, which provides that "an alien who is not lawfully present in the United States *shall not be* eligible on the basis of residence within a State … for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit … without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a) (emphasis added). The challenged Minnesota statutes, as applied to aliens not lawfully present in the United States, thus violate the Supremacy Clause of the United States Constitution. This Court should declare Minnesota's laws, as applied to aliens not lawfully present in the United States, preempted and permanently enjoin their enforcement.

2

## JURISDICTION AND VENUE

1.     The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

2.     Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because a substantial portion of the events occurred in this district.

3.     The Court has the authority to provide the relief requested under the Supremacy Clause, U.S. Const. art. VI, cl. 2, as well as 28 U.S.C. §§ 1651, 2201, and 2202, and its inherent equitable powers.

## PARTIES

4.     Plaintiff, the United States of America, regulates immigration under its constitutional and statutory authorities, and it enforces federal immigration laws through its Executive agencies, including the Department of Justice and Department of Homeland Security (DHS), as well as DHS component agencies, U.S. Immigration and Customs Enforcement, U.S. Citizenship and Immigration Services, and U.S. Customs and Border Protection.

5.     Defendant Tim Walz is the Governor of Minnesota and is sued in his official capacity.

6.     Defendant State of Minnesota is a state of the United States.

7.     Defendant Keith Ellison is the Attorney General for the State of Minnesota and is sued in his official capacity.

8.     Defendant Minnesota Office of Higher Education (OHE) is a state agency created by state statute and is charged with making financial aid programs as well as in-state tuition accessible to qualifying students and helping students to gain access to postsecondary education, among other things. *See* Minn. Stat. § 136A.01; https://www.ohe.state.mn.us/mPg.cfm?pageID=894 (last visited June 23, 2025); *see also*

3

https://www.ohe.state.mn.us/mPg.cfm?pageID=2056 (last visited June 23, 2025) (making available on OHE's website the Minnesota Dream Act State Financial Aid Application and stating specifically that the application must be completed in order to qualify for state grants and reduced in-state tuition rates at eligible public state universities).

**FEDERAL LAW**

9.      The Constitution empowers Congress to "establish a uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," U.S. Const. art. I, § 8, cl. 3. The Constitution also vests the President of the United States with the "executive Power," U.S. Const. art. II, § 1, and authorizes the President to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3.

10.      The United States has well-established, preeminent, and preemptive authority to regulate immigration matters. This authority derives from the United States Constitution, numerous acts of Congress, and binding Supreme Court precedent.

11.      Based on its enumerated constitutional and sovereign powers to control and conduct relations with foreign nations, the Federal Government has broad authority to establish immigration laws.

12.      In Executive Order 14218 of February 19, 2025, *Ending Taxpayer Subsidization of Open Borders*, President Trump ordered Departments and Agencies to "ensure, to the maximum extent permitted by law, that no taxpayer-funded benefits go to unqualified aliens[.]" In Executive Order 14287 of April 28, 2025, *Protecting American Communities From Criminal Aliens*, President Trump ordered the relevant officials to ensure the "[e]qual [t]reatment of Americans" and to "take appropriate action to stop the enforcement of State and local laws, regulations, policies, and practices favoring aliens over any groups of American citizens that are unlawful,

4

preempted by Federal law, or otherwise unenforceable, including State laws that provide in-State higher education tuition to aliens but not to out-of-State American citizens[.]"

13.    These Orders derive from the President's statutory and constitutional authority to carry out and execute the prohibitions in 8 U.S.C. § 1623(a) against "not lawfully present" aliens receiving "eligib[ility] on the basis of residence within a State ... for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit ... without regard to whether the citizen or national is such a resident." The Orders reinforce congressionally authorized and enacted provisions underscoring and mandating that the Federal and state governments must not treat Americans unequally to aliens not lawfully present in the United States for eligibility of benefits. They also reiterate congressional intent, evidenced in several statutory provisions of the Immigration and Nationality Act (INA), to curb incentives for illegal immigration provided by the availability of various public benefits.

14.    Specifically, in 1996, Congress passed, and President Bill Clinton signed, the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA). *See* IRRIRA, Pub. L. No. 104-208, Div. C, §§ 306, 308, 110 Stat. 3009-546 (1996). One of the objectives of that statute was to promote immigrant self-sufficiency, reduce immigrant reliance on public assistance, and ensure that public benefits are not incentives to enter illegally. *Id.*; *see* 8 U.S.C. § 1601 ("Self-sufficiency has been a basic principle of United States immigration law since this country's earliest immigration statutes.").

15.    Congress declared that "aliens within the Nation's borders [should] not depend on public resources to meet their needs, but rather rely on their own capabilities and the resources of their families, their sponsors, and private organizations." *Id.* § 1601(2)(A).

16.     Congress emphasized that "the availability of public benefits [should] not constitute an incentive for immigration to the United States." *Id.* § 1601(2)(B). Moreover, Congress established that, as a matter of public policy, there "is a compelling government interest to enact new rules for eligibility and sponsorship agreements in order to assure that aliens be self-reliant in accordance with national immigration policy" and "to remove the incentive for illegal immigration provided by the availability of public benefits." 8 U.S.C. § 1601(5), (6).

17.     As relevant here, IIRIRA includes a clear "[l]imitation on eligibility preferential treatment of aliens not lawfully present on basis of residence for higher education benefits." 8 U.S.C. § 1623. Section 1623(a) provides that:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

18.     Section 1623(a) thus does not allow for states to provide illegal aliens with lower in-state tuition rates (also referred to as "resident tuition") based on residence within the state if that same tuition rate is not made available to all U.S. citizens without regard to their state residency. 8 U.S.C. § 1623(a).

19.     Minnesota's flagrant and ongoing violation of this prohibition is challenged by this suit.

## THE MINNESOTA LAWS

20.     In direct conflict with federal law, Minnesota law permits an alien who is not lawfully present in the United States to qualify for reduced in-state tuition rates and for free tuition

6

based on residence within the state. *See* Minn. Stat. §§ 135A.043, 136A.1465. At the same time, it

denies these benefits to U.S. citizens who do not qualify as Minnesota residents. *See id.*

<u>Minn. Stat. § 135A.043</u>

21.    Since 2013, Minnesota law[1] has allowed aliens not lawfully present in the United

States who establish residency in Minnesota under Minn. Stat. § 136A.101 (which references §

135A.043) to benefit from reduced, in-state tuition rates while denying that same benefit to U.S.

citizens who are not residents of Minnesota. *See* Laws of Minnesota 2013, ch. 99, art. 4.

22.    Minn. Stat. § 136A.101, Subdivision 8, enumerates several ways an individual

could qualify as a "resident student," including a student that is "eligible for resident tuition under

section 135A.043."

23.    Minn. Stat. § 135A.043, titled "Resident tuition" provides that:

(a) A student, other than a nonimmigrant alien within the meaning of
United States Code, title 8, section 1101, subsection(a), paragraph
(15), shall qualify for a *resident tuition rate* or its equivalent at state
universities and colleges if the student meets all of the following
requirements:
1. high school attendance within the state for three or more
years;
2. graduation from a state high school or attainment within the
state of the equivalent of high school graduation; and
3. in the case of *a student without lawful immigration status*:
(i) documentation that the student has complied with
selective service registration requirements; and (ii) if a
federal process exists for the student to obtain lawful
immigration status, the student must present the higher
education institution with documentation from federal
immigration authorities that the student has filed an
application to obtain lawful immigration status.

---

[1] The Minnesota Dream Act, also known as the Minnesota Prosperity Act, was signed into law in
2013 as part of an omnibus higher education bill, which grants eligible student aliens not lawfully
present in the United States, including Deferred Action for Children Arrivals recipients, with
access to in-state tuition rates public colleges and universities. *See*
https://www.ohe.state.mn.us/mPg.cfm?pageID=2056 (last visited June 23, 2025).

App. - 156

(emphases added).

24.    As evidenced above, Minnesota law does not require lawful presence in the United States to establish Minnesota residency and obtain in-state tuition rates. In fact, Minnesota law explicitly permits aliens without lawful immigration status to qualify as "resident students" and to receive reduced in-state tuition if they meet the three specific criteria listed in § 135A.043. *See* Minn. Stat. §§ 135A.043, 136A.101.

25.    Notably, one of the three criteria is that a student without lawful immigration status must present documentation that the student has complied with selective service registration requirements. Minn. Stat. § 135A.043(a)(3). While aliens without lawful status are required under federal law to register for selective service, this registration does not grant them legal status. *See* 50 U.S.C. § 3802(a).

26.    As to Minn. Stat. § 135A.043(a)(3)'s requirement that a student without lawful immigration status present documentation that the student has filed an application to obtain lawful immigration status if a federal process exists to do so, the OHE states on its website that "[t]here is currently not a federal process in place, so this documentation is not currently required." *See* https://www.ohe.state.mn.us/mPg.cfm?pageID=2056 (last visited June 23, 2025).

27.    The availability of reduced in-state tuition to aliens not lawfully present in the United States is also advertised on a public facing website where the OHE expressly states "[t]he MN Dream Act way of establishing residency does not require a student to have Deferred Action for Children Arrivals (DACA) *or any other lawfully present or legal status.*" *See* https://www.ohe.state.mn.us/mPg.cfm?pageID=2056 (last visited June 23, 2025) (emphasis added).

App. - 157

28.    Accordingly, under this Minnesota law, the tuition rate for an alien not lawfully present in the United States who meets § 135A.043's three criteria is the same as for other Minnesota residents. Conversely, U.S. citizens that do not qualify as Minnesota residents under § 135A.043 are forced to pay higher, nonresident tuition.

29.    The magnitude of this discrimination against U.S. citizens is substantial. The cost of tuition for resident students is *significantly* lower than for U.S. citizens that are not in-state residents. For example, at the University of Minnesota-Twin Cities, during the 2023-2024 school year, undergraduate tuition and fees were $16,488 for in-state students; but they were more than *twice* that—$36,402—for out-of-state students. *See* https://nces.ed.gov/collegenavigator/?s=MN&ct=1+2+3&ic=1+2+3&pg=7&id=174066#expense s (last visited June 23, 2025). The estimated undergraduate cost of tuition and fees for the 2025-2026 school year is $18,094 for Minnesota residents, and $40,556 for out-of-state students. *See* https://admissions.tc.umn.edu/cost-aid/cost-aid-scholarships/cost-attendance (last visited June 23, 2025).

30.    Out-of-state American citizens therefore pay substantially higher tuition than aliens who are not lawfully present in the United States but meet the Minnesota residency requirement under § 135A.043.

31.    While certain public colleges and universities in Minnesota offer access to reduced in-state tuition to all students regardless of their immigration status or state of residence, and while Minnesota has reciprocity agreements with some neighboring states, no other U.S. citizen can get reduced in-state tuition outside these limited allowances. *See* https://www.ohe.state.mn.us/mPg.cfm?pageID=1586 (last visited June 23, 2025); https://www.ohe.state.mn.us/mPg.cfm?pageID=97 (last visited June 23, 2025).

App. - 158

32.     For the year 2022, there were approximately 408,000 student aliens without lawful presence enrolled in U.S. institutions of higher education. *See* https://www.higheredimmigrationportal.org/state/minnesota/ (last visited June 23, 2025); *see also* https://www.higheredimmigrationportal.org/wp-content/uploads/2025/04/Undocumented-Students-in-Higher-Education-June-2024-2-pager-corrected.pdf (last visited June 23, 2025). Many of those unlawfully present alien students attended public universities in Minnesota.

<u>Minn. Stat. § 136A.1465</u>

33.     More recently, the Minnesota legislature passed, and Governor Walz signed into law, Minn. Stat. § 136A.1465 in 2023; it took effect on July 1, 2024. *See* Laws of Minnesota 2023, ch. 41, art. 2, § 19; *see also* https://www.house.mn.gov/hrd/pubs/ss/ssnsprom.pdf (last visited June 23, 2025). This law created the North Star Promise Program, a state-funded financial aid program administered by the OHE that awards free tuition and fees in the form of a scholarship to eligible students who attend Minnesota's public postsecondary institutions beginning in the fall term of the 2024-2025 academic year. *See* https://www.house.mn.gov/hrd/pubs/ss/ssnsprom.pdf (last visited June 23, 2025); Minn. Stat. § 136A.1465.

34.     The scholarship covers any leftover tuition and fees that have not already been covered by other gift aid sources, namely federal, state, private or institutional grants, scholarships, and tuition waivers (not but not loans or work study sources of income). *Id.* If there are no gift aid sources, the scholarship covers 100 percent of tuition and fees. *Id.* Additionally, a student eligible for the program can receive a supplementary award equaling up to 50 percent of a federal Pell grant. *Id.*

35.     In order to qualify for the state-funded free tuition scholarship, a student must meet several criteria, including completing a Free Application for Federal Student Aid (FAFSA) or a

state aid application,[2] having an annual family adjusted gross income below $80,000, and being enrolled in any public postsecondary educational institution, among other things. *Id.*

36.     Critically, to qualify for the free tuition scholarship, Minn. Stat. § 136A.1465 also requires that the student meet the definition of "a resident student under section 136A.101, subdivision 8." As discussed at paragraph 22 of the instant Complaint, § 136A.101, Subdivision 8, defines "resident student" as "a student eligible for resident tuition under section 135A.043." Minn. Stat. § 136A.101. In turn, § 135A.043 expressly permits aliens without lawful presence in the United States to qualify as "resident students" so long as they meet the enumerated criteria listed at paragraph 23 of the instant Complaint. Minn. Stat. § 135A.043(a)(3).

37.     Minnesota law thus awards free tuition and fees to aliens not lawfully present in the United States who meet the definition of "resident students" but discriminates against U.S. citizens by excluding them from eligibility for this financially significant award if they do not qualify as Minnesota residents. *See* Minn. Stat. §§ 135A.043, 136A.101, 136A.1465.

## THE CHALLENGED MINNESOTA STATUTES ARE PREEMPTED

38.     The Constitution's Supremacy Clause mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

---

[2] Although not referenced in Minn. Stat. § 136A.1465, the OHE's public-facing website lists the Minnesota Dream Act Application as one of the forms that a student can complete to qualify for the scholarship. *See* https://www.ohe.state.mn.us/sPages/northstarpromise.cfm (last visited June 23, 2025) (directing students who are undocumented to complete the Minnesota Dream Act application in order to apply for free college tuition through North Star Promise).

39.     Express preemption occurs when Congress, by statute, explicitly supersedes all state enactments in a particular area. *Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*, 461 U.S. 190, 203–04 (1983).

40.     Federal statutes may preempt state laws and render them ineffective. They may do this expressly, by declaring that intent on the face of the statute. *Arizona*, 567 U.S. at 399; *WinRed, Inc. v. Ellison*, 59 F.4th 934, 942 (8th Cir. 2023) ("Interpreting an express preemption provision, this court 'focu[es] on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent.") (citing *Watson v. Air Methods Corp.*, 870 F.3d 812, 817 (8th Cir. 2017)) (quoting *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 124 (2016)).

41.     "[U]nder the Supremacy Clause, from which our pre-emption doctrine is derived, any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Gade v. National Solid Wastes Management Assn.,* 505 U.S. 88, 108 (1992); *see Maryland v. Louisiana*, 451 U.S. 725, 746 (1981) (explaining that under the Supremacy Clause, state laws that conflict with federal law are "without effect."); *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (same); *Pet Quarters, Inc. v. Depository Trust & Clearing Corp.*, 559 F.3d 772, 780 (8th Cir. 2009) (federal statute expressly preempts a state law when Congress "defin[es] the scope of preemption" (citation omitted)).

42.     When the statute contains an express preemption clause, the court does not indulge "any presumption against pre-emption but instead 'focus[es] on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *Puerto Rico*, 579 U.S. at 125. Further, in determining whether a state law or regulation is preempted, "congressional purpose is 'the ultimate touchstone' ...." *In re Aurora Dairy Corp. Organic Milk Mktg. & Sales Practices Litig.*, 621 F.3d 781, 792 (8th Cir. 2010) (citation omitted); *see Malone v.*

*White Motor Corp.*, 435 U.S. 497, 504 (1978) ("'The purpose of Congress is the ultimate touchstone'" of pre-emption analysis.") (quoting *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103 (1963)).

43.    Here, the federal law—namely, 8 U.S.C. § 1623(a) explicitly overrides state resident tuition benefits for aliens not lawfully present in the United States. The Fifth Circuit has already held as much in *Young Conservatives of Texas Foundation v. Smatresk*, stating that § 1623(a) "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same." 73 F.4th 304, 312-13 (5th Cir. 2023). *See also Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585, 606 (E.D. Va. 2004) (stating, in the context of reduced in-state tuition, that under Section 1623(a) "public post-secondary institutions need not admit illegal aliens at all, but if they do, these aliens cannot receive in-state tuition unless out-of-state United States citizens receive this benefit").

44.    Moreover, with respect to the issue of reduced in-state tuition, a federal district court recently declared preempted under 8 U.S.C. § 1623(a) a Texas law permitting aliens not lawfully present in the United States to qualify as Texas residents eligible for in-state tuition if they meet the following: (1) they establish and maintain domicile continuously *or* graduate from a public or private school or acquire the equivalent of a high school diploma and maintain a residence continuously for a set period of time and (2) submits an affidavit stating that the person will apply to become a permanent resident in the U.S. as soon as the person becomes eligible to apply. *See* Exhibit A (Complaint and Order and Final Judgement, *United States v. Texas*, No. 25-cv-00055 (N.D. Tex. Jun. 4, 2025)).

45.    Section 1623(a) directs that "[n]otwithstanding any other provision of law," an alien not lawfully present in the United States "shall not be eligible on the basis of residence within a

State ... for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit ... without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a).

46.     As evidenced in the title, "Limitation on eligibility for preferential treatment of aliens not lawfully present on basis of residence for higher education benefits," Section 1623(a) requires that all U.S. citizens be eligible for a benefit, without regard to residency, before any alien not lawfully present in the United States can be eligible to receive the same benefit (based on residency).

47.     Therefore, the federal statute, 8 U.S.C. § 1623(a), preempts Minnesota's statutes that grant benefits to aliens not lawfully present in the United States when U.S. citizens do not receive the same. *See* Minn. Stat. §§ 135A.043, 136A.1465.

48.     By bestowing greater education benefits on aliens not lawfully present in the United States than U.S. citizens, Minn. Stat. § 135A0.43 and Minn. Stat. § 136A.1465 are preempted and therefore violate the Supremacy Clause.

## CLAIM FOR RELIEF

## VIOLATION OF THE SUPREMACY CLAUSE
## (EXPRESS PREEMPTION)

49.     Plaintiff hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

50.     The challenged provisions of Minn. Stat. § 135A.043 and Minn. Stat. § 136A.1465, as applied to aliens who are not lawfully present in the United States, expressly violate federal immigration law's prohibition on providing postsecondary education benefits—such as lower tuition rates and free tuition—based on residency to aliens not lawfully present in the United States that are not available to all U.S. citizens regardless of residency.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests the following relief:

1.        that this Court enter a judgment declaring that the challenged provisions, as applied to aliens who are not lawfully present in the United States, violate the Supremacy Clause and are therefore unconstitutional and invalid;

2.        that this Court issue a permanent injunction that prohibits Defendants as well as their successors, agents, and employees, from enforcing the challenged provisions as applied to aliens who are not lawfully present in the United States;

3.        that this Court award the United States its costs and fees in this action; and

4.        that this Court award any other relief it deems just and proper.


DATED: June 25, 2025                     Respectfully submitted,

CHAD MIZELLE                             LUZ MARIA RESTREPO
Acting Associate Attorney General        Trial Attorney

ABHISHEK S. KAMBLI                       */s/ Elianis N. Pérez*_____
Deputy Associate Attorney General        ELIANIS N. PÉREZ
                                         Assistant Director
BRETT A. SHUMATE                         United States Department of Justice
Assistant Attorney General               Office of Immigration Litigation
Civil Division                           General Litigation and Appeals Section
                                         P.O. Box 868, Ben Franklin Station
YAAKOV M. ROTH                           Washington, D.C. 20044
Principal Deputy Assistant Attorney General   Fax: (202) 305-7000
Civil Division                           Telephone: (202) 616-9124
                                         Email: elianis.perez@usdoj.gov

                                         *Attorneys for the United States*

CHAD MIZELLE
Acting Associate Attorney General
ABHISHEK S. KAMBLI
Deputy Associate Attorney General
YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division
DREW C. ENSIGN
Deputy Assistant Attorney General
ELIANIS PEREZ
Assistant Director
LAUREN FASCETT
Senior Litigation Counsel
Office of Immigration Litigation
General Litigation and Appeals Section
*Attorneys for the United States*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## WICHITA FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | CIVIL No. _____ |
| v. | |
| STATE OF TEXAS, | **COMPLAINT** |
| Defendant. | |

Plaintiff, the United States of America, by and through its undersigned counsel, brings

this civil action for declaratory and injunctive relief, and alleges as follows:

### INTRODUCTION

Federal law prohibits illegal aliens from getting instate tuition benefits that are denied to

out-of-state U.S. citizens. *See* 8 U.S.C. § 1623(a). There are no exceptions. Yet the State of Texas

has ignored this law for years. This Court should put that to an end and permanently enjoin the

enforcement of certain provisions of the Texas Education Code that expressly and directly conflict with federal immigration law.

Texas Education Code §§ 54.051(m) and 54.052(a)(3) allow aliens who are not lawfully present in the United States to qualify for reduced tuition at public state colleges, even as U.S. citizens from other states must pay higher tuition rates. That is squarely prohibited and preempted by federal law, which expressly provides that "an alien who is not lawfully present in the United States *shall not be* eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a) (emphasis added). These Texas laws, as applied to aliens not lawfully present in the United States, are thus unconstitutional under the Supremacy Clause of the United States Constitution.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

2.      Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because a substantial portion of the events occurred in the district.

3.      The Court has the authority to provide the relief requested under the Supremacy Clause, U.S. Const. art. VI, cl. 2, as well as 28 U.S.C. §§ 1651, 2201, and 2202, and its inherent equitable powers.

## PARTIES

4.      Plaintiff, the United States of America, regulates immigration under its constitutional and statutory authorities, and enforces federal immigration laws through its Executive agencies, including the Department of Justice and Department of Homeland Security

(DHS), as well as DHS component agencies, U.S. Immigration and Customs Enforcement, U.S. Citizenship and Immigration Services, and U.S. Customs and Border Protection.

5.      Defendant State of Texas is a state of the United States.

## FEDERAL LAW

6.      The Constitution affords Congress the power to "establish a uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," U.S. Const. art. I, § 8, cl. 3, and affords the President of the United States the authority to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3.

7.      The United States has well-established, preeminent, and preemptive authority to regulate immigration matters. This authority derives from the United States Constitution, numerous acts of Congress, and binding U.S. Supreme Court precedent.

8.      Based on its enumerated constitutional and sovereign powers to control and conduct relations with foreign nations, the Federal Government has broad authority to establish immigration laws.

9.      In the February 19, 2025 Executive Order, *Ending Taxpayer Subsidization of Open Borders*, President Trump ordered Departments and Agencies to "ensure, to the maximum extent permitted by law, that no taxpayer-funded benefits go to unqualified aliens[.]" In the April 28, 2025 Executive Order, *Protecting American Communities From Criminal Aliens*, President Trump ordered the relevant officials to ensure the "[e]qual [t]reatment of Americans" and to "take appropriate action to stop the enforcement of State and local laws, regulations, policies, and practices favoring aliens over any groups of American citizens that are unlawful, preempted by Federal law, or otherwise unenforceable, including State laws that provide in-State higher education tuition to aliens but not to out-of-State American citizens[.]"

3

10.     These Orders reiterate congressional sentiment evidenced in several statutory provisions of the Immigration and Nationality Act (INA) that were added in 1996, to curb incentives for illegal immigration provided by the availability of various public benefits.

11.     Specifically, in 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA). *See* IRRIRA, Pub. L. No. 104-208, Div. C, §§ 306, 308, 110 Stat. 3009–546 (1996). One of the objectives of that statute was to promote immigrant self-sufficiency, reduce immigrant reliance on public assistance, and ensure that public benefits do not incentivize illegal entry. *Id*.; *see* 8 U.S.C. § 1601 ("Self-sufficiency has been a basic principle of United States immigration law since this country's earliest immigration statutes.").

12.     Congress declared that "aliens within the Nation's borders [should] not depend on public resources to meet their needs, but rather rely on their own capabilities and the resources of their families, their sponsors, and private organizations." *Id*. § 1601(2)(A).

13.     Congress emphasized that "the availability of public benefits [should] not constitute an incentive for immigration to the United States." *Id*. § 1601(2)(B). Moreover, Congress determined that "[i]t is a compelling government interest to enact new rules for eligibility and sponsorship agreements in order to assure that aliens be self-reliant in accordance with national immigration policy" and "to remove the incentive for illegal immigration provided by the availability of public benefits." 8 U.S.C. § 1601(5), (6).

14.     As relevant here, IIRIRA included a clear "[l]imitation on eligibility preferential treatment of aliens not lawfully present on basis of residence for higher education benefits." 8 U.S.C. § 1623. Section 1623(a) provides that:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the

4

United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

15.     Section 1623(a) does not allow illegal aliens to qualify for in-state tuition (also referred to as "resident tuition") based on residence within the state if that same tuition rate is not made available to all U.S. citizens without regard to their state residency. 8 U.S.C. § 1623(a).

## THE TEXAS LAW

16.     In direct conflict with federal law, Texas law specifically allows an alien who is not lawfully present in the United States to qualify for in-state tuition based on residence within the state, while explicitly denying resident tuition rates to U.S. citizens that do not qualify as Texas residents. *See* Texas Education Code §§ 54.051(m), 54.052(a)(3).

17.     Since 2001, Texas law[1] has allowed unlawful aliens who establish residency in Texas to benefit from reduced, in-state tuition rates while denying that same benefit to U.S. citizens who are not residents of Texas. *See* Texas Education Code §§ 54.0501(3), 54.051(m) and 54.052, Amended by: Acts 2005, 79th Leg., Ch. 888 (S.B. 1528), Sec. 6, eff. September 1, 2005.

18.     Texas Education Code § 54.0501 outlines pertinent statutory definitions. For example, § 54.0501(3) defines "domicile" as "a person's principal, permanent residence to which the person intends to return after any temporary absence." Section 54.0501(4) defines "Nonresident tuition" as "the amount of tuition paid by a person who is not a resident of this state and who is not entitled or permitted to pay resident tuition under this subchapter." Section 54.0501(6) defines "residence" as "a person's home or other dwelling place." And

---

[1] In 2001, Texas set a precedent by enacting House Bill 1403, commonly known as the Texas Dream Act, which grants eligible undocumented students access to in-state tuition rates at public colleges and universities. *See* https://www.higheredimmigrationportal.org/state/texas/ (last visited May 21, 2025); https://lrl.texas.gov/legis/billsearch/BillDetails.cfm?legSession=77-0&billtypeDetail=HB&billNumberDetail=1403&billSuffixDetail= (last visited May 21, 2025).

App. - 169

Section 54.0501(7) defines "resident tuition" as "the amount of tuition paid by a person who is a resident of this state."

19.    Texas Education Code § 54.051(m) provides that:

> *Unless the student establishes residency or is entitled or permitted to pay resident tuition as provided by this subchapter*, tuition for a student who is a citizen of any country other than the United States of America is the same as the tuition required of other nonresident students.

(emphasis added).

20.    The tuition for non-resident students is set by Section 54.051(d), which provides:

> tuition for a nonresident student at a general academic teaching institution . . . is an amount per semester credit hour equal to the average of the nonresident undergraduate tuition charged to a resident of this state at a public state university in each of the five most populous states other than this state.

21.    The tuition for resident students is much lower: It is specified by statute to be $50 per semester credit hour. Texas Education Code § 54.051(c) ("Unless a different rate is specified by this section, tuition for a resident student at a general academic teaching institution is $50 per semester credit hour.").

22.    The Texas Education Code mandates that the governing board for each institution of higher education "shall cause to be collected from students registering at the institution tuition or registration fees" at these prescribed rates. Texas Education Code § 54.051(b).

23.    The Texas Education Code does not require lawful presence in the United States to establish Texas residency and obtain in-state tuition rates.

24.    Critically, Texas Education Code § 54.052 allows even aliens *who are not lawfully present in the United States* to qualify as Texas residents for the purpose of assessing tuition and thus to pay the lower rate of tuition specified in § 54.051(c). The statute only requires a student to establish and maintain domicile continuously or graduate from a public or private Texas high

6

school or acquire the equivalent of a high school diploma and maintain a residence continuously for a set period of time. *See* Texas Education Code § 54.052(a).

25.     Specifically, § 54.052(a), titled "Determination of Resident Status," enumerates that aliens not lawfully present may qualify to pay resident tuition if they meet three specific criteria:

> (1) a person who:
>
>> (A) established a domicile in this state not later than one year before the census date of the academic term in which the person is enrolled in an institution of higher education; and (B) maintained that domicile continuously for the year preceding that census date;
>
> (2) are a dependent whose parent:
>
>> (A) established a domicile in this state not later than one year before the census date of the academic term in which the dependent is enrolled in an institution of higher education; and (B) maintained that domicile continuously for the year preceding that census date; and
>
> (3) a person who:
>
>> (A)  graduated from a public or private high school in this state or received the equivalent of a high school diploma in this state; and (B) maintained a residence continuously in this state for: (i) the three years preceding the date of graduation or receipt of the diploma equivalent, as applicable; and (ii) the year preceding the census date of the academic term in which the person is enrolled in an institution of higher education.

Texas Education Code § 54.052(a).

26.     Relatedly, Texas Education Code § 54.053 outlines the information required to establish resident status and directly references the availability to noncitizens and nonpermanent residents. Section 54.053(3)(B) states in pertinent part that "if the person applies for resident status under Section 54.052(a)(3)" and "if the person is not a citizen or permanent resident of the United States, [the person shall submit] an affidavit stating that the person will apply to become a

7

permanent resident of the United States as soon as the person becomes eligible to apply." Texas
Education Code § 54.053(3)(B).

27.    Accordingly, under Texas law, the tuition rate for an alien not lawfully present in
the United States, who meets § 54.052(a)'s three criteria, is the same as for other Texas residents—
$50 per semester credit hour. Texas Education Code § 54.051(c). Conversely, United States
citizens that do not qualify as Texas residents under § 54.052(a) are subject to § 54.051(d), which
requires those non-Texas resident U.S. citizen students to pay the higher, nonresident tuition.

28.    Out-of-state American citizens therefore pay substantially higher tuition than aliens
who are not lawfully present in the United States but nevertheless meet the Texas residency
requirement under § 54.052(a).

29.    For the year 2022, there were approximately 408,000 undocumented students
enrolled in U.S. institutions of higher education.[2] In 2022, there were approximately 56,500
undocumented students enrolled in a Texas school for higher education. *Id.*

### THE TEXAS LAW IS PREEMPTED

30.    The Supremacy Clause of the Constitution mandates that "[t]his Constitution, and
the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme
Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary
notwithstanding." U.S. Const. art. VI, cl. 2.

31.    Express preemption occurs when Congress, by statute, explicitly supersedes all
state enactments in a particular area. *P. Gas and Elec. Co. v. State Energy Resources Conserv. &
Develop. Comm'n*, 461 U.S. 190, 203-04 (1983).

---

[2] *See* https://www.higheredimmigrationportal.org/state/texas/ (last visited May 21, 2025); *see
also* https://www.higheredimmigrationportal.org/wp-content/uploads/2025/04/Undocumented-Students-in-Higher-Education-June-2024-2-pager-corrected.pdf (last visited May 21, 2025).

32.     Federal statutes may preempt state laws and render them ineffective. They may do this expressly, by declaring that intent on the face of the statute. *Arizona v. United States*, 567 U.S. 387, 399 (2012) ("There is no doubt that Congress may withdraw specified powers from the States by enacting a statute containing an express preemption provision."); *Barrosse v. Huntington Ingalls, Inc.*, 70 F.4th 315, 320 (5th Cir. 2023) ("Express preemption applies '[w]here Congress expresses an explicit intent to preempt state law.'") (quoting *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 363 (5th Cir. 1995)).

33.     "[U]nder the Supremacy Clause, from which our pre-emption doctrine is derived, any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Gade v. National Solid Wastes Management Assn.,* 505 U.S. 88, 108 (1992); *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981) (Under the Supremacy Clause, state laws that conflict with federal law are "without effect."); *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (same); *see Est. of Miranda v. Navistar, Inc.*, 23 F.4th 500, 504 (5th Cir. 2022) (federal statute expressly preempts a state law when Congress "adopts express language defining the existence and scope of preemption" (citation omitted)); *Aux Sable Liquid Prods. v. Murphy*, 526 F.3d 1028, 1033 (7th Cir. 2008) (a state enactment is expressly preempted where "a federal statute explicitly states that it overrides state or local law").

34.     When the statute contains an express preemption clause, the court does not indulge "any presumption against preemption but instead focus[es] on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016). Further, "[i]n determining whether a state law or regulation is preempted, Congress's intent is the ultimate touchstone." *Union Pac. R.R. Co. v. City of Palestine*, 41 F.4th 696, 704 (5th Cir. 2022); *Malone v. White Motor Corp.*, 435 U.S. 497,

9

504 (1978) ("'The purpose of Congress is the ultimate touchstone'" of pre-emption analysis.") (quoting *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103 (1963)).

35.     Here, the federal law at 8 U.S.C. § 1623(a) contains an express preemption clause. The U.S. Court of Appeals for the Fifth Circuit has already declared as much in *Young Conservatives of Texas Foundation v. Smatresk*, where it stated that § 1623(a) "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same." 73 F.4th 304, 312–13 (5th Cir. 2023).

36.     Section 1623(a) directs that "[n]otwithstanding any other provision of law," an illegal alien "shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a).

37.     As evidenced in the title—"Limitation on eligibility for preferential treatment of aliens not lawfully present on basis of residence for higher education benefits"—§ 1623(a) requires that all U.S. citizens be eligible for a benefit, without regard to residency, before any illegal alien may receive the same benefit (based on residency).

38.     Therefore, 8 U.S.C. § 1623(a) expressly preempts Texas Education Code provisions that grant benefits to illegal aliens when U.S. citizens do not receive the same. *See* Texas Education Code §§ 54.051(m), 54.052(a)(3); *Young Conservatives of Texas Foundation*, 73 F.4th at 313 ("No matter what a state says, if a state did not make U.S. citizens eligible, illegal aliens cannot be eligible.").

39.     By bestowing greater education benefits on illegal aliens than U.S. citizens, Texas Education Code §§ 54.051(m) and 54.052(a) are expressly preempted and therefore violate the Supremacy Clause. *See Young Conservatives of Texas Foundation*, 73 F.4th at 313.

10

40.     Indeed, in *Young Conservatives of Texas Foundation*, although the Fifth Circuit

only reviewed a challenge to Texas Education Code § 54.051(d), which calculates and imposes a

nonresident tuition rate, the Fifth Circuit observed that "a different, *unchallenged* portion" of

Texas's statutory regime "seems to conflict" with Section 1623(a). *Young Conservatives of Texas

Found. v. Smatresk*, 73 F.4th at 314. Those provisions are Texas Education Code §§ 54.051(m)

and 54.052(a) and as explained above, they are expressly preempted by 8 U.S.C. § 1623(a).

## CLAIM FOR RELIEF

### VIOLATION OF THE SUPREMACY CLAUSE
### (EXPRESS PREEMPTION)

41.     Plaintiff hereby incorporates the preceding paragraphs of the Complaint as if fully

stated herein.

42.     The challenged provisions at Texas Education Code §§ 54.051(m) and 54.052(a),

as applied to aliens who are not lawfully present in the United States, expressly violate federal

immigration law's prohibition on providing postsecondary education benefits—such as lower

tuition rates—based on residency to unlawful aliens that are not available to all U.S. citizens

regardless of residency.

### PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests the following relief:

1.     that this Court enter a judgment declaring that the challenged provisions, as applied

to aliens who are not lawfully present in the United States, violate the Supremacy Clause and are

therefore unconstitutional and invalid;

2.     that this Court issue a permanent injunction that prohibits Defendant as well as its

successors, agents, and employees, from enforcing the challenged provisions as applied to aliens

who are not lawfully present in the United States;

3.   that this Court award the United States its costs and fees in this action; and

4.   that this Court award any other relief it deems just and proper.

DATED: June 4, 2025                          Respectfully submitted,

CHAD MIZELLE
Acting Associate Attorney General

ABHISHEK S. KAMBLI
Deputy Associate Attorney General

YAAKOV M. ROTH                         ELIANIS N. PÉREZ
Acting Assistant Attorney General          Assistant Director
Civil Division
                                        */s/ Lauren E. Fascett*
DREW C. ENSIGN                          LAUREN E. FASCETT
Deputy Assistant Attorney General          Senior Litigation Counsel
                                        United States Department of Justice
                                        Civil Division
                                        Office of Immigration Litigation
                                        General Litigation and Appeals Section
                                        P.O. Box 868, Ben Franklin Station
                                        Washington, D.C. 20044
                                        Telephone: (202) 616-3466
                                        Fax: (202) 305-7000
                                        Email: lauren.fascett@usdoj.gov

                                        *Attorneys for the United States*

App. - 176

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

UNITED STATES OF AMERICA,

                Plaintiff,

v.

STATE OF TEXAS,

                Defendant.

CIVIL No. 7:25-cv-00055

**Proposed Order and Final Consent Judgment**

**ORDER AND FINAL JUDGMENT**

Before the Court is the Parties' **Joint Motion for Entry of a Consent Judgment**. ECF No. 6. Having considered the Motion, the Complaint, and applicable law, the Court GRANTS the Motion. Accordingly, the Court hereby **DECLARES** that the challenged provisions, Texas Education Code §§ 54.051(m), 54.052(a), as applied to aliens who are not lawfully present in the United States, violate the Supremacy Clause and are unconstitutional and invalid.

The Court also hereby **PERMANENTLY ENJOINS** Defendant as well as its successors, agents, and employees, from enforcing Texas Education Code § 54.051(m) and § 54.052(a), as applied to aliens who are not lawfully present in the United States.

This final judgment is issued pursuant to Federal Rule of Civil Procedure 58(a). The Clerk of the Court shall transmit a true copy of this judgment to the Parties.

SO ORDERED on this 4th day of June 2025.

_Reed O'Connor_
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

JS 44 (Rev. 04/21) **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

United States of America

**DEFENDANTS**

Tim Walz, the Governor of Minnesota in his official capacity; State of Minnesota; Keith Ellison, Attorney General for the State of Minnesota in his official capacity; Minnesota Office of Higher Education

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Ramsey County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Elianis Perez, U.S. Dep't of Justice, Civil Division, OIL-GLAS, P.O. Box 878, Ben Franklin Station, Washington, D.C. 20044 (202) 616-9124

Attorneys *(If Known)*

Keith Ellison, Minnesota Attorney General
Andrew Wold, General Counsel for the
Minnesota Office of Higher Education

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

☒ 1   U.S. Government
        Plaintiff

☐ 3   Federal Question
        *(U.S. Government Not a Party)*

☐ 2   U.S. Government
        Defendant

☐ 4   Diversity
        *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                    Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☒ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1 Original
     Proceeding
☐ 2 Removed from
     State Court
☐ 3 Remanded from
     Appellate Court
☐ 4 Reinstated or
     Reopened
☐ 5 Transferred from
     Another District
     *(specify)*
☐ 6 Multidistrict
     Litigation -
     Transfer
☐ 8 Multidistrict
     Litigation -
     Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
8 U.S.C. 1623(a)

Brief description of cause:
Federal law at 8 U.S.C. § 1623(a) preempts Minn. Stat. §§ 135A.043, 136A.1465.

**VII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A **CLASS ACTION**
   UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☐ No

**VIII. RELATED CASE(S) IF ANY**

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE   6/25/2025

SIGNATURE OF ATTORNEY OF RECORD
/s/Elianis Perez

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

App. - 178

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**  **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**  **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**  **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**  **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.  (See Section III below; **NOTE: federal question actions take precedence over diversity cases.)**

**III.**  **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**  **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.**  **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.**  **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**  **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**  **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Minnesota  ▾

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) |
|  | ) |
|  | ) |
|  | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| TIM WALZ, the Governor of Minnesota in his official capacity; STATE OF MINNESOTA; KEITH ELLISON, Attorney General for the State of Minesota in his official capacity; MINNESOTA OFFICE OF HIGHER EDUCATION | ) |
| *Defendant(s)* | ) |

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Minnesota Governor Tim Walz, c/o Minnesota Attorney General Keith Ellison, 445 Minnesota Street, Suite 1400, St. Paul, MN 55101.

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Elianis N. Perez
U.S. Department of Justice, Civil Division
Office of Immigration Litigation, General Litigation and Appeals
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                                                      *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❐ I returned the summons unexecuted because _____ ; or

❐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ __0.00__ .


I declare under penalty of perjury that this information is true.


Date: _____        _____
                                                    *Server's signature*

                                         _____
                                                    *Printed name and title*

                                         _____
                                                    *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Minnesota ▾

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| TIM WALZ, the Governor of Minnesota in his official capacity; STATE OF MINNESOTA; KEITH ELLISON, Attorney General for the State of Minesota in his official capacity; MINNESOTA OFFICE OF HIGHER EDUCATION | ) ) ) ) ) |
| *Defendant(s)* | ) |

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

Minnesota Attorney General Keith Ellison, 445 Minnesota Street, Suite 1400, St. Paul, MN 55101.

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Elianis N. Perez
U.S. Department of Justice, Civil Division
Office of Immigration Litigation, General Litigation and Appeals
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____        _____
                                                                        *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Minnesota ▾

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>_____<br>*Plaintiff(s)*<br>v.<br>TIM WALZ, the Governor of Minnesota in his official capacity; STATE OF MINNESOTA; KEITH ELLISON, Attorney General for the State of Minesota in his official capacity; MINNESOTA OFFICE OF HIGHER EDUCATION<br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Civil Action No. |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

Minnesota Office of Higher Education, c/o General Counsel Andrew Wold, 1450 Energy Park Drive, Suite 350, St. Paul, MN 55108-5227

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Elianis N. Perez
U.S. Department of Justice, Civil Division
Office of Immigration Litigation, General Litigation and Appeals
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: