UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| *Plaintiff*, | | |
| v. | | CIVIL ACTION NO. 7:25-CV-00055-O |
| STATE OF TEXAS, | | |
| *Defendant*. | | |

## DEFENDANT STATE OF TEXAS'S OPPOSITION TO
## STUDENTS FOR AFFORDABLE TUITION'S MOTION TO INTERVENE

Defendant, the State of Texas, hereby responds to Students for Affordable Tuition's Opposed Motion to Intervene. ECF No. 9.

# TABLE OF CONTENTS

Table of Contents ....................................................................................................................... i

Index of Authorities ................................................................................................................... ii

Introduction .............................................................................................................................. 1

Legal Standard .......................................................................................................................... 1

   I.     Standing ........................................................................................................................ 1

   II.    Intervention .................................................................................................................. 2

Argument and Authorities ......................................................................................................... 3

   I.     SAT lacks associational standing to intervene for purposes of appeal. ........................... 3

   II.    SAT lacks organizational standing because it does not have a legally protected interest in the
        outcome of the litigation. ............................................................................................. 6

      a.     SAT does not allege that it has suffered any injury. ................................................... 6

      b.     SAT likewise lacks standing to defend state law ....................................................... 7

   III.   SAT's attempt at intervention is futile. .......................................................................... 9

   IV.   SAT does not meet the requirements for intervention. .................................................. 10

      a.     SAT's motion to intervene is untimely because it would prejudice Texas. ................ 11

      b.     SAT lacks on independent interest in this action. ................................................... 12

      c.     The State, as the *parens patriae*, adequately represents SAT's interests ................... 13

   V.    SAT should be denied permissive intervention. ............................................................. 15

Conclusion ............................................................................................................................... 17

Certificate of Service ................................................................................................................ 18

## Index of Authorities

**Cases**

*Acuff v. United Papermakers & Paperworkers, AFL-CIO,*
    404 F.2d 169 (5th Cir. 1968) ................................................................................. 7

*Berger v. N. Carolina State Conf. of the NAACP,*
    597 U.S. 179 (2022) .......................................................................................... 13

*Brumfield v. Dodd,*
    749 F.3d 339 (5th Cir. 2014) ......................................................................... 3, 10

*Cajun Elec. Power Co-op., Inc. v. Gulf States Utils.,*
    940 F.2d 117 (5th Cir. 1991) ............................................................................. 3

*Cameron v. EMW Women's Surgical Center, P.S.C.,*
    595 U.S. 267 (2022) ...................................................................................... 7, 14

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ........................................................................................ 2, 5

*Diamond v. Charles,*
    476 U.S. 54 (1986) ............................................................................................. 7

*Edwards v. City of Houston,*
    78 F.3d 983, 999 (5th Cir.1996) (*en banc* ) .................................................... 13

*General Land Office v. Biden,*
    71 F.4th 264 (5th Cir. 2023) ............................................................................. 7

*Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs of the Orleans Levee Dist.,*
    493 F.3d 570 (5th Cir. 2007) ........................................................................... 10

*Hill v. Texas Water Quality Bd.,*
    568 S.W.2d 738, 741 (Tex. App.—Austin 1978, writ ref'd n.r.e.) ..................... 7

*Hollingsworth v. Perry,*
    570 U.S. 693, 715 (2013) ......................................................................... passim

*Ingebretsen v. Jackson Pub. Sch. Dist.,*
    88 F.3d 274, 281 (5th Cir. 1996) (per curiam) ......................................... 13, 16

*Int'l Union, United Auto., Aerospace and Agr. Implement Workers of America, et al. v. Brock,*
    477 U.S. 274, 286 (1986) ............................................................................... 2, 3

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ................................................................................ 2, 3, 5, 6

*Maine v. Taylor,* 477 U.S. 131, 137 (1986) ................................................... 7, 14

*McDonald v. E.J. Lavino Co.,*
    430 F.2d 1065 (5th Cir. 1970) ......................................................................... 11

*NAACP v. City of Kyle, Tex.*,
 626 F.3d 233 (5th Cir. 2010) ................................................................................. 2

*New Jersey v. New York*,
 345 U.S. 369, 373 (1953) ......................................................................................14

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co. (NOPSI)*,
 732 F.2d 452, 463 (5th Cir. 1984) (en banc) ...................................................... 13, 16

*OCA-Greater Houston v. Texas*,
 867 F.3d 604 (5th Cir. 2017) ................................................................................. 2

*Rotstain v. Mendez*,
 986 F.3d 931, 937 (5th Cir. 2021) ...................................................................... 10, 11

*Saldano v. Roach*,
 363 F.3d 545 (5th Cir. 2004) .................................................................................7

*Sierra Club v. City of San Antonio*,
 115 F.3d 311 (5th Cir. 1997) .................................................................................7

*South Carolina v. North Carolina*,
 558 U.S. 256, 275 (2010) .....................................................................................13

*Stallworth v. Monsanto Co.*,
 558 F.2d 257, 264-66 (5th Cir. 2015) ....................................................................11

*Tenth St. Residential Ass'n v. City of Dallas, Tex.*,
 968 F.3d 492 (5th Cir. 2020) .......................................................................... 1, 2, 6

*Texas v. United States*,
 126 F.4th 392 (5th Cir. 2025) ............................................................................4, 5

*Texas v. United States*,
 805 F.3d 653, 657 (5th Cir. 2015) .....................................................................9, 14

*U.S. v. Glens Falls Newspapers, Inc.*,
 160 F.3d 853 (2d Cir.1998) .................................................................................. 9

*United States ex rel. Hernandez v. Team Fin., L.L.C.*,
 80 F.4th 571 (5th Cir. 2023) ................................................................................11

*United States v. Allegheny-Ludlum Indus., Inc.*,
 517 F.2d 826 (5th Cir. 1975) ................................................................................14

*United States v. United States Steel Corp.*,
 548 F.2d 1232, 1235 (5th Cir. 1977) ......................................................................11

*Va. House of Delegates v. Bethune-Hill*,
 587 U.S. 658 (2019).......................................................................................1, 3, 4

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*,
 834 F.3d 562 (5th Cir. 2016).................................................................................10

*Williams & Humbert, Ltd. v. W. & H. Trade Marks, Ltd.,*
   840 F.2d 72 (D.C. Cir. 1988) ................................................................................................ 9

*Wittman v. Personhuballah,*
   578 U.S. 539 (2016) .............................................................................................................5

## Statutes

8 U.S.C. § 1623(a) ................................................................................................... 1, 4, 10

Tex. Educ. Code § 54.051(m) .......................................................................................... 1

Tex. Educ. Code § 54.052(a) ........................................................................................... 1

## Other Authorities

Fed. R. Civ. P. 24(b)(1)(B) ............................................................................................ 15

Fed. R. Civ. P. 24(b)(3) ....................................................................................... 15, 16, 17

## Regulations

8 C.F.R. 236.21(c) ........................................................................................................... 4

## Introduction

In early June, the United States sued the State of Texas, claiming that a Texas statute allowing certain residents to qualify for in-state tuition at state institutions of higher education was preempted by federal law. *See generally* ECF No. 1. Specifically, 8 U.S.C. § 1623(a) prohibits aliens who are "not lawfully present" from receiving certain postsecondary education benefits on the basis of state residence, including in-state tuition, unless all United States citizens and nationals are eligible for such benefits without regard to residency. Texas law, however, leaves the door open for aliens who are not legally present to qualify for reduced tuition at public state colleges and universities. *See* Tex. Educ. Code § 54.052(a)(3). And it expressly denies this reduced tuition benefit to nonresident citizens from other states. *Id.* § 54.051(m). After due consideration, Texas agreed with the United States' position and entered into a consent judgment, ECF No. 8, holding that those sections of the Education Code were preempted "as applied to aliens who are not lawfully present in the United States[.]"ECF No. 1 at 2. Now, at the eleventh hour, and after final judgment has been rendered, a heretofore unknown group purporting to represent DACA recipients, Students for Affordable Tuition (SAT), seeks to intervene for the purpose of appeal. For the reasons set forth below, the Court should deny SAT's futile attempt to intervene and permit the consent judgment to stand.

## Legal Standard

### I.    Standing

At the outset, a party that would invoke a federal court's jurisdiction on appeal must demonstrate standing. *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663 (2019). This requirement is often a formality in the typical instance where either a plaintiff or defendant in the case files an appeal. But when an intervenor is the sole party seeking to invoke the jurisdiction of an appellate court, that intervenor must independently establish standing to proceed. *Id.*

"Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" *Tenth St. Residential Ass'n v. City of Dallas, Tex.*, 968 F.3d 492, 499 (5th Cir. 2020)

(citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)). Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). And to demonstrate standing, and thus invoke the jurisdiction of a federal court, a party must satisfy the following three elements:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) "actual or imminent, not conjectural or hypothetical."
>
> Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court."
>
> Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*NAACP v. City of Kyle, Tex.*, 626 F.3d 233, 237 (5th Cir. 2010) (citing *Lujan*, 504 U.S. at 560–61) (cleaned up).

An organization such as SAT "can establish the first standing element, injury-in-fact, under two theories: 'associational standing' or 'organizational standing.'" *Tenth St. Residential Ass'n*, 968 F.3d at 500 (citing *OCA-Greater Houston v. Texas*, 867 F.3d 604, 610 (5th Cir. 2017)). To have associational standing, an organization must establish, *inter alia*, that at least one member of its organization would otherwise have standing to sue individually. *See Int'l Union, United Auto., Aerospace and Agr. Implement Workers of America, et al. v. Brock*, 477 U.S. 274, 286 (1986) ("Having found that *at least some* members of the UAW would have had standing to bring this suit in their own right, we need pause only briefly to consider whether the second of *Hunt*'s preconditions for associational standing has been satisfied here.') (emphasis added). Conversely, under a theory of organizational standing, the organizational party must meet "the same standing test that applies to individuals." *Tenth St. Residential Ass'n.*, 968 F.3d at 500.

## II.    Intervention

To intervene as of right, a party must (1) make a timely motion, (2) have a direct interest in the action, (3) be situated such that disposition of the action would impede its ability to protect his

interests, and (4) not be adequately represented by existing parties. *Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014). Permissive intervention, on the other hand, is wholly discretionary, and a district court's decision to grant or deny permissive intervention will not be disturbed absent a "clear abuse of discretion." *Cajun Elec. Power Co-op., Inc. v. Gulf States Utils.*, 940 F.2d 117, 121 (5th Cir. 1991).

## Argument and Authorities

The Court should deny SAT's motion to intervene for three reasons. *First*, SAT lacks associational standing because none of the members it identifies has suffered an injury. *Second*, SAT lacks organizational standing because it has not suffered any cognizable injury—it only alleges that its members will suffer harm. And *third*, SAT fails to meet the standard for either intervention as of right or permissive intervention.

## I.    SAT lacks associational standing to intervene for purposes of appeal.

SAT asserts that it seeks intervention solely for purposes of appeal. ECF No. 10 at 6. But "to appeal a decision that the primary party does not challenge, an intervenor must independently demonstrate standing." *Va. House of Delegates*, 587 U.S. at 663. As the party invoking federal jurisdiction, SAT bears the burden to demonstrate standing. *Lujan*, 504 U.S. at 561.

SAT itself recognizes that Texas is not only "very unlikely to seek an appeal," but in fact "may be precluded from an appeal" because it has "freely consented to the entry of a final judgment." ECF No. 10 at 12. Consequently, SAT—along with any other prospective intervenors seeking to appeal—must demonstrate appellate standing. For an organization to have associational standing—i.e., standing to represent its members—it must show, *inter alia*, that at least one of its members would have standing individually to appeal and adverse decision. *See Brock*, 477 U.S. at 286. An essential requirement of standing (and one that SAT wholly lacks) is that a party must have suffered an injury in fact that is concrete and particularized. *Lujan*, 504 U.S. at 560.

To begin, the relief that the United States sought and that the Court ultimately granted revolves around whether an individual is "lawfully present" in the United States. ECF. No. 8 at 1. Indeed, under

federal law, an individual not lawfully present in the country may not take advantage of state residency to qualify for in-state tuition in states that do not extend that benefit to all citizens. 8 U.S.C. § 1623(a). Aliens are lawfully present in the United States if they qualify for deferred action under the Preferred Action for Childhood Arrivals program (DACA). 8 C.F.R. 236.21(c)(3). And while the Fifth Circuit held that the provision of DACA granting the status of "lawful presence" was contrary to the Immigration and Naturalization Act, *Texas v. United States*, 126 F.4th 392, 418 (5th Cir. 2025), it nonetheless expressly continued a stay of relief that grants current DACA recipients lawful presence, *id.* at 422. The practical result of the Fifth Circuit's is that DACA recipients are presently considered to be lawfully present in the United States. No party sought review of that determination in the en banc Fifth Circuit or the Supreme Court, and the district court in that case has no power to lift that stay. *Id.*

Herein lies SAT's problem. In the brief in support of its motion to intervene, SAT states that "[i]t is comprised of students without lawful immigration status who rely on paying reduced tuition rates to afford their education." ECF No. 10 at 4. But based on the facts set forth in SAT's brief, this is incorrect. SAT identifies three unnamed student members purportedly affected by this lawsuit, each of whom is a DACA recipient. *See* ECF No. 10 at 4–5 ("For example, one of SAT's members is a Deferred Action for Childhood Arrivals ('DACA') recipient who is currently pursuing his Bachelor of Science degree in biomedical science at the University of Texas Rio Grande Valley . . . Another SAT member is a DACA recipient currently pursuing a Master of Science degree in clinical mental-health counseling at the University of North Texas . . . A third SAT member is a DACA recipient currently pursuing a Master of Education degree in higher education at the University of Houston.").

As each of these individuals is a DACA recipients, each has lawful presence within the United States. And because all three individuals are lawfully present, they are not affected by the ultimate relief that the Court granted in this case. They will continue, for the foreseeable future, to be entitled to discounted in-state tuition at state universities and have thus suffered no cognizable injury. None of those three individuals would have standing to invoke the jurisdiction of the appellate courts. *Va. House of Delegates*, 587 U.S. at 663. And because they lack standing, so too does SAT.

That the Fifth Circuit continues to stay the district court's injunction regarding a DACA recipient's lawful presence within the country is key. *See Texas*, 126 F.4th at 422. That stay, which functionally allows DACA recipients "lawful presence," *id.*, cannot be lifted except by order of the Fifth Circuit or the Supreme Court, and review by either of these courts is not on the horizon. *Id.* Any injuries that SAT's members might suffer are therefore speculative and dependent on the actions of third parties. *See Clapper*, 568 U.S. at 414 & n.5 (holding the uncontrollable actions of independent third-parties make it difficult or impossible to trace plaintiffs' injuries to defendants' conduct); *see also id.* at 417 n.7 ("To the extent that [plaintiffs' predictions about how third parties will react] are based on anything other than conjecture . . . they do not establish injury that is fairly traceable [to the challenged action]."). Given the speculative nature of the DACA case's ultimate resolution, SAT's three identified members have suffered no injury—and also face no immediate future injury—and thus have no standing to initiate an appeal of the Court's final judgment. *See Clapper*, 568 U.S. at 398 (rejecting standing based on "fears of hypothetical future harm that is not certainly impending"). And because SAT depends on those members for its own standing, its requested intervention would be futile.

Even assuming, *arguendo*, that SAT's proffered members were not lawfully present in the country, they have failed to make an adequate showing that those members have standing. SAT has the burden to establish standing. *Lujan*, 504 U.S. at 561. "When challenged by a court (or by an opposing party) concerned about standing, the party invoking the court's jurisdiction cannot simply allege a nonobvious harm, without more." *Wittman v. Personhuballah*, 578 U.S. 539, 545–46 (2016). SAT's motion contains no affidavit or any other evidence that would tend to show that any of its members have standing—it only has the vague allegations that three unnamed members are not "lawfully present" but are DACA recipients. ECF No. 10 at 4–5. This conspicuous "lack of evidence" further warrants a denial of SAT's motion to intervene because it has not (and cannot now) show that its individual members would have standing absent some sort of evidentiary showing such as an affidavit. *Wittman*, 578 U.S. at 545.

**II.    SAT lacks organizational standing because it does not have a legally protected interest in the outcome of the litigation.**

It is unclear whether SAT intends to rely on its own standing as an organization, as its briefing on this point is so sparse. To the extent SAT seeks to invoke organizational standing, that too falls short of providing a mechanism for SAT to intervene for the purposes of appeal. A party seeking to take advantage of organizational standing would have to show that the organization—in this case, SAT—has been injured. *See Tenth St. Residential Ass'n*, 968 F.3d at 500. It has not done so here and therefore lacks organizational standing.

a.    <u>SAT does not allege that it has suffered any injury.</u>

The brief in support of SAT's motion to intervene is rife with (legally incorrect) allegations about how its members would be injured. For example, SAT speaks to how individual members, all DACA recipients, would be deprived of in-state tuition and thus unable to afford to finish their education. *See* ECF No. 10 at 4–5. SAT further asserts that it "seeks to intervene to protect the interests of its members, comprised of students who could be directly and adversely affected by the elimination of reduced tuition benefits." ECF No. 10 at 8. SAT goes on to discuss the alleged interest that its members have in defending the lawsuit, concluding that "members of SAT have a 'real, concrete stake in the outcome of this litigation' on the basis that they are 'the intended beneficiaries of the program being challenged.'" ECF No. 10 at 11 (citing *Teas. v. United States*, 805 F.3d 653, 661 (5th Cir. 2015)).

Tellingly, not once does SAT allege that it has suffered, or will suffer, any harm. The closest it comes is asserting its organizational "purpose of promoting, advocating for, and ensuring access to affordable higher education in Texas, including maintaining the state's reduced tuition rates for certain students without lawful immigration status." ECF No. 10 at 8. But SAT makes no allegation regarding how its purpose would be harmed by the decision here. Nor could it; SAT remains free to promote and advocate for its preferred policy outcomes to the exact same extent as before. As the party seeking to invoke the jurisdiction of the appellate court, SAT must show that it has standing, which in turn means that it must show that it has suffered some injury. *Lujan*, 504 U.S. at 561. But because it has asserted no injury on its own behalf, but rather only injuries on behalf of its members, any intervention to appeal on

a theory of organizational standing fails.

      b.  <u>SAT likewise lacks standing to defend state law.</u>

      SAT's lack of injury is compounded by the fact that it has no standing to step in to defend a state law. "A State 'clearly has a legitimate interest in the continued enforceability of its own statutes.'" *Cameron v. EMW Women's Surgical Center, P.S.C.*, 595 U.S. 267, 277 (2022) (quoting *Maine v. Taylor*, 477 U.S. 131, 137 (1986)). "The concerns for state autonomy that deny private individuals the right to compel a State to enforce its laws apply with even greater force to an attempt by a private individual to compel a State to create and retain the legal framework within which individual enforcement decisions are made." *Diamond v. Charles*, 476 U.S. 54, 65 (1986). This right is a "quintessential function[] of a State." *Id.* (quoting *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601 (1982)).

      "Under Texas law, the Attorney General enjoys an exclusive right to represent state agencies; other attorneys who may be permitted to assist the Attorney General are subordinate to his authority." *Sierra Club v. City of San Antonio*, 115 F.3d 311, 314 (5th Cir. 1997) (citing *Hill v. Texas Water Quality Bd.,* 568 S.W.2d 738, 741 (Tex. App.—Austin 1978, writ ref'd n.r.e.)). Indeed, "only 'the Attorney General or a county or district attorney may represent the State' *qua* state." *General Land Office v. Biden*, 71 F.4th 264, 271 (5th Cir. 2023) (quoting *Saldano v. Roach*, 363 F.3d 545, 552 (5th Cir. 2004)); *cf. Acuff v. United Papermakers & Paperworkers, AFL-CIO*, 404 F.2d 169, 172 (5th Cir. 1968) (denying intervention because "the collective bargaining agent is the exclusive representative of the unit," so "cases such as this differ entirely from situations in which intervention is ordinarily appropriate."). For this reason, the Supreme Court has "never before upheld the standing of a private party to defend the constitutionality of a state statute when state officials have chosen not to." *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013). In fact, the Court in *Hollingsworth* explicitly rejected the notion that a private party may intervene to appeal a ruling declaring a state law unconstitutional absent independent bases for standing—which is *exactly* what SAT is trying to do here. *Id.*

*Hollingsworth* revolved around California's Proposition 8, which was a ballot initiative that amended California's constitution to expressly define marriage as between a man and a woman. *Id.* at 701. Two same-sex couples challenged the statute, and the relevant elected California officials declined to defend the statute. *Id.* at 702. The district court subsequently allowed Prop. 8's official proponents to intervene to defend that law. *Id.* The plaintiffs ultimately prevailed at trial and Prop. 8 was declared unconstitutional. *Id.* The defendants chose not to appeal the decision; only the intervenors sought appellate review. *Id.* The Supreme Court subsequently rejected the intervenor's claim of standing because its interest in vindicating "the constitutional validity of a generally applicable California law" constituted the kind of "generalized grievance" that "is insufficient to confer standing." *Id.* at 706.

Like *Hollingsworth*, SAT (along with other intervenors) are the only parties seeking to defend a state law on appeal after the state has declined to do so. *See* ECF No. 10 at 9 ("Upon learning of the Parties' motion and the subsequent entry of judgment on June 4, 2025, SAT sought expeditiously to intervene in this action for the purposes of pursuing an appeal."). SAT's proposed answer walks through various defenses to the United States' Complaint before requesting that "the cause of action raised in the Complaint be dismissed with prejudice." ECF 9-2 at 10. In other words, SAT purports to have the ability to "defend the constitutionality of a state statute when state officials have chosen not to." *Hollingsworth*, 570 U.S. at 715. It claims, in effect, that it "may assert that interest on the State's behalf." *Id.* at 708. But this is precisely what the *Hollingsworth* Court rejected. *Id.* at 706. Like the intervenors in *Hollingsworth*, SAT's "only interest in having the District Court order reversed [is] to vindicate the constitutional validity of a generally applicable [state] law." *Id.* But that interest lies entirely with the State, and SAT is plainly not an "agent[] of the State." *Id.* at 713. SAT "answer[s] to no one; [it] decide[s] for [itself], with no review, what arguments to make and how to make them . . . [it is] not elected at regular intervals—or elected at all." *Id.* The Supreme Court has made it clear that States, and States alone, have the right to defend the constitutionality of state statutes. SAT may not therefore step into the shoes of the Attorney General of Texas to assert some amorphous interest in the defense of the challenged

statutes. *See id.* And this Court, like the *Hollingsworth* Court, should "decline to" decide otherwise "for the first time here." *Id.* at 715.

As an organization, SAT's asserted interests amount to nothing more than a legally impermissible value interest in the litigation. "Article III standing," the Supreme Court has stated, "is not to be placed in the hands of 'concerned bystanders,' who will use it simply as a 'vehicle for the vindication of value interests.'" *Id.* at 707 (internal citations and quotations omitted). Nor can a proposed intervenor "attempt to invoke [the judicially cognizable interest] of someone else" if they do not have an independent interest of their own. *Id.* at 708. This consideration also implicates the requirements for mandatory intervention, as "an intervenor fails to show a sufficient interest when he seeks to intervene solely for ideological, economic, or precedential reasons." *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) (holding that such interests are not "legally protectable"). Yet this is precisely the type of interest that SAT would assert under a theory of organizational standing. *See* ECF Nos. 9 at 1, 10 at 8. Accordingly, SAT lacks organizational standing to appeal this court's order and, as discussed *infra*, fails to meet the requirements for intervention as of right.

### III.    SAT's attempt at intervention is futile.

Courts have, time and again, upheld a denial of intervention on the grounds of legal futility. *See, e.g., United States v. Glens Falls Newspapers, Inc.,* 160 F.3d 853, 856 (2d Cir.1998) (upholding district court's denial of motion to intervene on futility grounds); *Williams & Humbert, Ltd. v. W. & H. Trade Marks, Ltd.,* 840 F.2d 72, 74 (D.C. Cir. 1988) (finding that Rule 24(a)(2)'s requirement that intervenor have legally cognizable interest depends in part on whether intervenor has stated legally sufficient claim). Here, SAT's attempt to intervene is futile for two reasons.

*First*, as discussed above, SAT would lack standing to bring an appeal, thus rendering any intervention entirely without effect. *Second*, and just as important, the challenged provisions of the Education Code are expressly preempted, leaving no room for interpretation to the contrary. The federal statute upon which the United States based its lawsuit is unambiguous:

> [A]n alien who is not lawfully present in the United States *shall not be* eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident.

8 U.S.C. § 1623(a). And so to the extent Texas law permits an alien who is not "lawfully present" within the country to receive discounted in-state tuition, federal law governs, thereby superseding and preempting Texas law. Any argument to the contrary—by SAT or any other prospective intervenor—would be fundamentally flawed, constituting instead a thinly veiled attempt to pursue policy preferences through the court system. Preemption here is obvious, and thus intervention opposing it would be fruitless and futile. The Court should therefore deny SAT's motion on these grounds as well.

## IV.    SAT does not meet the requirements for intervention.

Were the Court to determine that SAT has standing, it would inevitably encounter a myriad of other issues with intervention. Specifically, SAT fails to satisfy the express requirements of Rule 24(a)(2) of the Federal Rules of Civil Procedure, which governs intervention of right. There are four requirements:

> (1) The application must be timely; (2) the applicant must have an interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Brumfield*, 749 F.3d at 341. While Rule 24 is to be "liberally construed" and indulges a flexible inquiry, *see Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016), the movant bears the burden of establishing it meets all four requirements. *Rotstain v. Mendez*, 986 F.3d 931, 937 (5th Cir. 2021). "Failure to satisfy one requirement precludes intervention of right." *Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs of the Orleans Levee Dist.*, 493 F.3d 570, 578 (5th Cir. 2007).

a. SAT's motion to intervene is untimely because it would prejudice Texas.

Courts assess timeliness by considering the following four factors: "(1) the length of time the movant waited to file, (2) the prejudice to the existing parties from any delay, (3) the prejudice to the movant if the intervention is denied, and (4) any unusual circumstances." *United States ex rel. Hernandez v. Team Fin., L.L.C.*, 80 F.4th 571, 578 (5th Cir. 2023). Of these, prejudice to existing parties is the "most important consideration." *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1073 (5th Cir. 1970). That factor weighs heavily against SAT.

The Fifth Circuit has previously noted that 'intervention attempts after final judgments are ordinarily looked upon with a jaundiced eye [as they] have a strong tendency to prejudice existing parties to the litigation or to interfere substantially with the orderly process of the court." *United States v. United States Steel Corp.*, 548 F.2d 1232, 1235 (5th Cir. 1977). Thus, in determining whether a motion to intervene is timely, courts consider the prejudice that existing parties would suffer if intervention were permitted, as well as the prejudice that proposed intervenors would suffer if denied. *Rotstain*, 986 F.3d at 937 (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 2015)).

The potential for prejudice against the State here is clear. Absent some other tangible interest, the Attorney General has the *exclusive* right to determine whether judgments on Texas's laws are appealed. *Hollingworth*, 570 U.S. at 705–06 (noting that the District Court's order had no effect on the intervenors, and that "[t]heir only interest in having the District Court order reversed was to vindicate the constitutional validity of a generally applicable California law"). Here, SAT cannot override any decision of Texas to not appeal this Court's judgment. And granting intervention now would do just that by allowing SAT to act on the State's behalf in conflict with the Texas's rights as a sovereign. This clear risk of prejudice renders SAT's Motion to Intervene untimely on account of the most pressing timeliness factor.

Moreover, under the third timeliness factor, SAT would not suffer prejudice if its Motion to Intervene were denied. As previously discussed, SAT itself has shown no legally protectable interest in defending the relevant provisions of the Texas Education Code; that interest belongs to

the State—acting through the Attorney General—alone. *See id.* Thus, SAT would not be prejudiced if denied intervention for appeal.

Put simply, Texas has a significant interest in denying intervention—namely that it has the sole right to defend its own statutes. It would be prejudiced if SAT, which possesses no legally protectable interest in the matter, were permitted to swoop in at the eleventh hour to defend the statutes. Given the weight of these two factors in the Court's timeliness analysis, the Court should decline intervention as of right.

> b.  <u>SAT lacks on independent interest in this action.</u>

Rule 24(a)(2)'s second prong requires that intervenors "must have an interest relating to the property or transaction which is the subject of the action . . . ." *Texas*, 805 F.3d at 357. SAT fails to satisfy Rule 24(a)(2)'s second prong for the same reason it lacks Article III standing: it has failed to establish it has a "direct, substantial, legally protectable interest in the proceedings." *Texas*, 805 F.3d at 657. The only legally protectable interest at stake here is the ability to defend the constitutionality of a state statute. And because SAT has no right to mount such a defense, it may not intervene as of right.

When the constitutionality of a state statute is put to the test, no private party has an interest—much less a legally protectable interest—in defending that statute based on policy preferences alone. That interest belongs solely to the State. Since SAT's proffered members will not be affected by the Court's judgment, all that remains is SAT's wish to intervene based on its own advocacy-related interest in defending the constitutionality of the state law in question. Such an intervention is not proper.

As discussed *supra*, SAT as an organization has suffered no concrete injury and thus has no legally protected interest in the outcome of the litigation. Neither do SAT's members, all of whom appear to be DACA recipients. ECF No. 10 at 4–5. Neither would endure hardship, financial or otherwise, from the relief issued by this Court. Thus, they lack an identifiable interest for which the Court must allow SAT to intervene as of right.

c. The State, as the *parens patriae*, adequately represents SAT's interests.

Even assuming *arguendo* that SAT has a legally cognizable interest, it must show that its interest is "inadequately represented by the existing parties to the suit." *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co. (NOPSI)*, 732 F.2d 452, 463 (5th Cir. 1984) (en banc) (internal quotation marks omitted). A prospective intervenor's failure to meet this requirement is fatal to intervention as of right. *See Edwards v. City of Houston,* 78 F.3d 983, 999 (5th Cir.1996) (*en banc* ). "[T]he constitutional validity of a generally applicable" state law is not a sufficiently independent interest. *Hollingsworth*, 570 U.S. at 694.

Adequate representation is presumed when *either* (1) "the would-be intervenor has the same ultimate objective as a party to the lawsuit"; *or* (2) "the putative representative is a governmental body or officer charged by law with representing the interests of the [intervenor]." *Texas*, 805 F.3d at 661 (citation and quotations omitted). The Attorney General of Texas represents the people of Texas and any rights they possess. *See Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 280–81 (5th Cir. 1996) ("the Attorney General, in defending that statute, can assert the rights of all Mississippians affected by the law, including the Free Exercise rights of the Proposed Intervenors" so "[t]he Attorney General undoubtedly affords the Proposed Intervenors' interests adequate representation."). "To defend its practical interests, the State may choose to mount a legal defense of the named official defendants and speak with a 'single voice,' often through an attorney general." *Berger v. N. Carolina State Conf. of the NAACP*, 597 U.S. 179, 184 (2022). Here, the State of Texas has done that through the Attorney General of Texas.

The Supreme Court has held that when a would-be intervenor's "interest falls squarely within the category of interests with respect to which a state must be deemed to represent all of its citizens," the State represents that interest "as *parens patriae* . . . on behalf of its citizens." *South Carolina v. North Carolina*, 558 U.S. 256, 275 (2010). A proposed intervenor must "show a compelling interest 'in his own right,' distinct from the collective interest of 'all other citizens and creatures of the state,' whose interests the State presumptively represents in matters of sovereign

policy." *Id.* (quoting *New Jersey v. New York*, 345 U.S. 369, 373 (1953)). Absent a unique interest that the State does not already protect in its sovereign capacity, SAT's Motion to Intervene fails.

Here, SAT fails to show that it has an interest "different from that of the government." *Id.* (cleaned up). As the Supreme Court noted in *Cameron*, "[a] State 'clearly has a legitimate interest in the continued enforceability of its own statutes.'" 595 U.S. at 277 (quoting *Maine v. Taylor*, 477 U.S. 131, 137 (1986)). After all, the relevant state law provides the interest which SAT seeks to defend. SAT's interests are presumptively represented under the State's interest in enforcing its own statutes. *Texas v. United States*, 805 F.3d 653, 661 (5th Cir. 2015). Assuming that it cannot represent its members' cognizable interests, because they have not been harmed, SAT does not establish the requisite independent interest. Both Texas and the SAT have "the same ultimate objective": the protection of rights provided under state law. *Texas*, 805 F.3d at 661.

At no point does SAT describe any interest that the State does not represent as *parens patriae*. At most, SAT presents a disagreement on the outcome of the case. But, as noted above, "an intervenor fails to show a sufficient interest when he seeks to intervene solely for ideological, economic, or precedential reasons." *Id.* at 657. It is not enough "that would-be intervenor merely *prefers* one outcome to the other." *Id.* SAT's entire motion rests on its disagreement with the result in this case. The State, they argue, "is also very unlikely to seek an appeal." ECF No. 10 at 16. SAT "seeks intervention as a matter of right . . . for purposes of appeal." *Id.* at 5. That is, SAT is unhappy with the outcome that the State, acting as *parens patriae*, obtained, and it seeks to challenge that outcome. This preference for a different outcome is insufficient ground for intervention, let alone for superseding the State's interest in defending its own statutes.

SAT objects that the Attorney General of Texas has evaluated the merits of the challenge by the United States and elected to settle it, and indeed may not appeal. But that is a disagreement about litigation tactics and the exercise of the authority the State of Texas has placed in the hands of the Attorney General. And the fact that this lawsuit was settled the same day it was filed is not unusual. *See, e.g., United States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826, 834 (5th Cir. 1975) (affirming denial of intervention and upholding consent decree where "[s]imultaneously with the

filing of the complaint, the parties announced to the court that a tentative nationwide settlement had been reached," "multilaterally reduced their agreement to the form of two extensive written consent decrees," and the district court "signed and entered the documents later that same day").

In *Saldano v. Roach*, 363 F.3d 545 (5th Cir. 2004), the court faced arguments that "the Attorney General's representation of the State's interest is inadequate because the Attorney General aligned himself with [the opposing party] and joined [him] in urging the district court to vacate [the opposing party's] sentence and because the Attorney General did not appeal the district court's order granting habeas relief to [him]." *Id.* at 553. But because "the Attorney General has discretion to confess error and to waive procedural default," the court denied intervention because the "Attorney General is not an inadequate representative simply because he has taken these actions, especially when state law gives him the authority to do so." *Id.* at 553–54; *see also Acuff*, 404 F.2d 169 (decision not to take an appeal does not show inadequate representation). So too here, where the Attorney General of Texas has been given the authority by the State to handle litigation concerning state law and has exercised that authority.

In the end, SAT is unable to provide a concrete interest that the State does not adequately protect apart from a generalized disagreement with the outcome of the case. The Court should thus deny its Motion to Intervene.

## V.    SAT should be denied permissive intervention.

SAT's request for permissive intervention is governed by Rule 24(b), which allows the intervention of anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Permissive intervention is "wholly discretionary" and can be denied even if there is a common question of law or fact. *NOPSI*, 732 F.2d at 470–71. Rule 24(b) provides that courts must "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). In exercising their discretion, moreover, district courts consider whether the proposed intervenor will "significantly contribute to full development of the underlying factual issues in the suit."

*NOPSI*, 732 F.2d at 472 (citations and quotations omitted). District court decisions on Rule 24(b) motions receive an "exceedingly deferential" standard of review. *Ingebretsen*, 88 F.3d at 281. Absent a "clear abuse of discretion," the district court's ruling will stand. *Cajun Elec. Power Coop.*, 940 F.2d at 121. Reflecting this deferential standard, the Fifth Circuit has "*never* reversed a denial of permissive intervention." *Ingebretsen*, 88 F.3d at 281 (emphasis added) (citation and quotations omitted).

Here, it is well within the Court's discretion to deny SAT permissible intervention. Under the Fifth Circuit's "clear abuse of discretion" standard, a trial court's ruling on a motion for permissive intervention will only be disturbed under the most "extraordinary circumstances." *NOPSI*, 732 F.2d at 471. The Fifth Circuit generally takes a two-step approach to determining whether to permit intervention. First, the district court must determine whether the would-be intervenor's claims or defenses share questions of fact or law with the main action. And second, the court must exercise its discretion to determine "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Whether SAT's defenses share questions of fact or law with the original action here is not contested. But intervention would prejudice Texas's exclusive right to defend of the state law at issue.

Here, the court would be well within its discretion in denying SAT's permissive intervention because, as previously stated, private parties do not have standing to defend state laws that the States themselves choose not to defend. *See Hollingsworth*, 570 U.S. at 715. Importantly, the absence of standing to defend the state law here precludes permissive intervention all the same as with intervention of right—*i.e.*, standing is required for both. Thus, because SAT lacks standing to defend the law in this case, the Court should deny permissive intervention.

Moreover, *Hollingsworth* illustrates that intervention by SAT here would be prejudicial to Texas's rights, which this Court must consider. *See* Rule 24(b)(3). Permitting SAT to intervene here would disturb Texas's ability to decide the disposition of its own laws, which, again, the Supreme Court has interpreted to be an exclusive right of the State. *See Hollingsworth*, 570 U.S. at

715. Because intervention by SAT here would interfere with Texas's ability to exercise this right, the Court should deny SAT's Motion to Intervene in accordance with Rule 24(b)(3).

### CONCLUSION

For the reasons set forth above, the State of Texas respectfully requests that the Court deny SAT's Motion to Intervene.

Dated: July 2, 2025

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

/s/ Ryan D. Walters
RYAN D. WALTERS
Deputy Attorney General for Legal Strategy

RYAN G. KERCHER
Chief, Special Litigation Division

ZACHARY L. RHINES
Special Counsel
Texas State Bar No. 24116957
zachary.rhines@oag.texas.gov

WADE A. JOHNSON
Special Counsel
Texas State Bar No. 24062197
wade.johnson@oag.texas.gov

OFFICE OF THE ATTORNEY GENERAL OF
TEXAS
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2100

**COUNSEL FOR DEFENDANT,
THE STATE OF TEXAS**

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(a), I hereby certify that on July 2, 2025, a true and correct copy of the above and foregoing document was filed and served electronically via CM/ECF.

/s/ Ryan D. Walters
RYAN D. WALTERS
Deputy Attorney General for Legal Strategy