UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　*Plaintiff*,<br><br>v.<br><br>STATE OF TEXAS,<br>　　　*Defendant*. | CIVIL ACTION NO. 7:25-CV-00055-O |

**DEFENDANT STATE OF TEXAS'S OPPOSITION TO LUPE'S
MOTION TO INTERVENE**

## TABLE OF CONTENTS

Index of Authorities ...................................................................................................................... iii

Introduction .................................................................................................................................... 6

Argument and Authorities .............................................................................................................. 6

    I.    Proposed LUPE Intervenors do not meet the requirements for intervention. .................... 6

        a.    Intervention is untimely because it would prejudice Texas. ............................................. 7

        b.    Proposed LUPE Intervenors do not have an independent interest in this action. ........... 8

            1.    ACC ................................................................................................................... 9

            2.    LUPE ................................................................................................................. 9

            3.    Oscar Silva .......................................................................................................10

        c.    The State, as the *parens patriae*, adequately represents LUPE's interests. ................... 11

    II.    Permissive Intervention is similarly inapposite. ............................................................... 13

    III.    Intervention for the purposes of overturning the Consent Order is improper. ................. 15

    IV.    Intervention is futile. ......................................................................................................... 16

Conclusion .................................................................................................................................... 19

Certificate of Service .................................................................................................................... 19

<small>
</small>

# INDEX OF AUTHORITIES

**Cases**

*Acuff v. United Papermakers & Paperworkers*,
   404 F.2d 169 (5th Cir. 1968).................................................................................................13

*Berger v. N.C. State Conf. of the NAACP*,
   597 U.S. 179 (2022) ..........................................................................................................

*Brumfield v. Dodd*,
   749 F.3d 339 (5th Cir. 2014)..................................................................................................7

*Cajun Elec. Power Coop., Inc. v. Gulf State Utils., Inc.*,
   940 F.2d 117 (5th Cir. 1991)................................................................................................14

*Cameron v. EMW Women's Surgical Ctr., P.S.C.*,
   595 U.S. 267 (2022) .............................................................................................................12

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ........................................................................................................9, 17

*Edwards v. City of Houston*,
   78 F.3d 983 (5th Cir. 1996) (en banc) ................................................................................. 11

*Food & Drug Admin. v. All. for Hippocratic Med.*,
   602 U.S. 367 (2024) ..................................................................................................... 10, 17

*Gen. Land Off. v. Trump*,
   No. 24-40447, 2025 WL 1410414 (5th Cir. May 15, 2025) ...............................................16

*Gilyard v. Tex. Laurel Ridge Hosp. LP*,
   No. SA-07-CA-650-OG, 2009 WL 10670038 (W.D. Tex. Feb. 18, 2009)...........................10

*Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs*,
   493 F.3d 570 (5th Cir. 2007) .................................................................................................7

*Hobson v. Hansen*,
   44 F.R.D. 18 (D.D.C. 1968)...........................................................................................10, 18

*Hollingsworth v. Perry*,
   570 U.S. 693 (2013) ................................................................................................8, 11, 15

*In re Geisser,*
   554 F.2d 698 (5th Cir. 1977) ......................................................................................... 15, 16

*Ingebretsen v. Jackson Pub. Sch. Dist.*,
  88 F.3d 274 (5th Cir. 1996).................................................................................11, 14

*Little v. KPMG LLP*,
  575 F.3d 533 (5th Cir. 2009) ..................................................................................... 9

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ................................................................................................17

*McDonald v. E.J. Lavino Co.*,
  430 F.2d 1065 (5th Cir. 1970)...................................................................................7

*Mendenhall v. M/V Toyota Maru No. 11*,
  551 F.2d 55 (5th Cir. 1977)............................................................................... 10, 18

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*,
  732 F.2d 452 (5th Cir. 1984) (en banc)...............................................................11, 14

*Ross v. Marshall*,
  426 F.3d 745 (5th Cir. 2005) ......................................................................................

*Rotstain v. Mendez*,
  986 F.3d 931 (5th Cir. 2021) .....................................................................................7

*Saldano v. Roach*,
  363 F.3d 545 (5th Cir. 2004) ...................................................................................13

*Sierra Club v. Espy*,
  18 F.3d 1202 (5th Cir. 1994) ...................................................................................15

*South Carolina v. North Carolina*,
  558 U.S. 256 (2010)................................................................................................12

*Stallworth v. Monsanto Co.*,
  558 F.2d 257 (5th Cir. 1977) ...................................................................................15

*Texas v. United States*,
   805 F.3d 653 (5th Cir. 2015).................................................................... 8, 11, 12

*United States ex rel. Hernandez v. Team Fin., L.L.C.*,
  80 F.4th 571 (5th Cir. 2023) ......................................................................................7

*United States v. Allegheny-Ludlum Indus., Inc.*,
  517 F.2d 826 (5th Cir. 1975) ...................................................................................13

*United States v. Glens Falls Newspapers, Inc.*,
  160 F.3d 853 (2d Cir. 1998) ....................................................................................16

*Va. House of Delegates v. Bethune-Hill*,
    587 U.S. 658 (2019) ...................................................................................................... 17

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*,
    834 F.3d 562 (5th Cir. 2016) .......................................................................................... 7

*Williams & Humbert, Ltd. v. W. & H. Trade Marks, Ltd.*,
    840 F.2d 72 (D.C. Cir. 1988) ........................................................................................ 16

**Statutes**

8 U.S.C. § 1623(a) ................................................................................................................ 16

**Rules & Regulations**

Fed. R. Civ. P. 24(b)(3) ................................................................................................. 14, 15

Fed. R. Civ. P. 24(c) ..............................................................................................................

Defendant, the State of Texas, hereby responds to the Emergency Motion to Intervene, ECF No. 16, filed by La Unión del Pueblo Entero (LUPE), Austin Community College (ACC), and Oscar Silva (Silva) (collectively the Proposed LUPE Intervenors) and would show the Court as follows:

## INTRODUCTION

As this Court is aware, this now closed case involves an as applied challenge by the United States to Texas's application of subsections 54.052(a)(3) and 54.051(m) of the Texas Education Code to aliens not lawfully present in the United States. ECF No. 1. After reviewing the relevant law and determining that the provisions were indeed preempted by 8 U.S.C. § 1623(a), Texas agreed to enter into a consent judgment (the Consent Judgment), ECF No. 6, which the Court subsequently granted, ECF No. 8. Now, outside groups seek to disturb the parties' well-considered legal decisions by inserting themselves into a case that has already been resolved. *See* ECF Nos. 16, 17, 18. However, under the well-established legal standards already set forth in response to another such attempt and incorporated here by reference, *see* ECF No. 47, this court should deny the Proposed LUPE Intervenors' attempts at mandatory or permissive intervention.

## ARGUMENT AND AUTHORITIES

Proposed LUPE Intervenors do not meet the requirements for intervention as of right under Federal Rule of Civil Procedure 23(a)(2). But even if they did, Proposed LUPE Intervenors could *only* intervene for purposes of appeal. Given that the State of Texas will not appeal, they would need to independently demonstrate standing to invoke the jurisdiction of the appellate court. Here too they would fail, and thus intervention for the purpose of appeal would be both improper and futile.

**I.   Proposed LUPE Intervenors do not meet the requirements for intervention.**

Proposed LUPE Intervenors cannot intervene as of right because they do not satisfy the requirements of Federal Rule of Civil Procedure 24(a)(2). There are four requirements to intervene as of right:

> (1) The application must be timely; (2) the applicant must have an interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or

impede its ability to protect its interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014). While Rule 24 is to be "liberally construed" and indulges a flexible inquiry, *see Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016), the movant bears the burden of establishing it meets each requirement. *Rotstain v. Mendez*, 986 F.3d 931, 937 (5th Cir. 2021). "Failure to satisfy one requirement precludes intervention of right." *Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs*, 493 F.3d 570, 578 (5th Cir. 2007).

   a. <u>Intervention is untimely because it would prejudice Texas.</u>

Courts assess the first requirement, timeliness, by considering the following four factors: "(1) the length of time the movant waited to file, (2) the prejudice to the existing parties from any delay, (3) the prejudice to the movant if the intervention is denied, and (4) any unusual circumstances." *United States ex rel. Hernandez v. Team Fin., L.L.C.*, 80 F.4th 571, 578 (5th Cir. 2023). Of these, prejudice to existing parties is the "most important consideration." *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1073 (5th Cir. 1970). That factor cuts against the Proposed LUPE Intervenors.

'[I]ntervention attempts after final judgments are ordinarily looked upon with a jaundiced eye [as they] have a strong tendency to prejudice existing parties to the litigation or to interfere substantially with the orderly process of the court." *United States v. United States Steel Corp.*, 548 F.2d 1232, 1235 (5th Cir. 1977). Thus, in determining whether a motion to intervene is timely, courts consider the prejudice that existing parties would suffer if intervention were permitted, as well as the prejudice that proposed intervenors would suffer if denied. *Rotstain*, 986 F.3d at 937 (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 2015)).

Texas will undoubtedly be prejudiced by intervention at this point in the proceedings. Absent some other tangible interest. Like Students for Affordable Tuition before them, *see* ECF Nos. 9, 47, Proposed LUPE Intervenors cannot take the place of the Attorney General of Texas to

7

defend Texas law. Granting intervention at this point in the proceedings would violate the very principle that Texas, as a sovereign state, may choose how it defends its own laws from challenge.

Similarly, Proposed LUPE Intervenors would not suffer harm or prejudice if their intervention is denied. They have shown no legally protectable interest in defending the relevant provisions of the Texas Education Code. Instead, that interest belongs solely to the State acting through the Attorney General. *See Hollingsworth v. Perry*, 570 U.S. 693, 705–06 (2013). And because they lack a legally protected interest, Proposed LUPE Intervenors cannot be prejudiced.

Put simply, Texas has a significant interest in denying intervention—namely that it has the sole right to defend its own statutes. It would be prejudiced if Proposed LUPE Intervenors, who possesses no legally protectable interest in the matter, were permitted to swoop in at the eleventh hour to defend the statutes. Given the weight of these two factors in the Court's timeliness analysis, the Court should decline intervention as of right.

    b. <u>Proposed LUPE Intervenors do not have an independent interest in this action.</u>

Rule 24(a)(2)'s second prong requires that intervenors "must have an interest relating to the property or transaction which is the subject of the action . . . ." *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015). The Proposed LUPE Intervenors fail to satisfy Rule 24(a)(2)'s second prong for the same reason it lacks Article III standing: it has failed to establish it has a "concrete, personalized, and legally protectable" interest in the proceedings. *Id*. at 658. The only legally protectable interest at stake here is the ability to defend the constitutionality of a state statute. And because Proposed LUPE Intervenors have no right to mount such a defense, it may not intervene as of right.

When the constitutionality of a state statute is challenged, no private party has an interest—much less a legally protectable interest—in defending that statute based on that party's policy preferences alone. This, again, is the State's interest. Despite their pleas to the contrary, Proposed LUPE Intervenors *are* each organizations or "individuals seeking to defend a governmental policy they support on ideological grounds." ECF No. 16 (citing *Texas*, 805 F.3d at 661), and they do not

have a "real, concrete stake in the outcome of this litigation[.]" *Id.* The Court should therefore deny their intervention.

### 1. ACC

ACC's primary[1] interest in the outcome of this litigation is its alleged loss of revenue. ECF No. 16 at 6–7. Specifically, it claims that if those without lawful presence are denied in-state tuition, ACC's enrollment will decline because at least some of those individuals will elect to leave school or not enroll as a result. *Id.* But any harm to ACC's interests is based entirely on the independent actions of third parties and thus merely conjectural. *Cf. Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009) (observing in the context of standing that an alleged injury "generally is too conjectural or hypothetical" when its "existence depends on the decisions of third parties not before the court"). Here, ACC speculates on the independent decision making of would-be enrollees. But in so doing, it tellingly glosses over the obvious and distinct possibility that charging increased tuition may actually increase revenue. Taking as true, for the sake of argument, that the tuition costs for these 440 allegedly affected students could quadruple, ECF No. 16 at 7, for ACC to lose revenues, 75% of those students would need to decide to not enroll. Nothing indicates the likelihood of such a precipitous drop. Accordingly, this court should "decline to abandon [its] usual reluctance to endorse" theories of legal harm "that rest on speculation about the decisions of independent actors." *Cf. Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013).

### 2. LUPE

Like ACC, LUPE also lacks a cognizable or coherent interest in the outcome of this litigation. LUPE contends that the final judgment in this case "has affected LUPE's staff, outreach, advocacy, social media, print materials, and community relationships." ECF No. 16 at 8. It cites diverted resources and additional time spent communicating with various partners and volunteers as its main interest in the litigation. *Id.* But these are not the type of interests that convey a right to intervene.

---

[1] ACC also cites extraneous interests in the litigation, such as administrative burdens and costs. ECF No. 19 at 146–48.

That LUPE has felt the need to divert some of its resources to address the change in law does not mean that they have a concrete interest in the outcome of the litigation. At its core, LUPE is an advocacy organization that seeks to address the needs of various communities and takes part in activities such as "fighting deportations" and "providing social services and English classes[.]" *About La Unión del Pueblo Entero*, LUPE, https://lupenet.org/about/. In addressing the needs of such communities, it must necessarily adapt to varying conditions and legal landscapes. Doing so in this case is no exception. Any impediment on LUPE's advocacy business falls far short of the kind of direct harm needed for intervention. *Cf. Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024) (holding that an advocacy organization does not incur an injury for the purposes of standing when a federal regulation makes it "more difficult for them to inform the public about" certain issues). Just as organizations cannot "spend [their] way" into standing simply by re-allocating money for advocacy purposes, *id.* at 394, LUPE cannot demonstrate a concrete interest in the litigation by voluntarily re-allocating advocacy resources in response to the Consent Order.

   3. *Oscar Silva*

The lone individual seeking to disturb this court's judgment also fails to adequately allege an interest in the lawsuit's outcome sufficient to warrant intervention. "Where petitioners seek to intervene after final judgment, specificity may be particularly important." *Hobson v. Hansen*, 44 F.R.D. 18, 25 (D.D.C. 1968). Indeed, specificity is crucial for the court to determine why and how a proposed intervenor has a legally protected interest. *Id.* A court need not accept as true conclusory allegations made in support of intervention. *Cf. Mendenhall v. M/V Toyota Maru No. 11*, 551 F.2d 55, 56 n.2 (5th Cir. 1977); *see also Gilyard v. Tex. Laurel Ridge Hosp. LP,* No. SA-07-CA-650-OG, 2009 WL 10670038 at \*\*4 (W.D. Tex. Feb. 18, 2009).

But conclusory allegations of an interest in the litigation's outcome are all that proposed intervenor Oscar Silva offers. In general terms, Silva states that he would be unable to afford tuition at his chosen university without the benefit of in-state tuition. *See* ECF No. 16 at 9–10. He states that, while he is currently eligible for in-state tuition based on his residency, he may not be in the

future. ECF No. 19 at 142. But he never explains *why* this is the case. He makes no allegation regarding whether he is "lawfully present" in the country. *See* ECF No. 19 at 141–43. This is a critical factor for the Court's determination. If Silva is in fact lawfully present in the country, he would be unaffected by the consent order and would have no legally protected interest in the litigation. And so, for example, if Silva is a beneficiary of the Deferred Action for Childhood Arrivals (DACA) program, he would be lawfully present, and this would render his alleged interests simply ideological and therefore immaterial. *See* ECF No. 47 at 3–5. Silva's conclusory contentions related to his alleged interest in the litigation lack specificity, and the Court should therefore not indulge them.

    c. <u>The State, as the *parens patriae*, adequately represents LUPE's interests.</u>

Even assuming *arguendo* that Proposed LUPE Intervenors have a legally cognizable interest, they must show that its interest is "inadequately represented by the existing parties to the suit." *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co. (NOPSI)*, 732 F.2d 452, 463 (5th Cir. 1984) (en banc) (internal quotation marks omitted). A prospective intervenor's failure to meet this requirement is fatal to intervention as of right. *See Edwards v. City of Houston,* 78 F.3d 983, 999 (5th Cir. 1996) (en banc). "[T]he constitutional validity of a generally applicable" state law is not a sufficiently independent interest. *Hollingsworth*, 570 U.S. at 694.

Adequate representation is presumed when *either* (1) "the would-be intervenor has the same ultimate objective as a party to the lawsuit"; *or* (2) "the putative representative is a governmental body or officer charged by law with representing the interests of the [intervenor]." *Texas*, 805 F.3d at 661 (citation and quotations omitted). The Attorney General of Texas represents the people of Texas and any rights they possess. *See Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 280–81 (5th Cir. 1996) (observing that "the Attorney General, in defending that statute, can assert the rights of all Mississippians affected by the law, including the Free Exercise rights of the Proposed Intervenors" so "[t]he Attorney General undoubtedly affords the Proposed Intervenors' interests adequate representation."). "To defend its practical interests, the State may choose to mount a legal defense of the named official defendants and speak with a 'single voice,'

11

often through an attorney general." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 184 (2022). Here, the State of Texas has done that through the Attorney General of Texas.

The Supreme Court has held that when a would-be intervenor's "interest falls squarely within the category of interests with respect to which a state must be deemed to represent all of its citizens," the State represents that interest "as *parens patriae* . . . on behalf of its citizens." *South Carolina v. North Carolina*, 558 U.S. 256, 275 (2010). A proposed intervenor must "show a compelling interest 'in his own right,' distinct from the collective interest of 'all other citizens and creatures of the state,' whose interests the State presumptively represents in matters of sovereign policy." *Id.* (quoting *New Jersey v. New York*, 345 U.S. 369, 373 (1953)). Absent a unique interest that the State does not already protect in its sovereign capacity, the Motion to Intervene fails.

Proposed LUPE Intervenors do not show that they have an interest "different from that of the government." *Id.* at 274 (cleaned up). As the Supreme Court noted in *Cameron*, "[a] State 'clearly has a legitimate interest in the continued enforceability of its own statutes.'" *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 277 (2022) (quoting *Maine v. Taylor*, 477 U.S. 131, 137 (1986)). After all, the relevant state law provides the interest which the Proposed LUPE Intervenors seek to defend. Their interests are presumptively represented under the State's interest in enforcing its own statutes. *Texas v. United States*, 805 F.3d at 661. As discussed above, none of those seeking intervention have a legally protected interest in the lawsuit. Both Texas and the Proposed LUPE Intervenors have "the same ultimate objective": the protection of rights provided under state law. *Texas*, 805 F.3d at 661.

At most, Proposed LUPE Intervenors present a disagreement on the outcome of the case. But, as noted above, "an intervenor fails to show a sufficient interest when he seeks to intervene solely for ideological, economic, or precedential reasons." *Id.* at 657. It is not enough "that would-be intervenor merely *prefers* one outcome to the other." *Id.* Proposed LUPE Intervenors' entire motion rests on its disagreement with the result in this case.

At its core, this dispute centers around Proposed LUPE Intervenors objecting to the Attorney General's evaluation of the merits of the United States' legal challenge and decision to

12

conserve office resources and avoid legal ambiguity by settling the case. But that is a disagreement about litigation tactics and the exercise of the authority the State of Texas has placed in the hands of the Attorney General. Nor is settlement on the same date a lawsuit is filed particularly unusual. *See, e.g., United States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826, 834 (5th Cir. 1975) (affirming denial of intervention and upholding consent decree where "[s]imultaneously with the filing of the complaint, the parties announced to the court that a tentative nationwide settlement had been reached," "multilaterally reduced their agreement to the form of two extensive written consent decrees," and the district court "signed and entered the documents later that same day").

Despite protestations to the contrary, nothing about the instant case is new or surprising. Courts commonly face similar scenarios. In *Saldano v. Roach*, 363 F.3d 545 (5th Cir. 2004), the court faced arguments that "the Attorney General's representation of the State's interest is inadequate because the Attorney General aligned himself with [the opposing party] and joined [him] in urging the district court to vacate [the opposing party's] sentence and because the Attorney General did not appeal the district court's order granting habeas relief to [him]." *Id.* at 553. But because "the Attorney General has discretion to confess error and to waive procedural default," the court denied intervention because the "Attorney General is not an inadequate representative simply because he has taken these actions, especially when state law gives him the authority to do so." *Id.* at 553–54; *see also Acuff v. United Papermakers & Paperworkers*, 404 F.2d 169 (5th Cir. 1968) (decision not to take an appeal does not show inadequate representation). So too here, where the Attorney General of Texas has been given the authority by the State to handle litigation concerning state law and has exercised that authority.

Proposed LUPE Intervenors are simply unable to provide a concrete interest that the State does not adequately protect. Its generalized disagreement with the outcome of the case is insufficient. The Court should thus deny their Motion to Intervene.

## II.    Permissive Intervention is similarly inapposite.

Proposed LUPE Intervenors' request for permissive intervention is governed by Rule 24(b), which allows the intervention of anyone who "has a claim or defense that shares with the

main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Permissive intervention is "wholly discretionary" and can be denied even if there is a common question of law or fact. *NOPSI*, 732 F.2d at 470–71. Rule 24(b) provides that courts must "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). In exercising their discretion, moreover, district courts consider whether the proposed intervenor will "significantly contribute to full development of the underlying factual issues in the suit." *NOPSI*, 732 F.2d at 472 (citations and quotations omitted). District court decisions on Rule 24(b) motions receive an "exceedingly deferential" standard of review. *Ingebretsen*, 88 F.3d at 281. Absent a "clear abuse of discretion," the district court's ruling will stand. *Cajun Elec. Power Coop., Inc. v. Gulf State Utils., Inc.*, 940 F.2d 117, 121 (5th Cir. 1991). Reflecting this deferential standard, the Fifth Circuit has "*never* reversed a denial of permissive intervention." *Ingebretsen*, 88 F.3d at 281 (emphasis added) (citation and quotations omitted).

Here, it is well within the Court's discretion to deny permissible intervention. Under the Fifth Circuit's "clear abuse of discretion" standard, a trial court's ruling on a motion for permissive intervention will only be disturbed under the most "extraordinary circumstances." *NOPSI*, 732 F.2d at 471. The Fifth Circuit generally takes a two-step approach to determining whether to permit intervention. First, the district court must determine whether the would-be intervenor's claims or defenses share questions of fact or law with the main action. And second, the court must exercise its discretion to determine "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Whether the Proposed LUPE Intervenors' defenses share questions of fact or law with the original action here is not contested. But intervention would prejudice Texas's exclusive right to defend of the state law at issue.

Moreover, the court lacks essential information about how the proposed intervenors would even attempt to defend against the United States claims were they allowed to do so. That is because Proposed LUPE Intervenors have failed to observe the requirement to accompany its motion to intervene with "a pleading that sets out the claim or defense for which intervention is sought."

14

Fed. R. Civ. P. 24(c). Indeed, Proposed LUPE Intervenors' motion (and associated appendix) is entirely devoid of any pleading asserting any defenses to the United States' action. *See* ECF Nos. 16–19. This defect prevents either the parties or this court from fairly gauging Proposed LUPE Intervenors' response to the United States' factual allegations as well as any legal defenses Proposed Intervenors plan to assert. Those in the case are instead left to guess at what theories could possibly be employed in attempting to salvage clearly preempted state statute.

Here, the court would be well within its discretion in denying the Proposed LUPE Intervenors' permissive intervention because, as previously stated, private parties are not authorized to defend state laws that the States themselves choose not to defend. *See Hollingsworth*, 570 U.S. at 715. Importantly, when seeking to intervene for purposes of appeal, the absence of standing to defend the state law here precludes permissive intervention all the same as with intervention of right—*i.e.*, standing is required for both. Thus, because LUPE lacks standing to defend the law in this case, the Court should deny permissive intervention.

Further, *Hollingsworth* illustrates that intervention by the Proposed LUPE Intervenors would be prejudicial to Texas's rights, which this Court must consider. *See* Fed. R. Civ. P. 24(b)(3). Permitting intervention here would disturb Texas's ability to decide the disposition of its own laws, which, again, the Supreme Court has interpreted to be an exclusive right of the State. *See Hollingsworth*, 570 U.S. at 715. Because intervention by the Proposed LUPE Intervenors would interfere with Texas's ability to exercise this right, the Court should deny the Motion to Intervene in accordance with Rule 24(b)(3).

### III. Intervention for the purposes of overturning the Consent Order is improper.

Intervention is especially improper here because the Proposed LUPE Intervenors seek to relitigate already settled issues in the trial court. An intervenor "must accept the proceedings as he finds them." *In re Geisser,* 554 F.2d 698, 705 n.6 (5th Cir. 1977); *Sierra Club v. Espy*, 18 F.3d 1202, 1206 n.3 (5th Cir. 1994). Often, when a party attempts to intervene after final judgment is rendered, the party does so for the purposes of appealing the final judgment. *See Stallworth v. Monsanto Co.*, 558 F.2d 257, 265 (5th Cir. 1977); *see also Ross v. Marshall*, 426 F.3d 745, 755 (5th

15

Cir. 2005) ("A common example of post-judgment intervention that satisfies these criteria is intervention for the purpose of appealing a decision that the existing parties to a suit have decided not to pursue."); *see also Gen. Land Off. v. Trump*, No. 24-40447, 2025 WL 1410414, at *6 n.8 (5th Cir. May 15, 2025). But Proposed LUPE Intervenors only seek leave to intervene for the purposes of appeal in the alternative, with no developed argument on this issue. ECF No. 16 at 24. Primarily, they seek reconsideration of the Court's decision. *See generally* ECF Nos. 16–18. Attempts to wind back the clock to re-litigate already decided matters in a closed case are wholly improper. *See Geisser*, 554 F.2d at 765 n.6. But Proposed LUPE Intervenors nevertheless must attempt to avoid entering the case how they found it—after final judgment—because intervention for purposes of appeal would itself prove futile.

### IV.  Intervention is futile.

Courts have, time and again, upheld a denial of intervention on the grounds of legal futility. *See, e.g., United States v. Glens Falls Newspapers, Inc.,* 160 F.3d 853, 856 (2d Cir. 1998) (upholding district court's denial of motion to intervene on futility grounds); *Williams & Humbert, Ltd. v. W. & H. Trade Marks, Ltd.,* 840 F.2d 72, 74 (D.C. Cir. 1988) (finding that Rule 24(a)(2)'s requirement that intervenor have legally cognizable interest depends in part on whether intervenor has stated legally sufficient claim). Here, Proposed LUPE Intervenors' attempt to intervene is futile. The challenged provisions of the Education Code are expressly preempted, leaving no room for interpretation to the contrary. The federal statute upon which the United States based its lawsuit is unambiguous:

> [A]n alien who is not lawfully present in the United States *shall not be* eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident.

8 U.S.C. § 1623(a). And so, to the extent Texas law permits an alien who is not "lawfully present" within the country to receive discounted in-state tuition, federal law governs, thereby superseding and preempting Texas law. Any argument to the contrary would be fundamentally flawed, constituting instead a thinly veiled attempt to pursue policy preferences through the

16

would be fruitless and futile. The Court should therefore deny Proposed LUPE Intervenors' motion on these grounds as well.

Legal futility also stems from the Proposed LUPE Intervenors inability to establish standing. "[T]o appeal a decision that the primary party does not challenge, an intervenor must independently demonstrate standing." *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663 (2019). As the parties invoking federal jurisdiction at the appellate court, Proposed LUPE Intervenors would bear the burden to demonstrate standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Central to standing is that a party must have suffered an injury in fact that is concrete and particularized as well as imminent rather than hypothetical. *Lujan*, 504 U.S. at 560.

In the preceding pages, Texas described in detail why Proposed LUPE Intervenors each lack a legally protected interest in the subject matter of the lawsuit that would permit them to intervene. For the same reasons, no constituent member of Proposed LUPE Intervenors has suffered an injury sufficient to confer Article III standing for purposes of appeal. Whether ACC will suffer any injury is entirely speculative. *Clapper*, 568 U.S. at 414 & n.5. ACC's alleged injury is based prospective actions of third parties—namely its 440 students who would allegedly be affected by the Consent Order. But ACC provides no support that these students will be unable or unwilling to pay higher tuition rates or find other means of funding their education. While hypothetically conceivable that ACC *could* be injured if a vast swath of those individuals choose not to re-enroll, ACC has made no showing that this is remotely likely. They instead rely on the counterintuitive assumption that raising tuition will result in decreased revenue. These hypothetical harms based on contingent third-party actions make it ACC's injury entirely speculative, depriving it of any standing. *Id.*

Similarly, LUPE's standing argument is foreclosed by *Alliance for Hippocratic Medicine*. LUPE's alleged organizational injury—that it would have to divert re-allocate resources to aid communities in dealing with this change in law—is not an injury that would convey standing. *See All. for Hippocratic Med.*, 602 U.S. at 395. LUPE cannot buy its way into standing by deciding that

it must spend more resources addressing the change imposed by the Consent Order. The Consent Order does not affect any substantive right LUPE has, nor does it impose any sort of additional cost on LUPE outside of its advocacy mission. Accordingly, LUPE has also not suffered any legally cognizable injury.

Last, Silva has not stated with specificity why he would be affected by this change in law. *See Hobson*, 44 F.R.D. at 25. Silva makes no showing that he is not lawfully present in the country, and there is therefore no indication that this change in law would affect him, *see* ECF No. 19 at 141–143, and makes unsubstantiated and improper conclusory statements about his eligibility for in-state tuition, *see Mendenhall*, 551 F.2d at 56 n.2.[2] And since the Consent Order only affects the tuition rates of such students who receive in-state tuition based on residency, he has not pled facts that would show a concrete injury in fact. For that reason, Silva also lacks standing to intervene for the purposes of appeal.

---

[2] Importantly, Silva's assertions tend to be entirely hypothetical. For example, he states "*If* I am ineligible to receive in-state tuition for the remaining two semesters of my education, I will not be able to finish my degree." ECF No. 19 at 142. The highly speculative nature of his allegations makes it even less certain he has any interest in this litigation.

## CONCLUSION

For the reasons set forth above, the State of Texas respectfully requests that the Court deny Proposed LUPE Intervenors' Motion to Intervene.

Dated: July 14, 2025

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**RYAN D. WALTERS**
Deputy Attorney General for Legal Strategy

**RYAN G. KERCHER**
Chief, Special Litigation Division

Respectfully submitted,

*/s/ Zachary L. Rhines*
**ZACHARY L. RHINES**
Special Counsel
Texas State Bar No. 24116957
zachary.rhines@oag.texas.gov

**WADE A. JOHNSON**
Special Counsel
Texas State Bar No. 24062197
wade.johnson@oag.texas.gov

**OFFICE OF THE TEXAS ATTORNEY GENERAL**
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2100

**COUNSEL FOR DEFENDANT,
THE STATE OF TEXAS**

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(a), I hereby certify that on July 14, 2025, a true and correct copy of the above and foregoing document was filed and served electronically via CM/ECF.

*/s/ Zachary L. Rhines*
**ZACHARY L. RHINES**
Special Counsel