CHAD MIZELLE
Acting Associate Attorney General
ABHISHEK S. KAMBLI
Deputy Associate Attorney General
BRET A. SHUMATE
Assistant Attorney General Civil Division
DREW C. ENSIGN
Deputy Assistant Attorney General
LAUREN FASCETT
Senior Litigation Counsel
ELIANIS N. PEREZ
Assistant Director
Office of Immigration Litigation
General Litigation and Appeals Section
*Attorneys for the United States*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF TEXAS,<br><br>Defendant. | Civ. No. 7:25-cv-00055-O |

**PLAINTIFF'S OPPOSITION TO MOTION TO INTERVENE**

La Union del Pueblo Entero ("LUPE"), Austin Community College ("ACC"), and Oscar Silva ("Silva") (collectively the "punitive intervenors") seek to intervene to pursue reconsideration or appeal of the Consent Order invalidating Texas Education Code §§ 54.051(m) and 54.052(a) as expressly preempted by federal immigration law under 8 U.S.C. § 1623. ECF No. 16. The putative intervenors contend that, because the parties agreed on the constitutional issues presented and

jointly requested entry of the Consent Order, there was no case or controversy under Article III, thereby depriving the Court of jurisdiction. *See* ECF No. 16 at 7. They further claim a direct harm from the potential loss of reduced in-state tuition benefits and seek to intervene to protect those interests.

The Court should deny the motion to intervene. The Supreme Court has long recognized that federal district courts have inherent authority to enter consent judgments where subject-matter jurisdiction exists. *See Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 525 (1986). Here, the Court plainly had jurisdiction under 28 U.S.C. § 1331, as the claims raised substantial federal questions. Entry of the Consent Order was therefore well within the Court's authority.

Moreover, intervention would be legally futile. The proposed intervenors have not asserted any cognizable claim or defense that would alter the legal conclusion that the challenged Texas laws are preempted by federal law. Even if intervention were permitted, they offer no legal basis that would justify a different result.

Finally, the motion fails to meet the standard for permissive intervention under Rule 24(b)(1)(B). The intervenors do not present any legal or factual questions that would meaningfully assist the Court or require reconsideration of the outcome. Their interests do not warrant disrupting a jurisdictionally sound and legally supported resolution.

## PROCEDURAL HISTORY

Plaintiff United States of America filed its Complaint on June 4, 2025, against the State of Texas asserting that Texas Education Code §§ 54.051(m) and 54.052(a)(3) are preempted by federal immigration law, specifically 8 U.S.C. § 1623. ECF No. 1. That same day, upon the parties' joint motion, the Court entered an Order and Final Judgment (ECF No. 8, the "Consent Order") declaring the challenged provisions unconstitutional and invalid under the Supremacy Clause. The

Court found "that the challenged provisions, Texas Education Code §§ 54.051(m), 54.052(a), as applied to aliens who are not lawfully present in the United States, violate the Supremacy Clause and [are] unconstitutional and invalid." *Id.* Thus, the Court permanently enjoined Defendant State of Texas, as well as its "successors, agents, and employees, from enforcing Texas Education Code § 54.051(m) and § 54.052(a), as applied to aliens who are not lawfully present in the United States." *Id.*

On June 11, 2025, Students for Affordable Tuition ("SAT") filed the Opposed Motion to Intervene, seeking to intervene for the purpose of appealing the Consent Order. Subsequently, on June 24, 2025, three additional parties—La Union del Pueblo Entero, Austin Community College, and Oscar Silva—filed an Emergency Motion to Intervene (ECF No. 16), along with an Emergency Motion to Stay Judgment (ECF No. 18) and an Emergency Motion for Relief from Judgment (ECF No. 17). The putative intervenors seek intervention to pursue reconsideration or appeal of the Consent Order. The parties filed oppositions to SAT's motion on July 2, 2025. ECF Nos. 47, 48.

## ARGUMENT

**I.    This Court Had Subject-Matter Jurisdiction to Enter the Consent Judgment.**

This Court was not barred from adjudicating the dispute between the parties. Federal district courts have long held the inherent authority—subject to Article III limitations and statutory grant of jurisdiction—to enter consent judgments. A consent judgment is "a judicially approved settlement agreement," and courts have jurisdiction to enter such judgments when they have subject-matter jurisdiction over the underlying dispute. *See Local No. 93, Int'l Ass'n of Firefighters,*, 478 U.S. at 525. "It is a judicial function and an exercise of the judicial power to render judgment on consent." *Pope v. United States*, 323 U.S. 1, 4 (1944); *League of United Latin Am. Citizens v. Clements*, 999 F.2d 831, 845 (5th Cir. 1993).

Subject-matter jurisdiction to enter a consent judgment flows from the same source as jurisdiction over the underlying claims. Where the district court has original jurisdiction—whether under 28 U.S.C. § 1331 (federal question), § 1332 (diversity), or another statute—it may enter a judgment based on the parties' agreement. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Enforcement of [a] settlement agreement ... requires its own basis for jurisdiction."). But so long as the court retains jurisdiction over the case, it may enter and enforce a consent decree or judgment resolving the claims. *See also Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 378 (1992) (recognizing judicial power to approve and modify consent decrees under existing jurisdiction). Moreover, Rule 41(a)(2) of the Federal Rules of Civil Procedure allows dismissal of an action "by court order, on terms that the court considers proper," which often includes the entry of a consent judgment or stipulation of dismissal with enforceable terms. The court's jurisdiction to enter such a judgment may also be expressly retained as part of the order. *See Kokkonen*, 511 U.S. at 381–82.

Putative intervenors argue that this case lacks sufficient adverseness because the parties did not defend the legality of the challenged policy. However, this argument misunderstands the nature of Article III's adverseness requirement. To the extent adverseness is questioned, it is a prudential, not jurisdictional, consideration. *See INS v. Chadha*, 462 U.S. 919, 939 (1983) (adverseness exists even where all parties agree on the merits if there remains a real dispute about enforcement or legal consequences); *Baker v. Carr*, 369 U.S. 186, 204 (1962).

As the Supreme Court recognized in *United States v. Windsor*, 570 U.S. 744, 758 (2013) and *Chadha*, 462 U.S. at 939, the absence of formal opposition does not necessarily eliminate jurisdiction where a party continues to enforce the challenged law or policy. In *Windsor*, the federal government agreed with the plaintiff that § 3 of the Defense of Marriage Act was unconstitutional yet continued to enforce the statute and appealed a district court ruling that had struck it down.

4

The Court acknowledged that this unusual posture raised prudential concerns about adverseness but held that "the prudential concerns that might counsel against hearing an appeal when the Executive agrees with the lower court are outweighed by the necessity of having the issue resolved." *Windsor*, 570 U.S. at 758. The Court emphasized that the government's continued enforcement of the statute—and the resulting financial and legal consequences for the plaintiff— created a live controversy. *Id*.

*Chadha* reinforces this conclusion. There, the Executive Branch agreed with the plaintiff that the legislative veto provision of the Immigration and Nationality Act—authorizing one House of Congress, by resolution, to invalidate a decision of Executive Branch, to allow a particular deportable alien to remain in the United States—was unconstitutional, yet the Court nonetheless adjudicated the case on the merits. The Court held that "[e]ven when the Executive Branch agrees with the plaintiff that the law in question is unconstitutional, if the Government nonetheless continues to enforce the statute, there remains a 'case or controversy' within the meaning of Article III." 462 U.S. at 939. The Court reasoned that "adversariness is not to be equated with the willingness of the Executive to defend the statute," and emphasized that the underlying dispute over the statute's constitutionality and its continued enforcement presented a real, live controversy. *Id.* at 939–40. These precedents make clear that adverseness, in this context, is not a rigid jurisdictional prerequisite, but a *prudential* consideration—one the Court may overcome where the government continues to enforce the challenged policy and the parties remain affected in concrete and legally cognizable ways.

That is precisely the posture here. Although Texas may no longer defend the challenged law at issue, it continued to enforce it, even when 8 U.S.C. § 1623(a) expressly prohibits states from granting postsecondary education benefits based on residency to aliens not lawfully present unless the same benefits are available to all U.S. citizens regardless of residency. The Court needed

to enter a Consent Judgment invalidating the Texas law as directly conflicting with Federal law and enjoining Texas from enforcing it. Thus, the United States' claim was not hypothetical or abstract; rather, it alleged concrete constitutional harms. That dispute is not rendered nonjusticiable simply because Texas, for strategic or policy reasons, agreed with the United States on the legal merits. As in *Windsor*, "the necessity of having the issue resolved" outweighs any prudential concerns about formal adversarial alignment. *Id.* at 758. The United States remained concretely affected by Texas actions, and this Court is not barred from adjudicating the dispute.

## II. The Court Should Deny the Motion to Intervene as Futile.

Intervention in this case is legally futile because Texas Education Code §§ 54.051(m) and 54.052(a) are expressly preempted by federal immigration law under 8 U.S.C. § 1623. As courts have held, a motion to intervene may be denied as futile when the intervenor's legal claim fails under clearly established law or prior rulings. *See King v. Flower Foods, Inc.*, No. 21-579-BAJ-SDJ, 2023 WL 2731041, at *2 (M.D. La. Mar. 30, 2023) (quoting *In re Welded Constr., L.P.*, 618 B.R. 710, 723 (Bankr. D. Del. 2020)); *see also Atkins v. Gen. Motors Corp.*, 701 F.2d 1124, 1130 n.5 (5th Cir. 1983); *Educ. Credit Mgmt. Corp. v. Bradco, Inc.*, No. CIV.A. 07-2418-DJW, 2008 WL 2066993, at *4 (D. Kan. May 14, 2008); *U.S. v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 856 (2d Cir. 1998); *Moss v. Stinnes Corp.*, No. 92 CIV. 3788 (JFK), 1997 WL 530113, at *1 (S.D.N.Y. Aug. 25, 1997), *aff'd*, 169 F.3d 784 (2d Cir. 1999).[1] The Fifth Circuit defines futility as

---

[1] *Equal Employment Opportunity Commission v. Century I, L. C.,* 142 F.R.D. 494 (D. Kan. 1992) (denying motion to intervene to the extent the employee sought to assert claims for unlawful discharge under 42 U.S .C. § 1981 and the Civil Rights Act of 1991, holding that intervention would be futile, as a cause of action under those statutes was not recognized under the case law in this circuit); *Williams & Humbert, Ltd. v. W. & H. Trade Marks, Ltd*., 840 F.2d 72, 74 (D.C. Cir. 1988) (finding that Rule 24(a) requires intervenors to have a legally sufficient claim); *In re Fine Paper Antitrust Litig*., 695 F.2d 494, 501 (3d Cir. 1982) (holding that "[i]n the circumstances of this case, it would be futile to allow intervention in order to present grounds on appeal which we have already rejected"); *Stotts v. Memphis Fire Department*, 679 F.2d 579, 582 (6th Cir. 1982) (trial court rejecting intervention properly considered, as one factor, that relief sought was

the failure "to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000); *see also Hamilton v. First Am. Title Co.*, 2008 WL 3876038, at *4 (N.D. Tex. Aug. 15, 2008).

Here, putative intervenors cannot state a legally sufficient claim because §§ 54.051(m) and 54.052(a)(3) are clearly preempted by federal law. These provisions allow aliens not lawfully present in the United States to qualify for in-state tuition based solely on Texas residency, while explicitly denying resident tuition rates to U.S. citizens who do not meet Texas residency requirements. Specifically, Texas Education Code § 54.051(m) provides that:

> *Unless the student establishes residency or is entitled or permitted to pay resident tuition as provided by this subchapter*, tuition for a student who is a citizen of any country other than the United States of America is the same as the tuition required of other nonresident students.

(emphasis added). Meanwhile, § 54.052(a) enumerates three criteria under which aliens not lawfully present may nonetheless qualify for resident tuition, including domicile and continuous residence requirements, and graduation from a Texas high school. Under § 54.052(a), aliens not lawfully present may qualify to pay resident tuition if they meet three specific criteria:

(1) a person who:

(A) established a domicile in this state not later than one year before the census date of the academic term in which the person is enrolled in an institution of higher education; and (B) maintained that domicile continuously for the year preceding that census date;

(2) are a dependent whose parent:

(A) established a domicile in this state not later than one year before the census date of the academic term in which the dependent is enrolled in an institution of higher education; and (B) maintained that domicile continuously for the year preceding that census date; and

---

unavailable as a matter of law); *In re Am. White Cross, Inc.*, 269 B.R. 555, 558 (D. Del. 2001) (upholding bankruptcy court's order denying motion to intervene as futile because proposed claims were without merit).

>    (3) a person who:
>
>    >    (A) graduated from a public or private high school in this state or received the equivalent of a high school diploma in this state; and (B) maintained a residence continuously in this state for: (i) the three years preceding the date of graduation or receipt of the diploma equivalent, as applicable; and (ii) the year preceding the census date of the academic term in which the person is enrolled in an institution of higher education.

Related provisions, including § 54.053(3)(B), require such noncitizens to submit affidavits promising to apply for permanent residency as soon as eligible, underscoring the state's recognition of their non-lawful presence.

Texas calculates nonresident tuition under § 54.051(d) by averaging the nonresident undergraduate tuition charged to Texas residents at public universities in the five most populous states other than Texas. Resident tuition, however, is fixed by statute at $50 per semester credit hour. Tex. Educ. Code § 54.051(c). As a result, aliens not lawfully present who meet § 54.052(a)'s criteria pay significantly lower tuition—$50 per credit hour—equal to resident students, while U.S. citizens who fail to qualify as Texas residents pay the substantially higher nonresident tuition. This disparity directly conflicts with federal law.

"Under the Supremacy Clause, state laws that conflict with federal law must yield." *Gade v. National Solid Wastes Mgmnt. Assn.,* 505 U.S. 88, 108 (1992); *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981) (Under the Supremacy Clause, state laws that conflict with federal law are "without effect."); *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (same); *see Est. of Miranda v. Navistar, Inc.*, 23 F.4th 500, 504 (5th Cir. 2022) (federal statute expressly preempts a state law when Congress "adopts express language defining the existence and scope of preemption" (citation omitted)); *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016) (When the statute contains an express preemption clause, the court does not indulge "any presumption against preemption but instead focus[es] on the plain wording of the clause, which

8

necessarily contains the best evidence of Congress' preemptive intent."); *Malone v. White Motor Corp.*, 435 U.S. 497, 504 (1978) ("'The purpose of Congress is the ultimate touchstone' of preemption analysis.") (quoting *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103 (1963)).

Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) to ensure, *inter alia*, that "aliens within the Nation's borders [do] not depend on public resources" and that public benefits do not incentivize immigration. *See* Pub. L. No. 104-208, Div. C, §§ 306, 308, 110 Stat. 3009-546 (1996), §§ 1601(2)(A), (B). Most critically, 8 U.S.C. § 1623(a) expressly prohibits states from granting postsecondary education benefits based on residency to aliens not lawfully present unless the same benefits are available to all U.S. citizens regardless of residency:

> An alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident.

Texas's statutes plainly violate this provision by granting in-state tuition benefits to unlawfully present aliens that are denied to nonresident U.S. citizens. The Fifth Circuit recently confirmed this express preemption in *Young Conservatives of Texas Foundation v. Smatresk*, 73 F.4th 304, 312–13 (5th Cir. 2023), holding that § 1623(a) "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same." Because the putative intervenors cannot overcome this clear legal bar, its proposed intervention is futile and should be denied.

### III. The Court Should Deny Permissive Intervention.

In determining whether permissive intervention is appropriate, courts assess whether the putative intervenor has presented: "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *United States ex rel Hernandez v. Team Fin., L.L.C.*, 80 F.4th 571, 575 (5th Cir.

2023). Permissive intervention "is wholly discretionary with the [district] court ... even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied." *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 472 (5th Cir. 1984) (quoting *Wright & Miller*, Practice and Procedure: Civil § 1913 at 551); *Chambers Med. Found. v. Chambers*, 236 F.R.D. 299, 301 (W.D. La. 2006), *aff'd*, No. 2:05 CV 0786, 2006 WL 1895462 (W.D. La. July 5, 2006), and *aff'd sub nom. Chambers Med. Found. v. Petrie*, 221 F. App'x 349 (5th Cir. 2007).

In acting on a request for permissive intervention, it is proper to consider, among other things, "whether the intervenors' interests are adequately represented by other parties" and whether they "will significantly contribute to full development of the underlying factual issues in the suit." *New Orleans Pub. Serv*, 732 F.2d at 472. As explained *supra*, this case does not turn on factual issues or the development of a record. Instead, it presents a straightforward legal issue that the Court resolved in properly concluding that the federal statute preempted the state education law. Putative intervenors cannot change this legal conclusion by asserting sympathetic factual allegations. *See Cajun Elec. Power Co-op., Inc. v. Gulf States Util., Inc.* 940 F.2d 117, 120–121 (5th Cir. 1991) (intervention denied where intervenor brought no unique arguments and the principles of contract interpretation would yield the same result, regardless of the intervention). For all these reasons this Court must deny permissive intervention.

Wherefore, the Court should deny the motion to intervene.

DATED: July 14, 2025                           Respectfully submitted,

CHAD MIZELLE
Acting Associate Attorney General

ABHISHEK S. KAMBLI
Deputy Associate Attorney General

BRETT A. SHUMATE                               Lauren E. Fascett
Assistant Attorney General                     Senior Litigation Counsel
Civil Division

                                               /s/ Elianis N. Perez
DREW C. ENSIGN                                 ELIANIS N. PEREZ
Deputy Assistant Attorney General              Assistant Director
                                               United States Department of Justice
                                               Civil Division
                                               Office of Immigration Litigation
                                               General Litigation and Appeals Section
                                               P.O. Box 868, Ben Franklin Station
                                               Washington, D.C. 20044
                                               Telephone: (202) 616-9124
                                               Fax: (202) 305-7000
                                               Email: elianis.perez@usdoj.gov
                                               *Attorneys for the United States*

11

## CERTIFICATE OF SERVICE

I certify that on July 14, 2025, a copy of the above was electronically filed with the Court's CM/ECF system and served on all counsel of record.

          */s/ Elianis N. Perez*
          Elianis N. Perez
          Assistant Director