UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>STATE OF TEXAS,<br><br>    Defendant,<br><br>and<br><br>STUDENTS FOR AFFORDABLE TUITION<br><br>    Defendant-Intervenor | Case No.: 7:25-cv-00055-O<br><br>**STUDENTS FOR AFFORDABLE TUITION'S REPLY TO STATE OF TEXAS IN SUPPORT OF MOTION TO INTERVENE** |

  Defendant the State of Texas ("Texas")—in one afternoon—agreed with Plaintiff United States of America to end a two-decades-old Texas law that allowed eligible students without lawful immigration status to pay reduced tuition rates at public universities and colleges in Texas. *See* Dkt. 10 at 5. As a consequence, members of movant Students for Affordable Tuition ("SAT"), an unincorporated association comprised of college students in Texas without lawful immigration status, have been harmed—and will continue to be harmed as long as the 24-year-old challenged provisions remain enjoined.

  Despite the obvious harms to SAT's members and its central role in ending the challenged provisions, Texas claims that SAT's members do not have an interest in the case and that any interest they do have is adequately represented by Texas. Texas is wrong on both counts for the

1

reasons explained below. Accordingly, SAT respectfully asks the Court to grant its Motion to Intervene ("Motion") as of right, or in the alternative, grant permissive intervention. *See* Dkt. 10.

## I. TEXAS'S APPELLATE STANDING ARGUMENT IS PREMATURE

At this early juncture, the only issue appropriately before the Court is whether SAT satisfies the requirements of Fed. R. Civ. P. 24. The Court should decline Texas's invitation to resolve the question of appellate standing on the Fifth Circuit's behalf. Texas boldly claims that "SAT . . . must demonstrate appellate standing." Dkt. 47 at 8. But Texas does not cite to any authority compelling SAT to demonstrate appellate standing at this stage in the proceedings. Although the Supreme Court has stated that courts must have Article III jurisdiction to reach the merits of a case, *see Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 662 (2019), SAT is not asking this Court to reach the merits of this case. Indeed, this Court already entered final judgment. *See* Dkt. 8.

Further, as this Court previously correctly concluded, "defendant-intervenors need not establish standing because they generally do not 'pursue relief.'" *Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 938 n.3 (N.D. Tex. 2019) (quoting *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 440 (2017)). This Court's reasoning in *Franciscan All., Inc.* applies with equal force here because SAT is not seeking intervention to assert crossclaims or counterclaims and only seeks to defend the state law at issue. *See id.* (clarifying the meaning of "pursue relief").

Texas relies heavily on *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658 (2019) to support its standing argument. *See* Dkt. 47 at 1–4. However, that case dealt with a standing challenge at the appellate level. In fact, the trial court allowed the Virginia House of Delegates to intervene. *See Bethune-Hill v. Virginia State Bd. of Elections*, 141 F. Supp. 3d 505, 512 (E.D. Va. 2015), *aff'd in part, vacated in part*, 580 U.S. 178 (2017). Accordingly, the circumstances in that case are markedly different than this case, and that case says nothing that would require a putative

defendant-intervenor—with no crossclaims or counterclaims—to establish standing at the district court motion-to-intervene stage.

## II. SAT HAS ASSOCIATIONAL STANDING

Nevertheless, SAT satisfies the standing requirements to maintain jurisdiction upon appeal. Specifically, SAT's motion contains sufficient allegations to establish associational standing.[1]

### a. SAT's Members with DACA Have Standing

SAT's members with Deferred Action for Childhood Arrivals ("DACA") have standing to pursue an appeal. Although Texas clarified—for the first time in a response to SAT's Motion—that DACA recipients should not be affected, the collusion between the parties and the entry of consent judgment on the same day the case was filed, resulted in mass confusion.[2] Having contributed to the confusion, Texas has offered no guidance to colleges or universities that instructs them to maintain reduced tuition rates for DACA recipients. Instead, Texas tasked colleges and universities to figure out for themselves who is affected by the consent order and reclassify their tuition rates.[3]

Due to the lack of guidance and Texas' prior positions regarding whether DACA recipients have lawful presence, it is likely some colleges and universities will interpret the injunction to encompass DACA recipients. Further compounding the risk that some colleges and universities will wrongfully classify DACA recipients are, as Texas itself notes, the Fifth Circuit's recent

---

[1] SAT is not seeking organizational standing, so it will not address Texas's organizational standing arguments. *See* Dkt. 47 at 11–14.
[2] App. 4–7. (Sneha Dey, *Texas Directs Public Universities to Identify Undocumented Students*, TEX. TRIB., (June 23, 2025), https://www.texastribune.org/2025/06/23/texas-undocumented-students-in-state-tuition/.)
[3] App. 8–9. (Memorandum Regarding Court Ruling, Texas Higher Education Coordinating Board (June 18, 2025), https://reportcenter.highered.texas.gov/correspondence/commissioner-correspondence/memorandum-regarding-court-ruling.)

3

statements regarding DACA and lawful presence. *See* Dkt. 47 at 9 (citing *Texas v. United States*, 126 F.4th 392, 418 (5th Cir. 2025)). Without guidance from Texas explaining the nuance of the Fifth Circuit's decisions, many colleges and universities are highly likely to misclassify DACA recipients. This uncertainty has already caused harm to SAT's DACA-recipient members, causing, for example, at least one member to defer starting her graduate program at Texas State University. *See* App. 1–3. (Declaration of Fernando Nuñez, ¶¶ 7–8).[4]

On top of erroneous classification by colleges and universities, DACA recipients now face a significant risk of injury, by way of tuition increases, if their DACA lapses—even if through no fault of their own, such as DACA application processing delays. This risk was not present before the parties' collusion and the entry of the consent judgment. The harm was caused by the entry of the consent judgment, and a proper defense of the challenged provisions will remedy further harm.

### b. SAT's Non-DACA Members Have Standing

In addition, SAT has members who do not have DACA or any other immigration status. For example, one member is a student at University of North Texas at Dallas seeking a bachelor's degree in political science. She does not have DACA or other immigration status. She pays for her education out of pocket and with the help of scholarships. She would not be able continue her current degree if her tuition rises to out-of-state rates. She has plans to attend law school in Texas, but she would forego those plans if she was required to pay out-of-state tuition.

Texas does not challenge that SAT's non-DACA members have standing. Nor could it, as they are the specific targets of the parties' collusion. Instead, Texas seems to suggest that SAT should be precluded from alleging additional facts to establish these members' standing because

---

[4] *Franciscan All. Inc.*, 414 F. Supp. 3d at 936 (accepting declaration challenged on evidentiary grounds because the Court must accept facts asserted "at the intervention stage").

SAT did not provide evidence in the brief in support of its Motion. *See* Dkt. 47 at 10. But Fed. R. Civ. P. 24 does not explicitly require evidence. To the contrary, motions to intervene are judged under the liberal pleading standard, and "*allegations* are accepted as true." *Mendenhall v. M/V Toyota Maru No. 11*, 551 F.2d 55, 56 n.2 (5th Cir. 1977) (emphasis added).

The State of Texas's only citation to support its contention that SAT should have produced an affidavit with its Motion is *Wittman v. Personhuballah*, 578 U.S. 539 (2016). *See* Dkt. 47 at 10. There, the United States Supreme Court stated that "[w]hen challenged by a court (or by an opposing party) concerned about standing, the party invoking the court's jurisdiction cannot simply allege a nonobvious harm, without more." *Wittman*, 578 U.S. at 545–46. A few things are important from that statement as it relates here.

First, it imposes the burden on the party invoking jurisdiction. *See Wittman*, 578 U.S. at 545. But SAT is not invoking this Court's jurisdiction, as explained above. *See supra* Section I. Second, the need for "more" is triggered after a challenge from a court or party. *See Wittman*, 578 U.S. at 545. Here, that "challenge" arose erroneously from Texas in the form of an opposition to a motion to intervene. *See* Dkt. 47. There was no need to establish standing in the brief in support of the Motion because standing is not required for defendant-intervenors who do not pursue district-court relief, such as crossclaims or counterclaims. *See supra* Section I; *Franciscan All., Inc.*, 414 F. Supp. 3d at 938 n.3. Finally, the "more" is only required when the harm is "nonobvious." *Wittman*, 578 U.S. at 545.

The harm SAT's members—especially the non-DACA members—face is plain and obvious. As alleged in the Motion, SAT is an unincorporated association that is comprised of students without lawful immigration status who have associated for the purpose of promoting, advocating for, and ensuring access to affordable higher education in Texas. *See* Dkt. 10 at 8. The

5

Motion alleges that SAT's members have "already suffered injury—and will continue to suffer injury unless it can obtain relief in an appeal." *Id.* at 7. The motion specified that SAT's members "will have to now pay higher tuition rates instead of the reduced tuition rates they relied upon when they decided to attend college in Texas." *Id.* And as a result, "many of SAT's members may have to reduce their coursework, delay graduation, or withdraw from college." *Id.* at 15. These allegations must be accepted as true. *See Mendenhall*, 551 F.2d at 56 n.2. Nevertheless, to further assure the Court of SAT's standing, SAT is concurrently filing a declaration containing further facts about SAT's membership. *See* App. 1–3. (Declaration of Fernando Nuñez, ¶¶ 4–6).[5]

## III. TEXAS'S RULE 24 ARGUMENTS ARE REPACKAGED STANDING ARGUMENTS

Texas's premature and erroneous challenge to SAT's standing infects its arguments regarding Fed. R. Civ. P. 24's requirements. SAT addresses Texas's arguments in turn.

### a. Texas Misapplies the Prejudice Factors of Timeliness

Texas absurdly argues that SAT's Motion—filed a mere seven days after the case was filed—is untimely. *See* Dkt. 47 at 16–17. Texas relies solely on the prejudice factors of Fed. R. Civ. P. 24(a)'s timeliness requirement. *See id.* Texas treats any intervention in this case as prejudicial—regardless of when it was filed—because it believes the Attorney General of Texas has the exclusive right to appeal judgments concerning Texas laws. *See* Dkt. 47 at 16. But that "harm" would apply regardless of the timing of SAT's intervention. Texas's argument is flawed for two additional reasons. First, the prejudice to the existing parties "must be measured by the delay in seeking the intervention, not the inconvenience to the existing parties of allowing the

---

[5] *Franciscan All. Inc.*, 414 F. Supp. 3d at 936 (accepting declaration challenged on evidentiary grounds because the Court must accept facts asserted "at the intervention stage").

6

intervenor to participate in the litigation." *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994). Texas flips the standard and focuses exclusively on the inconvenience of SAT's participation.

Second, Texas's argument that the Attorney General has the exclusive right to appeal, as well as its argument that SAT would not be prejudiced, is based on Texas's flawed view of SAT's standing; specifically, its arguments regarding SAT's organizational standing. *See* Dkt. 47 at 12–14. Again, SAT is not seeking organizational standing; it is representing its members—students without lawful immigration status who rely on paying reduced tuition rates to afford their education in Texas—under associational standing. Texas's reliance on *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013), a case in which the intervenors only had a "generalized grievance," simply does not apply to SAT's standing based on personal and specific harms to its members.

Texas also cites to *United States v. United States Steel Corp.*, 548 F.2d 1232, 1235 (5th Cir. 1977) for the proposition that interventions sought after final judgment tend to prejudice existing parties. *See* Dkt. 47 at 16. But Texas fails to mention that the intervenors in that case sought intervention almost *a year later*. *See United States Steel Corp.* 548 F.2d at 1235. Here, SAT sought intervention a mere seven days later. Further, courts often consider post-settlement motions to intervene. *See Adam Joseph Res. V. CAN Metals Ltd.*, 919 F.3d 856, 864 (5th Cir. 2019) (collecting cases). That is because the ability to intervene can only arise after Fed. R. Civ. P. 24's requirements are met. And in some cases (like this one) those requirements may only be met after the existing parties settle.

### b. SAT Has an Independent Interest from Texas

Texas's argument regarding Fed. R. Civ. P. 24(a)'s independent interest requirement is, again, an argument about standing. *See* Dkt. 47 at 17 ("SAT fails to satisfy Rule 24(a)(2)'s second prong for the same reason it lacks Article III standing."). SAT's members—with or without

7

DACA—have suffered and will continue to suffer harm as a result of the parties' collusion and the entry of the consent judgment. *See supra* Section II. SAT is not seeking to defend the challenged provisions "based on policy preferences alone," Dkt. 47 at 17, but rather it has an interest, on behalf of its members, in defending the challenged provisions based on the harms that the members will suffer if the provisions remain enjoined. *See* Dkt. 10 at 12–14.

### c. Texas is Not an Adequate Representative for SAT's Interests

Texas failed to represent the interests of SAT's members when it colluded with the United States of America in this lawsuit and asked the Court to enter a consent judgment to strip SAT's members from the reduced tuition rates they depend on to attend colleges and universities in Texas. That is enough to demonstrate why Texas is an inadequate representative. *See Texas v. United States*, 805 F.3d 653, 661–62 (5th Cir. 2015) (noting that a showing of "adversity of interest, collusion, or nonfeasance on the part of the existing party" overcomes the presumption of adequate representation).

Despite its central role in invalidating the duly-enacted challenged provisions in one afternoon, Texas believes that it is an adequate representative of SAT's interests.[6] That belief is rooted in Texas's erroneous conclusion that SAT only has generalized grievances. *See supra* Section II. Texas admits that it is operating under an assumption that SAT does not represent members who will be harmed. *See* Dkt. 47 at 19 ("*Assuming* that it cannot represent its members' cognizable interests, because they have not been harmed, SAT does not establish the requisite independent interest.") (emphasis added). But SAT's members have unique interests that Texas

---

[6] Texas cites to *United States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826 (5th Cir. 1975) as precedent for a denial of an intervention in a case that was filed and resolved on the same day. *See* Dkt. 47 at 20–21. But Texas omits the fact that the Fifth Circuit only affirmed the denial of *one* putative intervenor in a case in which the district court granted intervention to thirty-six individuals and an organization. *See Allegheny-Ludlum Indus. Inc.*, 517 F.2d at 839.

does not protect as *parens patriae*—namely their interest in maintaining the reduced tuition rates necessary for them to pursue their own higher education. *See supra* Section II; Dkt. 10.

Texas's reliance on *Saldano v. Roach*, 363 F.3d 545 (5th Cir. 2004) is inapposite. There, a district attorney sought to intervene in a federal habeas corpus proceeding after the Attorney General of Texas confessed error in the conviction. *See Saldano*, 363 at 550. The Fifth Circuit explained that the district attorney did not have an interest in the habeas action because "Texas law does not grant district attorneys the authority to represent either state officials . . . or the State in a federal habeas corpus proceeding." *Id.* at 551. The Fifth Circuit then went on to say that "any interest he does have is adequately represented by the Attorney General." *See id.* at 553–54. But that was because both the Attorney General and the district attorney had the shared goal of representing the interests of the state of Texas. *See id.* at 555.

That is not the case here. SAT and Texas do not share the same goal when it comes to the validity of the challenged provisions. Texas wants to invalidate the legislative enactment while SAT seeks to defend them to maintain the status quo of more than two decades to benefit SAT members.

## IV. SAT IS NOT REQUIRED TO PROVE ITS DEFENSES AT THIS STAGE

Texas's first argument regarding futility stands and falls with its standing arguments. *See* Dkt. 47 at 14 (arguing that "SAT would lack standing to bring an appeal, thus rendering any intervention entirely without effect"). For the reasons stated above, this argument must fall. *See supra* Sections I, II. To reiterate, although SAT is not required to prove standing as a defendant-intervenor with no crossclaims or counterclaims, it nevertheless satisfies the requirements of associational standing because its members have specifically been harmed by the final judgment—and will continue to be harmed if the Court's order remains in effect. *See id.*

9

Texas's second futility argument is conclusory and lacks any legal authority that requires SAT to prove its defenses at the intervention stage. *See Certain Underwriters at Lloyd's of London v. Winter*, No. 3:15-CV-01997-N, 2015 WL 12732628, at *2 (N.D. Tex. Nov. 4, 2015) (rejecting argument that an "alleged futility is a bar to intervention"). Texas's inability to defend its own laws—that have been in place for almost 25 years—is not due to lack of viable defenses, but rather a deliberate decision to target undocumented students in Texas for political points. The judicial branch, with all its process and consideration, decides the constitutionality of state laws—not Texas. Thus, just because Texas agrees with the United States of America that the challenged provisions are expressly preempted does not make it true. Regardless, the Court on a motion to intervene need not decide whether SAT is likely to succeed in defending the challenged provisions. *See Oneida Indian Nation of Wisconsin v. State of N.Y.*, 732 F.2d 261, 265 (2d Cir. 1984) ("[A]n application to intervene cannot be resolved by reference to the ultimate merits of the claims which the intervenor wishes to assert.").

## V. PERMISSIVE INTERVENTION IS APPROPRIATE

Texas concedes that SAT's defenses share questions of fact or law. *See* Dkt. 47 at 21. Thus, the only thing that Texas contests is, *again*, SAT's organizational standing. For the reasons stated above, Texas is wrong. *See supra* Sections I, II. Accordingly, SAT respectfully asks this Court to exercise its discretion to grant SAT's intervention so that its members can have their day in court before being stripped of the reduced tuition rates they relied on when deciding to pursue their education in Texas.

## VI. CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court grant its motion to intervene.

Dated: July 16, 2025            Respectfully submitted,

<u>/s/ Luis L. Lozada</u>
Luis L. Lozada (Cal. Bar No. 344357)^
Thomas A. Saenz (Cal. Bar No. 159430)^
Fernando Nunez (Cal. Bar No. 327390)*
MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND
634 South Spring Street, 11th floor
Los Angeles, CA 90014
Facsimile: (213) 629-0266
Email: tsaenz@maldef.org
fnunez@maldef.org
llozada@maldef.org

Nina Perales (Tex. Bar No. 24005046)
MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND
110 Broadway, Suite 300
San Antonio, Texas 78205
Facsimile: (210) 224-5382
Email: nperales@maldef.org

*Attorneys for Students for Affordable Tuition*

*^Pro Hac Vice*
*\*Pro Hac Vice Application Pending*