UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | CIVIL NO. 7:25-cv-00055-O |
| STATE OF TEXAS, | § | |
| | § | |
| *Defendant.* | § | |

---

**PROPOSED INTERVENORS LA UNIÓN DEL PUEBLO ENTERO,
AUSTIN COMMUNITY COLLEGE, AND OSCAR SILVA'S REPLY IN SUPPORT OF
EMERGENCY MOTION TO INTERVENE**

---

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

REPLY ARGUMENT ......................................................................................................... 3

    I.     Proposed Intervenors Have Standing to Intervene.................................................. 4

    II.    Proposed Intervenors Meet the Requirements for Intervention as of Right...................................................................................................................... 9

          A.    Proposed Intervenors' motion is timely and does not prejudice the Parties............................................................................................... 9

          B.    Proposed Intervenors have substantial interests in this litigation, and those interests will be impaired absent intervention. ...................... 11

          C.    Proposed Intervenors are not adequately represented by the Parties.......................................................................................... 12

          D.    In the alternative, permissive intervention is warranted. ......................... 17

          E.    Intervention is not futile.......................................................................... 18

CONCLUSION ................................................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**

*Acuff v. United Papermakers & Paperworkers*, *AFL-CIO,* 404 F.2d 169 (5th Cir. 1968) ................................................................................................................. 14

*Adam Joseph Res. v. CNA Metals Ltd.*, 919 F.3d 856 (5th Cir. 2019) ........................ 10

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................ 15

*Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43 (1997) .............................................. 11

*Berger v. N. Carolina State Conf. of the NAACP,* 597 U.S. 179 (2022) ...................... 13

*Brumfield v. Dodd*, 749 F.3d 339 (5th Cir. 2014) .......................................................... 9

*Bryant v. Yellen,* 447 U.S. 352 (1980) ........................................................................... 4

*Camreta v. Greene*, 563 U.S. 692 (2011) ..................................................................... 15

*Cawthorn v. Amalfi*, 35 F.4th 245 (4th Cir. 2022) ......................................................... 4

*Certain Underwriters at Lloyd's of London v. Winter*, No. 3:15-CV-01997-N, 2015 WL 12732628 (N.D. Tex. Nov. 4, 2015) .................................................... 2, 18

*Gregory v. Ashcroft*, 501 U.S. 452 (1991) .................................................................... 19

*Cherry Hill Vineyards, LLC v. Lilly*, 553 F.3d 423 (6th Cir. 2008) ............................... 4

*Chicago & G.T. Ry. Co. v. Wellman*, 143 U.S. 339 (1892) .................................... 11, 15

*City of Houston v. American Traffic Solutions, Inc.*, 668 F.3d 291 (5th Cir. 2012) .................... 13

*Dep't of Commerce v. New York*, 588 U.S. 752 (2019) .................................................. 7

*Edwards v. City of Houston*, 78 F.3d 983 (5th Cir. 1996) ........................................... 10

*Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367 (2024) .................. 7, 8

*Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928 (N.D. Tex. 2019) ........................... 3

*Hamilton v. First Am. Title Co.*, No. 3:07-CV-1442-G, 2008 WL 3876038 (N.D. Tex. Aug. 15, 2008) ................................................................................. 18

*Havens Realty Corp. v. Coleman,* 455 U.S. 363 (1982) ................................................ 8

*Hill v. Tex. Water Quality Bd.*, 568 S.W.2d 738 (Tex. Civ. App.—Austin 1978, writ ref'd n.r.e.) ....................................................................................................... 14

*Hollingsworth v. Perry*, 570 U.S. 693 (2013) ............................................................... 4

*Hopwood v. State of Tex.*, 21 F.3d 603 (5th Cir. 1994) .................................................. 13

*Immigr. & Naturalization Serv. v. Chadha,* 462 U.S. 919 (1983) ................................. 16

*In re Asbestos Litig.*, 90 F.3d 963 (5th Cir. 1996) ........................................................ 15

*Ingebretsen on Behalf of Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274 (5th
    Cir. 1996) ................................................................................................................. 13

*Kim v. Hanlon*, 99 F.4th 140 (3d Cir. 2024) ................................................................... 4

*King v. Flowers Foods, Inc.*, No. CV 21-579-BAJ-SDJ, 2023 WL 2731041 (M.D.
    La. Mar. 30, 2023) ................................................................................................... 18

*La Union del Pueblo Entero v. Abbott*, 29 F.4th 299 (5th Cir. 2022)............................ 12

*League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421 (5th
    Cir. 2011) ........................................................................................................... 10, 13

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...................................................... 4

*Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453 (2018) .................................. 20

*Pool v. City of Houston*, 87 F.4th 733 (5th Cir. 2023)............................................. 11, 16

*Printz v. United States*, 521 U.S. 898 (1997).................................................................. 20

*Ross v. Marshall*, 426 F.3d 745 (5th Cir. 2005) ............................................................ 10

*Rotstain v. Mendez*, 986 F.3d 931 (5th Cir. 2021) ......................................................... 11

*Saldano v. Roach*, 363 F.3d 545 (5th Cir. 2004) ........................................................... 14

*Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994) ............................................... 1, 5, 10

*South Carolina v. North Carolina,* 558 U.S. 256 (2010)................................................ 14

*Stallworth v. Monsanto Co.*, 558 F.2d 257 (5th Cir. 1977) ....................................... 9, 10

*State of N.J. v. State of N.Y.*, 345 U.S. 369 (1953) ......................................................... 14

*Terrazas v. Clements*, 581 F. Supp. 1319 (N.D. Tex. 1983)........................................... 17

*Tex. Democratic Party v. Benkiser*, 459 F.3d 582 (5th Cir. 2006) ................................. 6

*Texas v. United States*, 805 F.3d 653 (5th Cir. 2015)........................................... 6, 7, 11

*Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433 (2017) .................................................... 3

*Trbovich v. United Mine Workers of Am.*, 404 U.S. 528 (1972) .................................................. 12

*United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977) ............................................................ 10

*United States v. Allegheny-Ludlum Indus., Inc.,* 517 F.2d 826 (5th Cir. 1975)............................ 15

*United States v. City of Miami*, 664 F.2d 435 (5th Cir. 1981) (per curiam) (opinion of
    Rubin, J.)......................................................................................................................... 17

*United States v. Johnson*, 319 U.S. 302 (1943) .......................................................................... 11

*United States v. Texas*, No. 24-50149, 2025 WL 1836640 (5th Cir. July 3, 2025)................... 7, 8

*United States v. Windsor*, 570 U.S. 744 (2013) .......................................................................... 16

*Young Conservatives of Texas Found. v. Univ. of N. Texas*, 609 F. Supp. 3d 504
    (E.D. Tex. 2022) ................................................................................................................ 6

## Other Authorities

8 U.S.C. § 1623(a) ................................................................................................... 2, 18, 19

Tex. Educ. Code § 54.052(a)(3)......................................................................................... 19

Tex. Educ. Code § 54.053(3)(B)......................................................................................... 19

Tex. Educ. Code § 54.241(b) ............................................................................................. 2

## Rules

Fed. R. Civ. P. 24(a)(2).................................................................................................. 1, 5

Fed. R. Civ. P. 24(c) ......................................................................................................... 17

**INTRODUCTION**

Texas and the United States's (collectively "the Parties") arguments opposing intervention fail on all fronts. The Parties ignore the plain text of Federal Rule of Civil Procedure 24, which "entitles" anyone who "claims an interest" in the action, and "is so situated that disposing of the action *may* as a practical matter impair or impede the movant's ability to protect its interest," to intervene. Fed. R. Civ. P. 24(a)(2) (emphasis added). The Parties' assertions of Proposed Intervenors' lack of standing, of their own purported prejudice, adversity, and adequacy of representation, and of the propriety of a merits determination are each unavailing.

Proposed Intervenors have standing, even though not required here. *First*, the Consent Order, by enjoining enforcement of the Dream Act, threatens Austin Community College ("ACC") with imminent loss of revenue and significant and unforeseen administrative costs and burdens. The Consent Order also threatens ACC's mission and community. *Second*, the Consent Order will almost certainly and dramatically increase Oscar Silva's tuition, because "the consent order in this case will obligate UNT to reassess [his residency] status."[1] *Third*, the Consent Order has forced LUPE to change how it serves affected students, increasing the cost of fulfilling LUPE's mission. Proposed Intervenors thus have interests that are "direct, substantial, and legally protectable," *Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994) (cleaned up), and these interests will be impaired without their participation in this suit.

Texas's few arguments on Rule 24(a) also fail. Its misplaced allegation of prejudice, which it improperly asserts to undermine the timeliness of intervention, is inapt, as Texas never explains how anyone could have intervened in a case lasting a mere six hours. Nor does Texas explain how

---

[1] Dkt. 19, App. 137, Ex. 15 (Silva Decl. ¶ 10).

the Texas Attorney General can adequately represent Proposed Intervenors' interests when the Attorney General capitulated before the United States even filed its lawsuit.

The United States does not address Rule 24(a) at all. Instead, it defends the Court's subject matter jurisdiction and attempts to paper over the requirement of adversity, without addressing the public statements of its counsel of record admitting a pre-suit agreement among the parties: "because we were able to have that line of communication and talk in advance, a statute that's been a problem for the state for 24 years, we got rid of it in six hours." Dkt. 19, App. 146 (Ex. 17).

The Parties also argue that intervention is futile, but they conflate the requirements for intervention with those on the merits. On such a matter of high moment—the constitutionality of a duly enacted state law in place for more than two decades—this Court deserves better than truncated briefing in intervention papers. Moreover, nothing in the text of Rule 24 requires a showing of success, or even likelihood of success, on the merits. In fact, there appears to be "no legal authority establishing that alleged futility is a bar to intervention [as of right]" in the Fifth Circuit. *See Certain Underwriters at Lloyd's of London v. Winter*, No. 3:15-CV-01997-N, 2015 WL 12732628, at *2 (N.D. Tex. Nov. 4, 2015).

Nevertheless, intervention is not futile. 8 U.S.C. § 1623(a) restricts eligibility for education benefits only "on the basis of residence," while the Texas Dream Act bases eligibility for in-state tuition on factors beyond mere residence. Further, the United States's Complaint ignores entire provisions of Texas law on tuition that grant benefits to citizens, such as those allowing military personnel and their dependents to pay the in-state rate "without regard to the length of . . . reside[nce] in the state." Tex. Educ. Code § 54.241(b). And applied as the United States would have it, 8 U.S.C. § 1623(a) violates constitutional principles of federalism embodied in the Tenth Amendment. Section 1623(a) invades core state prerogatives, purporting to dictate to Texas who

it may regard as state residents and how to calculate tuition at state educational institutions.

For the reasons set forth in their Motion to Intervene and herein, this Court should allow Proposed Intervenors to defend their substantial, particularized interests in this suit.

## REPLY ARGUMENT

The Court should grant Proposed Intervenors' Motion because (1) they have met all requirements for intervention as of right or, in the alternative, permissive intervention, and (2) they can show (even though not required) that intervention is not futile.

As a preliminary matter, because Texas argues Proposed Intervenors lack standing, Proposed Intervenors first address standing. But this Court has previously "determined that defendant-intervenors need not establish standing because they generally do not 'pursue relief.'" *Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 939 n.3 (N.D. Tex. 2019) (quoting *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 440 (2017)). Because "relief" "is linked to affirmative claims, not defenses," "as long as they do not also intend to add an affirmative claim for relief during the district court proceedings, Putative [Defendant] Intervenors need not establish standing." *Id.* Where, as here, the plaintiffs seek "declaratory judgments that declare [a] Rule invalid and to permanently enjoin Defendants from enforcing the Rule," defendant-intervenors need not establish standing if they seek only to "defend[] the lawfulness of the regulation" *Id.* (quotation omitted).[2] Even if the Court requires standing, however, Proposed Intervenors easily meet the requirements of Article III.[3]

---

[2] In its Motion to Strike, Dkt. 62, at 3, Texas agrees: "[P]utative intervenors do not have to demonstrate Article III standing when seeking to intervene as a defendant in trial court proceedings."

[3] Importantly, only *one* Proposed Intervenor must establish standing. *See Town of Chester*, 581 U.S. at 439.

## I.    Proposed Intervenors Have Standing to Intervene.

Proposed Intervenors have standing to defend the Texas Dream Act because each has suffered, or imminently faces, injury traceable to the Consent Order and the underlying lawsuit, which is redressable through an order of the court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Contrary to the State's arguments, Proposed Intervenors are not merely concerned bystanders pursuing a policy preference. Dkt. 50, at 8–9. Instead, they seek to defend "judicially cognizable interest[s] of *their own.*" *Hollingsworth v. Perry*, 570 U.S. 693, 707 (2013) (emphasis added). The Consent Order directly affects ACC's mission and finances; Silva is threatened with unaffordable tuition in his final year; and LUPE must work with and for its members to counteract the harms caused by the Consent Order.

Courts regularly allow intervention under these circumstances even where the government does not defend its own law.[4] For example, in *Bryant v. Yellen*, the Supreme Court held that a group of farmworkers had standing to intervene on appeal after the United States failed to appeal its district court loss on its claim that a California agency was required to comply with a federal statute governing irrigation waters. *See* 447 U.S. 352, 366–67 (1980). The Court allowed intervention because the farmworkers had a "sufficient stake in the outcome of the controversy,"

---

[4] *See, e.g.*, *Cawthorn v. Amalfi*, 35 F.4th 245, 252 (4th Cir. 2022) (voters had "personal stake" conferring standing to appeal ruling for plaintiff congressperson in challenge to state election law); *Kim v. Hanlon*, 99 F.4th 140, 154 (3d Cir. 2024) (political committee had standing to intervene as defendant in suit by candidates against county election clerks who withdrew from suit after preliminary injunction was granted against them); *Cherry Hill Vineyards, LLC v. Lilly*, 553 F.3d 423, 429–30 (6th Cir. 2008) ("Diamond does not preclude intervenors from appealing when the state fails to appeal, as long as the intervenors can independently establish standing. . . . [A]n intervenor [defendant] does have standing to appeal an adverse judgment [that a state law is unconstitutional], even if the state declines to appeal it, if the intervenor can independently demonstrate that he fulfills the requirements of Article III.").

i.e., "if [the federal statute] were applied as they believed it should be," they "would stand to reap significant [financial] gains." *Id.* at 367–68 & n.17.

Proposed Intervenors have similarly concrete and particularized interests distinguishable from Texas's stake in the litigation and thus have standing to intervene.

**Oscar Silva:** Silva is a University of North Texas student entitled to pay in-state tuition only because of the Texas Dream Act. He has been able to attend college only because of the in-state tuition rate made available by the Dream Act.[5] Now, however, tuition increases resulting from the Consent Order will likely "obligate UNT to reassess [his] status" and force him "to pay higher rates" for his tuition—which he cannot afford.[6] This significant tuition increase will likely force him to leave school.[7] Consequently, the Consent Order and exclusion from this litigation "may as a practical matter impair or impede" his ability to protect his interest in in-state tuition eligibility. Fed. R. Civ. P. 24(a)(2); *cf. Espy*, 18 F.3d at 1207 (permitting intervention where "property interests in existing timber contracts" were "*threatened* by the *potential* bar on even-aged management") (emphasis added).

---

[5] Dkt. 19, App. 136, Ex. 15 (Silva Decl. ¶ 5, 9).

[6] *Id.*, App. 137 (Silva Decl. ¶ 10). Texas responds that Silva fails to explain "why" he may have to pay higher tuition, making "no allegation whether he is 'lawfully present.'" Dkt. 50, at 10-11. Again, Rule 24's text does not require more; Silva need only show that he "is so situated that disposing of the action *may* as a practical matter impair or impede" his "ability to protect [his] interest." Fed. R. Civ. P. 24(a)(2). Silva is the person most knowledgeable about his own immigration and residency status for tuition purposes; he is not speculating here.

In any event, after Texas's Response, on July 18, 2025, the Texas Higher Education Coordinating Board issued new guidance, which includes a proposed affidavit in which students must testify that they could "demonstrate" lawful presence. In his second declaration, Silva testifies that he cannot do so. Proposed Intervenors have requested leave, via separate pleading, to supplement the record with this evidence. *See* Mot. For Leave to Supplement Record.

[7] *Id.*

"[E]conomic harm is a quintessential injury upon which to base standing." *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 586 (5th Cir. 2006); *see also, e.g.*, *Young Conservatives of Texas Found. v. Univ. of N. Texas*, 609 F. Supp. 3d 504, 514 (E.D. Tex. 2022) ("economic harm in the form of higher tuition rates enforced against" students is injury sufficient for standing); *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) (permitting intervention to defend law based on "interest in having access to job opportunities" threatened by the lawsuit).

**Austin Community College:** As ACC's Chancellor Dr. Russell Lowery-Hart explains in his declaration, the Consent Order has concrete consequences for ACC.[8] The extreme price hike will reduce ACC's enrollment and, therefore, its revenue. ACC estimates about 440 of its students will now face a four-fold increase in tuition.[9] If these students cannot afford ACC, ACC will face economic loss. ACC depends on tuition revenue, and its reduction will "have an immediate and direct impact on ACC's finances."[10] The instability in its revenue "threatens [ACC's] ability to fulfill its mission" to provide affordable, high-quality education to the community.[11]

Texas argues the likely injury to revenue is speculative, countering that ACC may experience an increase in revenue from these tuition changes. Dkt. 50, at 9. Again, this misses the mark. Rule 24 specifically provides that the *possibility* of impairment or impediment is enough. Even still, the argument has no merit. *First*, Texas's suggestion, unsupported by evidence, ignores the real-world impact of a *four-fold* increase in cost to individuals struggling to put themselves through school. As Chancellor Lowery-Hart attests, based on his experience and expertise at ACC—including his direct knowledge of the ACC student body and how "students make

---

[8] Dkt. 19, App. 141–43, Ex. 16 (Decl. of Russell Lowery-Hart for ACC).
[9] *Id.* at 141.
[10] *Id.* at 140.
[11] *Id.*

enrollment decisions"—this tuition increase is "unaffordable for the vast majority" of affected students.[12] Texas may disagree with ACC's firsthand account and hypothesize about other scenarios. But on intervention, the intervenors' pleadings are taken as true. *See Texas*, 805 F.3d at 657.

*Second*, ACC's diminished revenue is merely one of the injuries it stands to suffer from the Consent Order. ACC also faces the prospect of creating a new bureaucratic apparatus to determine immigration status and assess tuition, requiring it to expend resources to the detriment of its educational programs, campus life, and student support services.[13] ACC will also face new difficulties in its marketing and recruitment, as increased tuition harms its mission of providing affordable education to underserved students.[14] Texas's Response fails to address these injuries.

*Third,* ACC's injury is no less concrete because it involves actions by third parties. As the Fifth Circuit recently discussed, a party may establish standing based on "'third parties [who] will likely react in predictable ways' that in turn will likely injure the plaintiffs." *United States v. Texas*, No. 24-50149, 2025 WL 1836640, at *9 (5th Cir. July 3, 2025) (quoting *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 396 (2024)). The operative question is: "Is it likely that the government's regulation or lack of regulation of someone else will cause a concrete and particularized injury in fact to the unregulated plaintiff?" *Id.* at 9 (quotation omitted). *See also Dep't of Commerce v. New York*, 588 U.S. 752, 767 (2019). Here, the Consent Order will predictably—indeed inevitably—lead students in Texas not to enroll in ACC, causing ACC concrete and particularized injuries.

---

[12] *Id.* at 140–41.
[13] *Id.* at 142.
[14] *Id.* at 140–42.

**LUPE:** LUPE is a membership organization that advocates and provides services for the low-income community in Texas's Rio Grande Valley.[15] Education access is a key element of LUPE's mission. The organization runs programming to help undocumented students and staff at local high schools understand eligibility for in-state tuition through the Dream Act.[16]

Texas's reliance on *Food & Drug Admin. v. All. for Hippocratic Medicine* [hereinafter *AHM*] to challenge LUPE's organizational standing again misses the mark. Importantly, *AHM* has no bearing on organizations, like LUPE, whose work goes far beyond issue advocacy. *AHM*, 602 U.S. at 394. Rather, *AHM* forecloses standing only where the organization has not suffered concrete injury and merely "advocate[s] against the defendant's action." *United States*, 2025 WL 1836640, at *11 (quoting *AHM*, 602 U.S. at 394).

The Supreme Court's holding in *Havens Realty Corp. v. Coleman* also supports LUPE's organizational standing. 455 U.S. 363 (1982). There, the housing services organization HOME established standing because, in addition to its advocacy work, it operated a direct housing counseling service that was harmed by the other party. *Id.* at 379. Similarly, in *United States v. Texas*, the immigrant legal services organization Las Americas established standing to challenge a purported state immigration law because it "provides legal services to immigrants," in addition to its issue-advocacy. 2025 WL 1836640, at *8.

LUPE, like HOME and Las Americas, is far more than an issue-advocacy organization. It provides direct services to individuals. It counsels undocumented students about in-state tuition eligibility and develops written guides to help them through college applications. The Consent Order will force LUPE to devote resources, staff, and time to support impacted members through

---

[15] Dkt. 19, App. 110–11, Ex. 11 (Decl. of Tania A. Chavez).
[16] *Id.* at 113–14.

this drastic change in law. This is exactly the kind of financial harm that the Fifth Circuit recently recognized as an injury for standing purposes. *Id.* at *9 ("At a minimum, the cost of developing new materials and training staff . . . is an economic injury.") (citation and quotations omitted). Accordingly, LUPE's organizational standing is well established. (The Parties do not challenge LUPE's associational standing.)

## II. Proposed Intervenors Meet the Requirements for Intervention as of Right.

Proposed Intervenors have established each of the four requirements for intervention as of right: (1) their motion was timely filed; (2) they have direct, particularized, and significant interests related to the action; (3) these interests will be impaired absent intervention; and (4) the Texas Attorney General has failed to represent their interests in this litigation. *See Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014).

### A. Proposed Intervenors' motion is timely and does not prejudice the Parties.

Proposed Intervenors' motion, filed less than three weeks after they learned of the suit, was timely. The timeliness of a motion to intervene turns on four factors: (1) the lapse in time between the intervenor learning of its interest in the case and filing the motion to intervene; (2) the potential prejudice to existing parties ***from the failure to intervene sooner*** after learning of that interest; (3) the prejudice to the intervenor if intervention is denied; and (4) any unusual circumstances. *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264–66 (5th Cir. 1977).

Neither Texas nor the United States contests the first factor, so that factor is conceded in Proposed Intervenors' favor. Texas instead focuses on the second factor, arguing that it would be prejudiced by post-judgment intervention simply because it is post-judgment. Dkt. 50 at 7–8. But of course, there was no opportunity to intervene before, precisely because the Consent Order was

filed the same day as the Complaint. The Parties cannot create prejudice through their own collusive acts.

In any event, there are no "absolute measures of timeliness." *Ross v. Marshall*, 426 F.3d 745, 755 (5th Cir. 2005). And "whether the request for intervention came before or after the entry of judgment [is] of limited significance." *Stallworth*, 558 F.2d at 266. "[I]ntervention of right must be measured by a practical rather than technical yardstick." *Adam Joseph Res. v. CNA Metals Ltd*., 919 F.3d 856, 867 (5th Cir. 2019) (cleaned up). This suit was only active for six hours before the entry of the Consent Order, and Proposed Intervenors moved to intervene less than three weeks thereafter. It strains credulity to contend that Proposed Intervenors should have anticipated this action and been ready to intervene in that interval of less than one business day.

Moreover, both the Supreme Court and the Fifth Circuit have regularly permitted intervention on less compelling facts. *See, e.g.*, *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 390, 393 n.14 (1977) (permitting intervention eighteen days after judgment following years of litigation); *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 434 (5th Cir. 2011) [hereinafter "LULAC"] (permitting intervention four weeks after notice of consent decree); *Edwards v. City of Houston*, 78 F.3d 983, 1000 (5th Cir. 1996) (permitting intervention thirty-seven and forty-seven days after notice of decree); *Espy*, 18 F.3d at 1205 (permitting intervention fifty-eight days after notice).

Texas also glosses over the third factor: the significant prejudice to Proposed Intervenors absent intervention. Dkt. 50, at 8. Texas disregards Silva and LUPE members' direct interest in accessing education and the fact that ACC cannot challenge or appeal an injunction implicating its substantial interests. These interests are directly tied up in this litigation and, unless Proposed Intervenors are permitted to intervene, they will continue to go entirely unprotected.

The Fifth Circuit assesses factor three through the lens of the adequacy of representation. As discussed below, "[a] movant's burden to show that its interests are not adequately protected is minimal and satisfied if the applicant shows that representation of his interest may be inadequate." *Rotstain v. Mendez*, 986 F.3d 931, 939 (5th Cir. 2021) (internal quotations and citations omitted). Texas's only argument is that the Attorney General alone can defend the constitutional validity of state statutes. As discussed below, private parties routinely intervene to defend statutes when their interests are not protected by official parties. *See* Section II.C, *infra*.

Finally, Texas entirely ignores the fourth *Stallworth* factor: the highly unusual circumstances at play in this six-hour case, including the pre-suit collusion between the Parties and their disregard for the legislative process. *United States v. Johnson*, 319 U.S. 302, 305 (1943) (finding that courts have a duty to set aside any adjudication procured from a collusive suit when the "public interest has been placed at hazard . . . ."); *Chicago & G.T. Ry. Co. v. Wellman*, 143 U.S. 339, 345 (1892) ("It never was the thought that, by means of a friendly suit, a party beaten in the legislature could transfer to the courts an inquiry as to the constitutionality of the legislative act."); *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 71 (1997) (highlighting "the federal courts' lack of authority to act in friendly or feigned proceedings."); *Pool v. City of Houston*, 87 F.4th 733, 733–34 (5th Cir. 2023) ("It is well settled that, where the parties agree on a constitutional question, there is no adversity and hence no Article III case or controversy."). Thus, Proposed Intervenors satisfy all four timeliness factors.

> ### B. Proposed Intervenors have substantial interests in this litigation, and those interests will be impaired absent intervention.

Proposed Intervenors have significant interests in this litigation that are "concrete, personalized, and legally protectable" and that "go[] beyond a generalized preference that the case come out a certain way." *Texas*, 805 F.3d at 657–59. Proposed Intervenors "are not individuals

seeking to defend a governmental policy they support on ideological grounds; rather, they are the intended beneficiaries of the program." *Id.* at 661.

As discussed in Section I, *supra*, Proposed Intervenors have concrete and particularized interests they seek to defend. Without the Dream Act, Silva and LUPE's members will face tuition rates potentially four times higher than in past semesters, which will likely force them to forgo their education. Hundreds of students will likely have to withdraw from ACC, depriving ACC of hundreds of thousands of dollars in tuition. ACC may have to expend resources on immigration status checks to assess eligibility for in-state tuition. And LUPE will be forced to channel its resources and programming away from other pressing work to respond to this abrupt change.[17]

Proposed Intervenors will be unable to protect these substantial interests if not allowed to intervene. "[Intervenors] need only show that if they cannot intervene, there is *a possibility* that their interest could be impaired or impeded." *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 307 (5th Cir. 2022) (emphasis added); *see also Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (intervention allowable when representation "may be" inadequate). There is far more than a mere possibility here.

### C. Proposed Intervenors are not adequately represented by the Parties.

The Texas Attorney General failed to represent the interests of Proposed Intervenors in this litigation at all. Although a governmental body or officer is presumed to represent the interests of would-be intervenors, that presumption is overcome where the intervenors' "interest is in fact

---

[17] Texas suggests that "economic" interests are insufficient to support intervention. Dkt 50 at 12. The Fifth Circuit has made it clear, however, that "concrete, personalized, and legally protectable" interests like those at issue here, even if economic in nature—such as "property interests in existing [relationships] that are threatened by the litigation," and "having access to job opportunities"—are sufficient. *Texas*, 805 F.3d at 658–60 & n.3 (cleaned up).

different from that of the state and that the interest will not be represented by the state." *Hopwood v. State of Tex.*, 21 F.3d 603, 605 (5th Cir. 1994); *see LULAC*, 659 F.3d at 435 ("The existing parties" including the city defendant "oppose the relief that [the intervenor] seeks; thus, they do not adequately represent his interest.").

The Fifth Circuit has found representation by a government entity to be inadequate where intervenors "raised substantial doubts about the [government's] motives and conduct in . . . litigation" and if the intervenors did not intervene, the government "might well be inclined to settle the litigation on terms" "adverse" to the intervenor's interests. *City of Houston v. American Traffic Solutions, Inc.*, 668 F.3d 291, 294 (5th Cir. 2012). Proposed Intervenors here raise precisely such doubts here, and Texas settled on terms adverse to Proposed Intervenors' interests.

The cases cited by Texas are wholly distinguishable. For instance, in *Ingebretsen on Behalf of Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 281 (5th Cir. 1996), the Fifth Circuit denied intervention in a challenge to a Mississippi law allowing school prayer because the Attorney General there *did* defend the statute at issue and *did* "assert the rights of all Mississippians affected by the law, including the Free Exercise rights of the Proposed Intervenors." *Id.* Here, the Attorney General has done no such thing. Indeed, he agreed to the United States's terms before it even filed suit.

In *Berger v. N. Carolina State Conf. of the NAACP*, the Supreme Court noted that the presumption of adequate representation "applies only when the interests overlap fully. . . . Where the absentee's interest is . . . not identical with[] that of one of the parties, that normally is not enough to trigger a presumption of adequate representation." 597 U.S. 179, 184, 197 (2022) (quotations omitted). And the Court there declined to decide whether a presumption of adequate

representation "might sometimes be appropriate when a private litigant seeks to defend a law alongside the government[.]" *Id.* at 197.

Likewise, in *South Carolina v. North Carolina*, the Supreme Court merely noted that a state could assert the interests of citizens as *parens patriae* when faced with a motion for intervention by a city which had substantially the same interests as the state itself, interests the state continued to defend. 558 U.S. 256, 266 (2010). The Court reaffirmed that an intervenor should show that its own interest "is not properly represented by the state." *Id.* (quoting *State of N.J. v. State of N.Y.*, 345 U.S. 369, 373 (1953)). Proposed Intervenors amply satisfy that requirement. *See* Section I, II.B, *supra*.

*Saldano v. Roach*, 363 F.3d 545 (5th Cir. 2004), is inapposite. In that case, the Fifth Circuit denied a district attorney's request for intervention to defend against a habeas corpus petition where the Attorney General confessed error, as "Texas law does not permit the District Attorney to assume representation of the state" where the Attorney General was already "exercis[ing] exclusive authority" under Texas law. *Id.* at 552 (quoting *Hill v. Tex. Water Quality Bd.*, 568 S.W.2d 738, 741 (Tex. Civ. App.—Austin 1978, writ ref'd n.r.e.)). The crux of the issue was a state-law allocation of powers that has no bearing on Proposed Intervenors' rights to proceed in this suit under Rule 24.

Texas's citation to *Acuff v. United Papermakers & Paperworkers*, *AFL-CIO* only confirms the unremarkable proposition that where an existing party, there a union, "pursued the [issue] with energy and indeed, in large measure, with success," the proposed intervenors "cannot equate lack of complete success with bad faith" to deny intervention for purpose of appeal. 404 F.2d 169, 171 (5th Cir. 1968). In this case, Texas has shown no "energy," much less "success," in defending its law and has failed to provide adequate representation. *See id.*

The Parties argue that judicial approval of consent decrees is routine. But in approving such agreements, courts look for *some* indicator of adversity between the parties; they should "not declare legislative acts unconstitutional upon agreed and general statements, and without the fullest disclosure of all material facts." *See Chicago & G.T.*, 143 U.S. at 346; *see also Camreta v. Greene*, 563 U.S. 692, 701 (2011).

Thus, in *United States v. Allegheny-Ludlum Indus., Inc.*, "[t]he filing of the complaint culminated more than six months of intensive, hard-fought negotiations between, on one side, the [government], and on the other the companies and the union" which the district court described as "a thoughtful and earnest attempt to respond to and to reconcile competition between charges of employment discrimination[.]" 517 F.2d 826, 834 (5th Cir. 1975); *see also In re Asbestos Litig.*, 90 F.3d 963, 989 (5th Cir. 1996), *abrogated on other grounds by Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ("exhaustive findings of fact detail the parties' initial positions and their slow movement toward a settlement that offers a fair compromise of their various claims."). And even in that case, the court affirmed the intervention of thirty-six individuals and an organization. *Id.* at 839. By contrast, there was no adversity between the present Parties: no "hard-fought negotiations," nor any "sides" to speak of, nor did the Court assure itself of any attempts to "reconcile" the Parties' interests. *Allegheny-Ludlum*, 517 F.2d at 834.

The defect in Texas's representation, and in the Consent Order as a whole, goes beyond Rule 24, implicating core jurisdictional and due process issues. The United States goes to great lengths to argue the Court has jurisdiction to enter a consent judgment even when the parties are fully aligned on the merits, contending this lack of adversity raises a prudential, not jurisdictional, question. Dkt. 51 at 4–6. But the United States's argument fails even on its own terms: it argues

that only the "government's continued enforcement of [a] statute . . . create[s] a live controversy." *Id.* (quoting *United States v. Windsor*, 570 U.S. 744, 758 (2013)).

Here there is no indication of continued enforcement during the six hours when the case was active, particularly when the United States's own attorney confirmed ahead of the suit Texas's goal to stop enforcing the law. Dkt. 19, App. 146 (Ex. 17). Far from the United States's cited cases, the unusual circumstances here are nothing like the government's continued enforcement of a law it admitted was unconstitutional, yet nonetheless *appealed to defend*, in *Windsor*. Nor are these circumstances like the government's continued commitment to deport the appellee under a law it believed unconstitutional in *Immigr. & Naturalization Serv. v. Chadha*, where the Court relied on Congress's intervention to defend the constitutionality of the statute. 462 U.S. 919, 940 (1983) (The lower court "properly dispelled any . . . [jurisdictional] concerns by inviting and accepting briefs from both Houses of Congress."). It cannot fairly be claimed that Texas "continued to enforce" the Dream Act, much less sought to defend the law on appeal, as in *Windsor*, nor was any other party present to defend the Dream Act as in *Chadha*. There simply was no adversity here.

Astonishingly, the United States also fails to contend with a Fifth Circuit decision directly on point—a case that was cited in Proposed Intervenors' Motion to Vacate, Dkt. 17, at 1. In *Pool v. City of Houston*, the Fifth Circuit concluded that no case or controversy was present when "all parties" to the case "agreed from the beginning of this case" that a city provision "was unconstitutional" and should be enjoined.  87 F.4th at 734. That is exactly the case here, and as explained in the Motion to Vacate, the Court lacked jurisdiction to enter the Consent Decree. *See* Dkt. 17. At a minimum, Proposed Intervenors should be allowed to intervene to make that argument.

Furthermore, where a suit purports to bind absent third parties, or implicates their

interests—even short of a class action— the "Court is obligated to examine [a proposed consent decree] carefully to ascertain . . . that it is fair, adequate and reasonable as to the parties and affected third parties[.]" *See Terrazas v. Clements*, 581 F. Supp. 1319, 1323 (N.D. Tex. 1983); *see also United States v. City of Miami*, 664 F.2d 435, 441 (5th Cir. 1981) (per curiam) (opinion of Rubin, J.). In the absence of such procedures, courts recognize that unrepresented parties whose interests are implicated have a right to be heard.

Here, no party has represented, let alone adequately, the direct and substantial interests of Proposed Intervenors. Accordingly, Proposed Intervenors are entitled to intervene as of right.

### D.  In the alternative, permissive intervention is warranted.

Permissive intervention is warranted, even if the Court denies intervention as a matter of right. This Court has discretion to grant permissive intervention, and intervention would not prejudice the Parties. *See* Section II.A., *supra.*

Proposed Intervenors seek to vacate the judgment or, in the alternative, to appeal the judgment. Dkt. 16, at 29. Contrary to Texas's contention, Dkt. 50, at 14–15, Proposed Intervenors filed a Motion to Vacate under Rules 59 and 60 to satisfy the responsive pleading requirement of Federal Rule of Civil Procedure 24(c). *See* Dkt. 16, at 29, n. 61; Fed. R. Civ. P. 24(c). The relief sought is vacatur of the consent judgment; only if and when this case is reopened and judgment is vacated could Proposed Intervenors file an answer or motion to dismiss. In any event, as indicated, if the Court requires an answer or motion to dismiss to satisfy Rule 24(c), Proposed Intervenors previously requested an extension of 30 days from the date of the Court's ruling on this motion to

intervene to file an additional responsive pleading. *Id.* Proposed Intervenors are prepared to file an additional responsive pleading, if the Court so requires.[18]

### E. Intervention is not futile.

Instead of addressing Rule 24 head on, the Parties devote most of their briefing to a truncated analysis of the case's merits. However, their arguments are foreign to Rule 24, which says nothing about a movant's likelihood of success. Moreover, there appears to be "no legal authority establishing that alleged futility is a bar to intervention [as of right]" in the Fifth Circuit. *See Winter*, 2015 WL 12732628, at *2; *but see Hamilton v. First Am. Title Co.*, No. 3:07-CV-1442-G, 2008 WL 3876038, at *4 (N.D. Tex. Aug. 15, 2008) (applying futility analysis but granting intervention as not futile).

The United States cites *King v. Flowers Foods, Inc.*, No. CV 21-579-BAJ-SDJ, 2023 WL 2731041, at *4 (M.D. La. Mar. 30, 2023), which denied intervention where the claim sought to be pursued was time-barred. The Parties do not invoke any such obvious bar to relief or identify a *jurisdictional* barrier to intervention. Instead, the Parties emphasize that they are confident in their statutory interpretation. Proposed Intervenors welcome the opportunity to brief these issues so that the Court can decide this case on a full record. But the parties' preliminary assessment of the statutory merits has no bearing on Rule 24.

Moreover, Proposed Intervenors can and will raise substantial legal arguments in support of the validity of the Texas Dream Act. ***First***, 8 U.S.C. § 1623(a) restricts eligibility for education

---

[18] Regardless, intervention should not be denied based on Rule 24(c). *See Liberty Surplus Ins. Companies v. Slick Willies of Am., Inc.*, No. CIV.A. H-07-0706, 2007 WL 2330294, at *2 (S.D. Tex. Aug. 15, 2007) ("[F]ailure to comply with Rule 24(c) is not a sufficient basis to deny the motion to intervene."). Moreover, "[p]leadings must be construed as to do justice," Fed. R. Civ. P. 8(e), and a majority of circuits, including the Fifth, have favored a "permissive interpretation" of Rule 24(c). *Id.* at *1 (citing *Farina v. Mission Inv. Tr.*, 615 F.2d 1068, 1075 (5th Cir. 1980)).

benefits only "on the basis of residence." But the Texas Dream Act bases eligibility for in-state tuition on factors beyond residency alone. Section 54.052(a)(3) of the Texas Education Code provides that a student can meet the requirements by: (1) graduating from a Texas high school, (2) maintaining a residence in Texas for the three years prior to graduating high school, and (3) maintaining a residence in Texas for the year preceding enrollment in a higher education institution. Tex. Educ. Code § 54.052(a)(3). In addition, a person who is not a citizen or permanent resident must submit an "affidavit stating that the person will apply to become a permanent resident of the United States as soon as the person becomes eligible." *Id.* § 54.053(3)(B). Under the law's plain language, in-state status depends on factors beyond mere "residence."

*Second*, Section 54 of the Texas Education Code is a complex statutory framework with interrelated sections governing eligibility for in-state tuition. The Parties' narrow focus on § 54.052(a)(3) ignores entire provisions of the section that allow out-of-state residents to qualify for the in-state tuition rate. To take just one example, § 54.241 allows military personnel and their dependents to pay the in-state rate "without regard to the length of time [the military personnel] . . . has been assigned to duty or resided in the state." *Id.* § 54.241(b). The statutory scheme thus provides in-state tuition rates to large numbers of U.S. citizens "without regard" to whether they are Texas residents, and thus it does not conflict with 8 U.S.C. § 1623(a).

*Third*, the federal government lacks the constitutional authority to compel Texas to act as the injunction requires. If Section 1623(a) requires what the injunction now compels, then it invades core state prerogatives, purporting to dictate to Texas whom it may regard as Texas residents and how tuition at state educational institutions is to be calculated. *Cf. Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991) (refusing to assume that legislation would usurp "a decision of the most fundamental sort for a sovereign" state). While the United States insists it has authority

to direct Texas to charge higher tuition to students without lawful presence, "[c]onspicuously absent from the list of powers given to Congress is the power to issue direct orders to the governments of the States." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 471 (2018). The United States similarly lacks authority to commandeer officials at state universities into enforcing federal policies by requiring them to verify the immigration status of their students. *See Printz v. United States*, 521 U.S. 898 (1997). Thus, to the extent that § 1623(a) is read to conflict with the Texas Dream Act, it is void under the Tenth Amendment.

## CONCLUSION

For all the foregoing reasons, the Court should allow intervention. In addition, Proposed Intervenors renew their request for expedited consideration of this motion, in light of the urgency of the issues at stake. *See* Dkt. 16, at 20. As such, Proposed Intervenors respectfully request, to the extent possible, the Court issue a decision to this Motion to Intervene by August 1, 2025.

Dated: July 21, 2025

Respectfully submitted,

*/s/ Andrés Correa*

Andrés Correa
Texas Bar No. 24076330
acorrea@lynnllp.com
Christopher Patton
Texas Bar No. 24083634
cpatton@lynnllp.com
Yaman Desai
Texas Bar No. 24101695
ydesai@lynnllp.com
Kyle A. Gardner
Texas State Bar No. 24116412
kgardner@lynnllp.com
Zhenmian Xu
Texas Bar No. 24135820
sxu@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
(214) 981-3800 Telephone
(214) 981-3839 Facsimile

Kassandra Gonzalez (*pro hac vice*)
Texas Bar No. 24116439
kassandra@texascivilrightsproject.org
Molly Petchenik
Texas Bar No. 24134321
molly@texascivilrightsproject.org
Daniel Woodward (*pro hac vice*)
Texas Bar No. 24138347
danny@texascivilrightsproject.org
**TEXAS CIVIL RIGHTS PROJECT**
P.O. Box 17757
Austin, TX 78760
(512) 474-5073 ext. 182 Telephone
(512) 474-0726 Facsimile

Daniel Hatoum (*pro hac vice*)
Texas Bar No. 24099136
daniel@texascivilrightsproject.org
**TEXAS CIVIL RIGHTS PROJECT**
1017 W. Hackberry Ave.
Alamo, TX 78516
(512) 474-5073 ext. 182 Telephone

(512) 474-0726 Facsimile

Efrén C. Olivares
Texas Bar No. 24065844
Federal Bar No. 1015826
olivares@nilc.org
Tanya Broder (pro hac vice)
California Bar. No. 136141
broder@nilc.org
Marlene Berroa Rodriguez (pro hac vice)
New York Bar No. 6208508
berroa@nilc.org
**NATIONAL IMMIGRATION LAW CENTER**
P.O. Box 34573
Washington, DC 20005-9997
(213) 674-2817 Telephone

David Donatti
Texas Bar No. 24097612
ddonatti@aclutx.org
Adriana Pinon
Texas Bar No. 24089768
apinon@aclutx.org
Edgar Saldivar
Texas Bar No. 24038188
esaldivar@aclutx.org
Sarah Corning
Texas Bar No. 24144442
scorning@aclutx.org
**ACLU FOUNDATION OF TEXAS**
P.O. Box 8306
Houston, TX 77288
(713) 942-8146

Joshua M. Salzman (*pro hac vice*)
D.C. Bar No. 982239
jsalzman@democracyforward.org
Brian D. Netter (*pro hac vice*)
D.C. Bar No. 979362
bnetter@democracyforward.org
Paul R.Q. Wolfson (*pro hac vice*)
D.C. Bar No. 414759
pwolfson@democracyforward.org
Skye L. Perryman (*pro hac vice*)
Texas Bar No. 24060411
sperryman@democracyforward.org
Simon C. Brewer (*pro hac vice*)*

CT Bar No. 441889
sbrewer@democracyforward.org
**DEMOCRACY FORWARD FOUNDATION**
P.O. Box 34553
Washington, D.C. 20043
Tel: (202) 448-9090

*Not admitted to practice law in the District of Columbia; practicing under the supervision of Democracy Forward lawyers who are members of the DC Bar.

**ATTORNEYS FOR PROPOSED INTERVENORS LA UNIÓN DEL PUEBLO ENTERO, AUSTIN COMMUNITY COLLEGE, AND OSCAR SILVA**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 21, 2025, a true and correct copy of the foregoing document was electronically filed via the Court's CM/ECF system which sends notice of electronic filing to all counsel of record.

*/s/ Andrés Correa*
Andrés Correa