IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 7:25-CV-00055-O |
| § | |
| STATE OF TEXAS § | |
| § | |
| Defendant. § | |

# ORDER

Before the Court are Proposed Intervenor Students for Affordable Tuition's ("SAT") Motion to Intervene and Brief in Support (ECF Nos. 9–10), filed June 11, 2025; Defendant Texas's Response (ECF No. 47), filed July 2, 2025; Plaintiff United States's Response (ECF No. 48), filed July 2, 2025; and SAT's Replies (ECF Nos. 54, 56), filed July 16, 2025. Also before the Court are Proposed Intervenors Austin Community College ("ACC"), Oscar Silva, and La Unión del Pueblo Entero's ("LUPE") (collectively, the "LUPE Intervenors") Emergency Motion to Intervene (ECF No. 16), filed June 24, 2025; Defendant Texas's Response (ECF No. 50), filed July 14, 2025; Plaintiff United States's Response (ECF No. 51), filed July 14, 2025; LUPE Intervenors' Reply (ECF No. 63), filed July 21, 2025.

The above-mentioned Motions are fully briefed and ripe for the Court's review. Upon reviewing the briefing and applicable law, the Court hereby **DENIES** SAT's Motion to Intervene (ECF No. 9) and **DENIES** LUPE Intervenors' Motion to Intervene (ECF No. 16).

1

## I.    BACKGROUND

Congress in 1996 passed the Illegal Immigration Reform and Immigrant Responsibility Act. Relevant to the instant litigation is Section 1623(a) of the Act, which provides the following:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

8 U.S.C. § 1623(a).

### A.  Relevant Procedural History

On June 4, 2025, the United States filed suit seeking to permanently enjoin Texas from enforcing "certain provisions of the Texas Education Code that expressly and directly conflict with federal immigration law."[1] The specific Texas provisions at issue are Sections 54.051(m) and 54.052(a) of the Texas Education Code.

Section 54.051(m) provides that "[u]nless the student establishes residency or is entitled or permitted to pay resident tuition as provided by this subchapter, tuition for a student who is a citizen of any country other than the United States of America is the same as the tuition required of other nonresident students." TEX. EDUC. CODE § 54.051(m). Section 54.052(a) articulates three ways for a student to establish residency in Texas:

> (1) a person who: (A) established a domicile in this state not later than one year before the census date of the academic term in which the person is enrolled in an institution of higher education; and (B) maintained that domicile continuously for the year preceding that census date;
>
> (2) a dependent whose parent: (A) established a domicile in this state not later than one year before the census date of the academic term in which the dependent is enrolled in an institution of higher education; and (B) maintained that domicile continuously for the year preceding that census date; and

---

[1] U.S. Compl. 1–2, ECF No. 1.

2

> (3) a person who: (A) graduated from a public or private high school in this state or received the equivalent of a high school diploma in this state; and (B) maintained a residence continuously in this state for: (i) the three years preceding the date of graduation or receipt of the diploma equivalent, as applicable; and (ii) the year preceding the census date of the academic term in which the person is enrolled in an institution of higher education.

*Id.* § 54.052(a). In its Complaint, the United States maintains that Sections 54.051(m) and 54.052(a)(3) of the Texas Education Code are preempted by Section 1623(a), running afoul of the Supremacy Clause of the United States Constitution.[2]

The same day the United States filed its Complaint, the parties filed a Joint Motion for Entry of Consent Judgment.[3] There, the parties informed the Court they "agree that federal law at 8 U.S.C. § 1623(a) expressly preempts the Texas Education Code provisions—§§ 54.051(m), 54.052(a)—that grant benefits to aliens, who are not lawfully present in the United States."[4] Consequently, the parties requested the Court enter a final judgment declaring Sections 54.051(m) and 54.052(a) violate the Supremacy Clause, rendering them unconstitutional and invalid.[5] The Court granted the Joint Motion and issued a Consent Order and Final Judgment, specifically declaring the Texas provisions unconstitutional and invalid and enjoining Texas from enforcing the provisions to aliens unlawfully present in the United States.[6]

A flurry of activity has since followed. On June 11, 2025—one week after the Court entered its Final Judgment—SAT filed its Motion to Intervene.[7] Soon after, on June 24, 2025, the LUPE Intervenors filed their Motion to Intervene.[8] These Motions are fully briefed and ripe for the Court's review.

---

[2] *Id.* at 8–11.
[3] *See* Mot. Entry Consent J., ECF No. 6.
[4] *Id.* at 2.
[5] *Id.*
[6] Order & Final J. 1, ECF No. 8.
[7] *See* SAT Mot. Intervene, ECF No. 9.
[8] *See* LUPE Mot. Intervene, ECF No. 16.

### B. Proposed Intervenors

SAT is an unincorporated association "comprised of college students without lawful immigration status who are united for the purpose of advocating for and ensuring access to affordable higher education in Texas, including maintaining the state's reduced in-state tuition rates for residents without lawful immigration status."[9] SAT's members include recipients of Deferred Action for Childhood Arrivals ("DACA") and also individuals "who do not have DACA or any other immigration status."[10] SAT maintains that, because of the Court's Consent Order, "SAT's members face increases of up to 810% of their higher education costs."[11] SAT seeks to intervene in this action for purposes of pursuing an appeal.[12]

The LUPE Intervenors consist of ACC, LUPE, and Oscar Silva. "ACC is a public education institution serving Central Texas" and "provides access to quality education to develop and enrich communities, especially for individuals from historically underrepresented and economically disadvantaged backgrounds."[13] "ACC has 440 enrolled students affected by the Consent Order, who qualified for in-state tuition under the Dream Act."[14] Because of the Consent Order, ACC anticipates "significant reductions in its enrollment and retention" and "many students to withdraw from ACC."[15]

LUPE, a membership organization, has "advocat[ed] for the low-income community in Texas's Rio Grande Valley since 2003."[16] "LUPE provides students and schools with information on higher education, and assists undocumented students, and those with [DACA] to understand

---

[9] SAT Br. Supp. Mot. Intervene 1, ECF No. 10.
[10] SAT Reply 4, ECF No. 54.
[11] SAT Br. Supp. Mot. Intervene 4, ECF No. 10.
[12] *Id.* at 5.
[13] LUPE Br. Supp. Mot. Intervene 6, ECF No. 16.
[14] *Id.* at 6–7.
[15] *Id.* at 7.
[16] *Id.*

eligibility for in-state tuition."[17] LUPE maintains "[t]he Consent Order has affected [its] staff, outreach, advocacy, social media, print materials, and community relationships."[18]

Finally, Oscar Silva is a student at the University of North Texas.[19] Silva has received in-state tuition because of the Dream Act, but now "fears his tuition could skyrocket before the August 20, 2025 payment deadline, and he may be forced to give up on his plans for his career and his future."[20]

Collectively, the LUPE intervenors seek reconsideration of the Court's Consent Order or, alternatively, an appeal.[21] On August 4, 2025, SAT and the LUPE Intervenors filed Protective Notices of Appeal.[22]

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 24(a) requires courts to permit a movant to intervene as a matter of right provided (1) the movant's application for intervention is timely, (2) the movant has an interest related to the action, (3) the movant's interest would be impaired or impeded by the instant case, and (4) the movant's interest is not adequately represented by the existing parties to the suit. FED. R. CIV. P. 24(a)(2); *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 247 (5th Cir. 2009). And though, as the movant, the would-be intervenor carries the burden of establishing all four elements for intervention as of right, that burden is "minimal," albeit cognizable. *Texas v. United States*, 805 F.3d 653, 661 (5th Cir. 2015). In making its determination, a court is to accept the movant's factual allegations as true. *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022). "Failure to satisfy any one requirement precludes intervention of right." *Haspel &*

---

[17] *Id.* at 7–8.
[18] *Id.* at 8.
[19] *Id.* at 9.
[20] *Id.* at 10.
[21] *Id.* at 18–19.
[22] *See* SAT Protective Notice of Appeal, ECF No. 80; LUPE Protective Notice of Appeal, ECF No. 81.

*Davis Milling & Planting Co. v. Bd. of Levee Comm'rs of the Orleans Levee Dist. & State of La.*, 493 F.3d 570, 578 (5th Cir. 2007) (citation omitted).

Rule 24(b) also permits a movant to seek permissive intervention at the discretion of a district court, provided the applicant (1) files a timely motion, (2) shows it "has a claim or defense that shares with the main action a common question of law or fact," and (3) the court determines that intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(1)(B), (b)(3).

## III.   ANALYSIS

Among other arguments, the United States and Texas contend the Court should deny SAT and the Lupe Intervenors' Motions to Intervene because their intervention is legally futile.[23] The Court agrees.

"[A] proper basis for denying leave to intervene may be a finding that the proposed intervention would fail to state a claim." *Saavedra v. Murphy Oil U.S.A., Inc.*, 930 F.2d 1104, 1109 (5th Cir. 1991); *see also King v. Flowers Foods, Inc.*, No. CV 21-579-BAJ-SDJ, 2023 WL 2731041, at *2 (M.D. La. Mar. 30, 2023) ("If the intervening party's legal claim fails on the merits under clearly-established law or a prior decision in the case, the motion to intervene can be dismissed as futile." (citation omitted)). "The Fifth Circuit defines futility to mean that the amended complaint would fail to state a claim upon which relief could be granted." *King*, 2023 WL 2731041, at *2 (internal quotation marks and citation omitted). To determine whether intervention is futile, a "court applies the same standard as it would apply in considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), *i.e.*, whether the complaint include[s]

---

[23] Tex. Resp. 9–10, ECF No. 47; U.S. Resp. 5–7, ECF No. 48; Tex. Resp. 16–18, ECF No. 50; U.S. Resp. 6–9, ECF No. 51.

enough facts to state a claim to relief that is plausible on its face." *Id.* (alteration in original) (internal quotation marks and citations omitted).

Applying the Rule 12(b)(6) standard, the Court concludes SAT and the LUPE Intervenors' Motions to Intervene are futile because federal law—specifically, 8 U.S.C. § 1623(a)— preempts the challenged Texas provisions, Sections 54.051(m) and 54.052(a) of the Texas Education Code. So, SAT and the LUPE Intervenors fail to state a plausible claim.

Federal preemption is rooted in the Constitution's Supremacy Clause, which provides the following:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. CONST. art. VI, cl. 2. Under the Supremacy Clause, "[s]tate law is preempted when (1) a federal statute expressly preempts state law ('express preemption'); (2) federal legislation pervasively occupies a regulatory field ('field preemption'); or (3) a federal statute conflicts with state law ('conflict preemption')." *Deanda v. Becerra*, 96 F.4th 750, 760–61 (5th Cir. 2024).

"A federal statute expressly preempts a state law when Congress 'adopts express language defining the existence and scope of preemption.'" *Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304, 311 (5th Cir. 2023) (quoting *Est. of Miranda v. Navistar, Inc.*, 23 F.4th 500, 504 (5th Cir. 2022)). "And when the statute contains an express preemption clause, the court does not indulge 'any presumption against preemption but instead focus[es] on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent.'" *Id.* (alteration in original) (quoting *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016)). "Evidence of preemptive purpose is sought in the text and structure of the statute at issue,

7

and in the first instance we focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." *Id.* (internal quotation marks and citation omitted).

The Fifth Circuit in *Young Conservatives* already determined that "Section 1623(a) contains an express preemption clause," which the United States relies on.[24] *Id.* at 312. Indeed, Section 1623(a) provides that:

> "[n]otwithstanding any other provision of law," an illegal alien "shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident."

*Id.* (alterations in original) (quoting 8 U.S.C. § 1623(a)). Under the Fifth Circuit's interpretation, "the statute expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same. No matter what a state says, if a state did not make U.S. citizens eligible, illegal aliens *cannot* be eligible." *Id.* at 313 (emphasis added).

Here, Sections 54.051(m) and 54.052(a) of the Texas Education Code "allow aliens not lawfully present in the United States to qualify for in-state tuition based solely on Texas residency, while *explicitly denying* resident tuition rates to U.S. citizens who do not meet Texas residency requirements."[25] Section 54.051(m) states "[u]nless the student establishes [Texas] residency or is entitled or permitted to pay [Texas] resident tuition as provided by this subchapter, tuition for a student *who is a citizen of any country other than the United States of America* is the same as the tuition required of other nonresident students." TEX. EDUC. CODE § 54.051(m) (emphasis added).

Central to this litigation, Section 54.052(a) articulates three ways for a student to establish residency in Texas:

---

[24] *See* U.S. Resp. 7, ECF No. 48; U.S. Resp. 9, ECF No. 51.
[25] U.S. Resp. 7, ECF No. 51 (emphasis added).

> (1) a person who: (A) established a domicile in this state not later than one year before the census date of the academic term in which the person is enrolled in an institution of higher education; and (B) maintained that domicile continuously for the year preceding that census date;
>
> (2) a dependent whose parent: (A) established a domicile in this state not later than one year before the census date of the academic term in which the dependent is enrolled in an institution of higher education; and (B) maintained that domicile continuously for the year preceding that census date; and
>
> (3) a person who: (A) graduated from a public or private high school in this state or received the equivalent of a high school diploma in this state; and (B) maintained a residence continuously in this state for: (i) the three years preceding the date of graduation or receipt of the diploma equivalent, as applicable; and (ii) the year preceding the census date of the academic term in which the person is enrolled in an institution of higher education.

*Id.* § 54.052(a). None of these provisions require lawful presence in the United States. Texas currently charges resident students "$50 per semester credit hour." *Id.* § 54.051(c). By contrast, nonresident students pay a higher rate of tuition in an amount set by the "coordinating board . . . each academic year." *Id.* § 54.051(d).

Examining these provisions together, "Texas charges students who satisfy certain residency requirements lower tuition than it charges to nonresident students." *Young Conservatives*, 73 F.4th at 307–08 (citing TEX. EDUC. CODE §§ 54.051(c)–(d), 54.052). Section 54.051(m) explicitly states "a student who is a citizen of any country *other than* the United States of America" must pay the same tuition rate as nonresident students "*[u]nless* the student establishes *residency*." TEX. EDUC. CODE § 54.051(m) (emphasis added). In other words, "[s]o long as they satisfy the statute's residency requirements, illegal aliens are eligible for Texas resident tuition. Out-of-state, nonresident American citizens are not." *Young Conservatives*, 73 F.4th at 308.

Federal law—Section 1623(a)—bars such a disparity. It charges that an illegal alien "shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit

unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a). Sections 54.051(m) and 54.052(a) are expressly preempted because they "grant benefits to aliens, who are not lawfully present in the United States, based on their residency in Texas, that are not available to all U.S. citizens regardless of residency."[26] That is, these Texas provisions "grant illegal aliens benefits when U.S. citizens haven't received the same." *Young Conservatives*, 73 F.4th at 313.

SAT argues the United States's reliance on *Young Conservatives* is misplaced.[27] Specifically, SAT argues *Young Conservatives* "addressed Texas Education Code § 54.051(d)—a provision not at issue here—and explicitly held that it was not preempted by 8 U.S.C. § 1623(a)."[28] It is true that *Young Conservatives* addressed a different provision in the Texas Education Code than the provisions at issue in this action. The Fifth Circuit made clear Section 54.051(d) of the Texas Education Code "calculates and imposes a nonresident tuition rate (for U.S. citizens, foreign nationals, and immigrants alike) [and] has *nothing to do* with § 1623(a)'s mandate that illegal aliens are ineligible for in-state benefits unless U.S. citizens are." *Id.* at 313–14 (emphasis added).

Tellingly, the Fifth Circuit said in dicta that "a different, *unchallenged* portion of Texas' scheme *seems to conflict* with § 1623(a)." *Id.* at 314 (second emphasis added). Those provisions, as demonstrated above, are Sections 54.051(m) and 54.052(a). And, unlike Section 54.051(d), which "does nothing more than set the tuition price for nonresident students, citizens or not," Sections 54.051(m) and 54.052(a) expressly conflict with Section 1623(a) by granting "improper benefits for illegal aliens." *Id.* at 313. The Court thus rejects SAT's argument that the United

---

[26] Mot. Entry Consent J. 2, ECF No. 6.
[27] SAT Reply 6–7, ECF No. 56.
[28] *Id.* at 6.

States's reliance on *Young Conservatives* is misplaced merely because it addressed a different provision of the Texas Education Code.

Additionally, both SAT and the LUPE Intervenors argue that Section 1623(a) does not squarely preempt Texas law because Texas law is broader.[29] That is, Section 1623(a) restricts eligibility for education benefits only "on the basis of residence," but under the plain language of the Texas provisions at issue here, "in-state status depends on factors beyond mere 'residence.'"[30]

The Fifth Circuit in *Young Conservatives* explained that "Texas charges students who satisfy certain residency requirements lower tuition than it charges to nonresident students." 73 F.4th at 307–08. The Fifth Circuit recognized that Texas law has certain residency requirements, i.e., the "factors beyond mere 'residence'" articulated in Section 54.052(a).[31] The Fifth Circuit interpreted Section 1623(a) in light of Texas's residency factors and held "the statute expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same." *Id.* at 313. So, the fact that Texas law evaluates different factors to determine residency does not place Sections 54.051(m) and 54.052(a) outside the purview of Section 1623(a)'s express preemption clause. The Court thus rejects SAT and the LUPE Intervenors' argument that Sections 54.051(m) and 54.052(a) are not preempted merely because they regard eligibility for in-state tuition beyond residency alone.

In sum, Section 1623(a) expressly preempts Sections 54.051(m) and 54.052(a). Accordingly, SAT and the LUPE Intervenors' Motions to Intervene are legally futile, because they fail to state a claim under Rule 12(b)(6).

---

[29] *See* LUPE Reply 19, ECF No. 63; SAT Reply 6–7, ECF No. 56.
[30] LUPE Reply 19, ECF No. 63 (quoting 8 U.S.C. § 1623(a)); *see also* SAT Reply 6–7, ECF No. 56 ("Section 1623(a) prohibits states from offering postsecondary education benefits to undocumented immigrants based *solely* on residency. However, Texas Education Code §§ 54.051(m) and 54.052(a) do not confer such benefits solely on the basis of residency.").
[31] LUPE Reply 19, ECF No. 63 (quoting 8 U.S.C. § 1623(a)).

## IV. CONCLUSION

For the reasons set out above, the Court **DENIES** SAT's Motion to Intervene (ECF No. 9) and the LUPE Intervenors' Emergency Motion to Intervene (ECF No. 16). The Court **DENIES as moot** Texas's Motion to Strike (ECF No. 62) and the LUPE Intervenors' Motion for Leave to Supplement Emergency Motion to Intervene Record (ECF No. 64).

**SO ORDERED** on this **15th day** of **August, 2025**.

*[signature: Reed O'Connor]*
Reed O'Connor
UNITED STATES DISTRICT JUDGE