**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 7:25-cv-00055-O |
| | § | |
| STATE OF TEXAS, | § | |
| | § | |
| Defendant. | § | |

---

**EMERGENCY MOTION FOR STAY OF JUDGMENT PENDING APPEAL AND
MEMORANDUM OF LAW IN SUPPORT THEREOF OF PROPOSED
DEFENDANT-INTERVENORS LA UNIÓN DEL PUEBLO ENTERO,
AUSTIN COMMUNITY COLLEGE, AND OSCAR SILVA**

---

## I.    INTRODUCTION

Proposed Intervenors La Unión del Pueblo Entero ("LUPE"), Austin Community College

("ACC"), and Oscar Silva (collectively "Proposed Intervenors") respectfully move this Court to

stay its Consent Order, Dkt. 8, pending appeal. *See* Fed. R. App. P. 8(a)(1). On June 4, 2025, the

United States filed this suit to invalidate the Texas Dream Act. Hours later, the United States and

the State of Texas (the "Parties") filed a Joint Motion for Entry of Consent Judgment. Dkt. 6. That

same day, the Court entered the Consent Order as requested. Dkt. 8.

On June 24, 2025, Proposed Intervenors filed their Emergency Motions to Intervene, for

Stay of Judgment, and for Relief from Judgment or, in the Alternative, to Alter or Amend Judgment

("Motion to Vacate"). Dkts. 16–18. Proposed Intervenors sought to defend the constitutionality of

the Dream Act and ensure their interests were represented in this suit. On August 15, 2025, this

Court denied Proposed Intervenors' Motion to Intervene. Dkt. 88, at 1. The Court subsequently

denied Proposed Intervenors' Emergency Motion to Vacate, Dkt. 17, and Emergency Motion for

1

Stay of Judgment, Dkt. 18, as moot. Dkt. 91. Proposed Intervenors filed a Notice of Appeal on

August 18, 2025. Dkt. 90. In accordance with Federal Rule of Appellate Procedure 8(a)(1)(A),

Proposed Intervenors now seek a stay from this Court prior to seeking a stay in the Court of

Appeals. Proposed Intervenors respectfully request the Court rule no later than August 25, 2025.

## II.    STANDARD OF REVIEW

In deciding a motion to stay an order pending appeal, courts consider four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed
> on the merits; (2) whether the applicant will be irreparably injured absent a stay;
> (3) whether issuance of the stay will substantially injure the other parties interested
> in    the    proceeding;    and    (4)    where    the    public    interest    lies.

*Nken v. Holder*, 556 U.S. 418, 426 (2009) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

## III.    ARGUMENT

As set out here and in Proposed Intervenors' previous Motion for Stay, Dkt. 18, Proposed

Intervenors face substantial harms from the continued operation of the Consent Order.[1] Proposed

Intervenors meet each stay factor: they are likely to prevail on the merits of their motion to vacate

and, ultimately, the merits of the case; they face irreparable harm absent a stay; the Parties will not

be prejudiced by a stay; and the public interest favors a stay. Therefore, this Court should grant a

stay pending appeal.

### A. Proposed Intervenors Will Likely Succeed on the Merits.

This action has been unconventional from the start: it lasted mere hours, without any of the

---

[1] Proposed Intervenors have standing to intervene and appeal, as discussed in their previous filings, which are incorporated herein by reference. *See* Dkts. 16–18. Proposed Intervenors have suffered, or imminently face, injury traceable to the Consent Order and this lawsuit, and the injury is redressable through an order of the Court. *See Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 561 (1992). Only one intervenor must have standing to intervene and appeal. *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017).

adversarial testing—or real defense of Texas's decades-old law—that is the hallmark of a case or controversy. Proposed Intervenors sought the opportunity to defend the Dream Act's constitutionality, and their significant interests, which have yet to receive full briefing.

Proposed Intervenors are likely to succeed on the merits of their Motion to Vacate. As detailed in that Motion, the absence of adversity deprived the Court of jurisdiction. *Id*. But the Court did not address jurisdiction in its Order denying intervention. Dkt. 88. Further, if permitted to intervene, Proposed Intervenors are likely to succeed on their defense of the Dream Act. But similarly, the Court did not consider the Consent Order's conflict with the Tenth Amendment. Proposed Intervenors' likelihood of success on the merits supports a stay.

1. *Proposed Intervenors are likely to succeed on the merits of their motion to vacate.*

In its Order, the Court failed to address the underlying defects in this action: there was no case or controversy between the Parties, and thus, the Court lacked jurisdiction to decide this case. Because there was no jurisdiction, Proposed Intervenors are likely to prevail on their motion to vacate.

Rule 60(b)(4) allows a court to vacate a judgment that is void for lack of jurisdiction or because the judgment was entered "in a manner inconsistent with due process." *Brumfield v. Louisiana State Bd. of Educ.*, 806 F.3d 289, 298 (5th Cir. 2015). An "adversarial posture between the parties" is "[e]ssential to the concept of a controversy[] under Article III." *Matter of S. L. E. Inc.*, 674 F.2d 359, 364 (5th Cir. 1982). When "all parties have agreed from the beginning of th[e] case that" the provisions in question "are unconstitutional" and disclaimed any intent to enforce them, there is insufficient adversity to confer jurisdiction. *Pool v. City of Houston*, 87 F.4th 733, 734 (5th Cir. 2023). Here, the Parties coordinated their identical positions from the start; they had no adverse interest, and thus, the Court at all times lacked jurisdiction to decide this matter. The

Texas Attorney General failed to defend the constitutionality of the state law against a challenge by the United States and cheered the State's loss. Because no actual dispute existed to confer jurisdiction under Article III, the judgment is void for lack of jurisdiction.

Rule 60(b)(4) also requires vacatur because the Parties secured a consent decree in a manner inconsistent with due process. *F.D.I.C. v. SLE, Inc.*, 722 F.3d 264, 270 (5th Cir. 2013); *Callon Petroleum Co. v. Frontier Ins. Co.*, 351 F.3d 204, 210 (5th Cir. 2003). Proposed Intervenors received no notice of the threat to their substantial interests, as this action was commenced and concluded within the space of six hours. *See Goss v. Lopez*, 419 U.S. 565, 580 (1975). Given the absence of both jurisdiction and due process in the Consent Order, Proposed Intervenors are likely to succeed on the merits of their Rule 60(b)(4) claim.

Proposed Intervenors are also likely to succeed on their request for vacatur under Rules 60(b)(1), 60(b)(6), and 59(e). Rule 60(b)(1) allows a court to vacate its judgment in the case of "surprise." Fed. R. Civ. P. 60(b)(1); *see Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1280 (5th Cir. 1985); *Bituminous Cas. Corp. v. Garcia*, 223 F.R.D. 308, 313 (N.D. Tex. 2004) (quotation omitted)*.* Here, Proposed Intervenors had no warning of this action's commencement, nor the entry of the Consent Order, and stand to suffer irreparable harm as a result of this rushed action from which they were excluded. *See id.* Rule 60(b)(6) serves as a "catchall" when relief is warranted yet does not fit within one of the other provisions of Rule 60(b), *see Buck v. Davis,* 580 U.S. 100, 112 (2017), and allows a court to reopen a case when "extraordinary circumstances" so warrant. *Kemp v. United States*, 596 U.S. 528, 533 (2022). The extraordinary circumstances of this case present a substantial claim under Rule 60(b)(6).

Finally, Rule 59(e) "has been interpreted as covering motions to vacate judgments." *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993). A court may grant a Rule

4

59(e) motion "to prevent manifest injustice," *see Gabarick v. Laurin Mar. (Am.) Inc.*, No. CIV.A. 08-4007, 2010 WL 5437391, at *5 (E.D. La. Dec. 23, 2010), where "there exist[s] a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy." *Bender Square Partners v. Factory Mut. Ins. Co.*, No. 4:10-CV-4295, 2012 WL 1952265, at *4 (S.D. Tex. May 30, 2012) (quotation modified). The unfairness of the collusive agreement here is plain.

The Court did not consider any of these claims. Instead, it pre-judged the constitutionality of the Texas Dream Act without the benefit of adversarial briefing. The Court should stay its Consent Order to allow consideration of these arguments on appeal.

> 2. *Proposed Intervenors are likely to succeed in their defense of the Texas Dream Act on the merits.*

Although this Court reached a contrary conclusion, Proposed Intervenors respectfully request a stay pending appeal because they are likely to succeed on the merits of the appeal. *First*, the Parties claim the Texas law is preempted because 8 U.S.C. § 1623(a) restricts eligibility for education benefits "on the basis of residence," but the Dream Act bases eligibility for in-state tuition on factors not limited to residency. Section 54.052(a)(3) of the Texas Education Code, for instance, provides that a student can meet the requirements by: (1) graduating from a Texas high school, (2) maintaining a residence in Texas for the three years prior to graduating high school, and (3) maintaining a residence in Texas for the year preceding enrollment in a higher education institution. Tex. Educ. Code § 54.052(a)(3). In addition, a person who is not a citizen or permanent resident must submit an "affidavit stating that the person will apply to become a permanent resident of the United States as soon as the person becomes eligible." *Id.* § 54.053(3)(B). Under the law's plain language, in-state status depends on factors beyond "residence."

*Second*, Section 54 of the Texas Education Code contains many interrelated sections governing eligibility for in-state tuition. For example, § 54.241 allows military personnel and their dependents to pay the in-state rate "without regard to the[ir] length of time . . . assigned to duty or resid[ing] in the state." *Id.* § 54.241(b). The law provides in-state tuition rates to many U.S. citizens "without regard" to whether they are Texas residents, and thus does not conflict with § 1623(a).[2]

*Third*, this Court did not address Proposed Intervenors' argument that the federal government lacks the constitutional authority to compel Texas to act as the injunction requires. Proposed Intervenors are likely to succeed in arguing that the injunction's interpretation of § 1623(a) invades core state prerogatives, purporting to dictate to Texas whom it may regard as Texas residents and how tuition at state educational institutions is to be calculated, as "[c]onspicuously absent from the list of powers given to Congress is the power to issue direct orders to the governments of the States." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 471 (2018). The United States also lacks authority to commandeer officials at state universities to enforce federal policies by requiring them to verify the immigration status of their students. *See Printz v. United States*, 521 U.S. 898 (1997). Thus, to the extent that § 1623(a) is read to conflict with the Texas Dream Act, it is void under the Tenth Amendment.

**B. Absent a Stay, Proposed Intervenors Will Likely Suffer Irreparable Harm.**

On the second stay factor, Proposed Intervenors are likely to suffer irreparable harm if a stay is not entered. *See Texas v. United States Env't Prot. Agency*, 829 F.3d 405, 434 (5th Cir. 2016) ("Petitioners have raised threatened harms—including unemployment and the permanent closure of plants—that would arise during the litigation if a stay is not granted, that are

---

[2] The Fifth Circuit's interpretation of 1623(a) in *Young Conservatives of Texas Found. v. Smatresk* ignores entire provisions of the Texas Education Code allowing out-of-state students to qualify for the same in-state tuition rates as undocumented individuals. *See* 73 F.4th at 307–08 (5th Cir. 2023).

irreparable."). Proposed Intervenor Oscar Silva faces additional financial burden, as well as uncertainty surrounding his academic future, as a result of the Consent Order.[3] At least six LUPE members were similarly affected by the Consent Order and sought guidance from LUPE regarding their college plans.[4] And with members' lives upended since the Consent Order's entry, LUPE staff have spent hours each day providing support—even as they continue to search for answers. Its college-access staff must now be retrained, and the organization is scrambling to rewrite its materials so families are not left with outdated information.[5] LUPE has been forced to divert significant resources from other programs to mount a rapid public-education and advocacy response.[6]

Additionally, as ACC's Chancellor Dr. Russell Lowery-Hart explains, ACC faces peril with the Consent Order in place. ACC estimates approximately 440 of its students are affected by the Consent Order.[7] The Texas Higher Education Coordinating Board has instructed schools to "assess the population of [affected] students" and implement new tuition requirements by August 2025.[8] This factor favors a stay.

### C. The Balance of Equities and Public Interest Favor a Stay.

The Parties face no prejudice or irreparable harm from a stay, and the public interest favors granting a stay pending appeal. The Fifth Circuit has recognized that preserving the status quo "is an important equitable consideration in the stay decision." *Louisiana v. Becerra*, 20 F.4th 260, 263 (5th Cir. 2021) (quoting *Dayton Bd. of Educ. v. Brinkman*, 439 U.S. 1358, 1359, (1978) (citation

---

[4] App. 117 (Ex. 11, Decl. of Tania Chavez ¶ 26).
[4] App. 117 (Ex. 11, Decl. of Tania Chavez ¶ 26).
[5] App. 114–15 (¶ 18).
[6] App. 115, 117 (¶¶ 19, 24).
[7] App. 141 (¶ 5a).
[8] App. 108 (Ex. 10, Memorandum from Texas Higher Education Coordinating Board, dated June 18, 2025).

modified)). *See Americans for Beneficiary Choice v. United States Dep't of Health & Hum. Servs.*, No. 4:24-CV-00439-O, 2024 WL 3297527, at *7 (N.D. Tex. July 3, 2024) (balance of equities and public interest warranted stay of Medicare cost increase where "[t]he harms [movants] face[d] by failing to maintain the [fifteen-year] status quo [we]re substantially more severe than those faced by [defendant]" if the "sweeping new requirements" did not take immediate effect). The Texas Dream Act was the status quo for more than two decades. Proposed Intervenors request the Court return to that status quo while they defend the law's constitutionality on appeal.

The balance of the equities clearly favors Proposed Intervenors. Though the Parties may seek to avoid scrutiny, any interest in speed cannot outweigh the value of robust judicial inquiry. *Nken*, 556 U.S. at 427 ("The choice for a reviewing court should not be between justice on the fly or participation in what may be an 'idle ceremony.'") (quoting *Scripps-Howard Radio v. F.C.C.*, 316 U.S. 4, 10 (1942)). Viewed against the substantial, imminent, and irreparable harms Proposed Intervenors face, the balance of the equities clearly tips in favor of a stay.

The public interest also favors a stay. Absent a stay, countless students will be forced to make the life-altering decision to give up on higher education. The public is also disserved when its leaders are prevented "from effectuating statutes enacted by representatives of its people." *New Motor Vehicle Bd.*, 434 U.S. at 1351. A stay will ensure the interest of all Texans in an educated public receives its due defense. The balance of the equities and public interest favor a stay.

## IV.    CONCLUSION

For the above reasons, Proposed Intervenors respectfully request this Court stay the Court's Order and Final Judgment, Dkt. 8, pending appeal and rule no later than August 25, 2025.

Dated: August 22, 2025

Respectfully submitted,

*/s/ Andrés Correa*
Andrés Correa
Texas Bar No. 24076330
acorrea@lynnllp.com
Christopher Patton
Texas Bar No. 24083634
cpatton@lynnllp.com
Yaman Desai
Texas Bar No. 24101695
ydesai@lynnllp.com
Kyle A. Gardner
Texas State Bar No. 24116412
kgardner@lynnllp.com
Zhenmian Xu
Texas Bar No. 24135820
sxu@lynnllp.com
LYNN PINKER HURST & SCHWEGMANN, LLP
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
(214) 981-3800 Telephone
(214) 981-3839 Facsimile

Kassandra Gonzalez
Texas Bar No. 24116439
kassandra@texascivilrightsproject.org
Molly Petchenik
Texas Bar No. 24134321
molly@texascivilrightsproject.org
Daniel Woodward (*pro hac vice*)
Texas Bar No. 24138347
danny@texascivilrightsproject.org
Zachary Dolling
zachary@texascivilrightsproject.org
Texas Bar No. 24105809
TEXAS CIVIL RIGHTS PROJECT
P.O. Box 17757
Austin, TX 78760
(512) 474-5073 ext. 182 Telephone
(512) 474-0726 Facsimile

Daniel Hatoum
Texas Bar No. 24099136
daniel@texascivilrightsproject.org
TEXAS CIVIL RIGHTS PROJECT

1017 W. Hackberry Ave.
Alamo, TX 78516
(512) 474-5073 ext. 182 Telephone
(512) 474-0726 Facsimile

Efrén C. Olivares
Texas Bar No. 24065844
Federal Bar No. 1015826
olivares@nilc.org
Tanya Broder (*pro hac vice*)
California Bar No. 136141
broder@nilc.org
Marlene Berroa Rodriguez (*pro hac vice*)
New York Bar No. 6208508
berroa@nilc.org
**NATIONAL IMMIGRATION LAW CENTER**
P.O. Box 34573
Washington, DC 20005-9997
(213) 674-2817 Telephone

David Donatti
Texas Bar No. 24097612
ddonatti@aclutx.org
Adriana Pinon
Texas Bar No. 24089768
apinon@aclutx.org
Edgar Saldivar
Texas Bar No. 24038188
esaldivar@aclutx.org
**ACLU FOUNDATION OF TEXAS**
P.O. Box 8306
Houston, TX 77288
(713) 942-8146

Joshua M. Salzman (*pro hac vice*)
D.C. Bar No. 982239
jsalzman@democracyforward.org
Brian D. Netter (*pro hac vice*)
D.C. Bar No. 979362
bnetter@democracyforward.org
Paul R.Q. Wolfson (*pro hac vice*)
D.C. Bar No. 414759
pwolfson@democracyforward.org
Skye L. Perryman (*pro hac vice*)
Texas Bar No. 24060411
sperryman@democracyforward.org

Simon C. Brewer (*pro hac vice*)*
Connecticut Bar No. 441889
sbrewer@democracyforward.org
**DEMOCRACY FORWARD FOUNDATION**
P.O. Box 34553
Washington, D.C. 20043
Tel: (202) 448-9090

*Not admitted to practice law in the District of Columbia; practicing under the supervision of Democracy Forward lawyers who are members of the D.C. Bar.

**ATTORNEYS FOR PROPOSED INTERVENORS LA UNIÓN DEL PUEBLO ENTERO, AUSTIN COMMUNITY COLLEGE, AND OSCAR SILVA**

## CERTIFICATE OF CONFERENCE

I certify that pursuant to LR 7.1, counsel for Proposed Intervenors conferred with counsel for the Parties regarding the relief sought herein. The Parties are opposed.

*/s/ Andrés Correa*
Andrés Correa

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2025, a true and correct copy of the foregoing document was electronically filed via the Court's CM/ECF system which sends notice of electronic filing to all counsel of record.

*/s/ Andrés Correa*
Andrés Correa